**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

CORRIGENT CORPORATION,

                Plaintiff,

    v.

CISCO SYSTEMS, INC.,

                Defendant.

Case No. 6:22-cv-396-ADA-DTG

**DEFENDANT CISCO SYSTEMS, INC.'S OPPOSED MOTION
TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA
UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 1

      A.     Procedural History and Parties ..................................................................... 1

      B.     The Majority of Witnesses and Evidence are Located in Northern California ..................................................................................................... 3

           1.     Cisco witnesses and evidence relevant to the accused technologies are located in Northern California. ............................ 3

           2.     Significant third-party witnesses are located in the Northern District of California. ......................................................... 6

III.     LEGAL STANDARD ............................................................................................... 6

IV.     ARGUMENT ............................................................................................................ 7

      A.     This Action Could Have Been Brought in the Northern District of California ..................................................................................................... 7

      B.     The Private Factors Strongly Weigh in Favor of Transfer ....................... 7

           1.     Key sources of proof are in the Northern District of California. ................ 7

           2.     The Northern District has subpoena power over third-party witnesses. ......................................................................... 9

           3.     The costs and burdens for willing witnesses weigh in favor of transfer. .................................................................... 11

           4.     No practical concerns weigh against transfer. ........................... 12

      C.     The Public Factors Favor Transfer to the Northern District of California ........... 13

           1.     California has a strong local interest in this case. ...................... 13

           2.     Administrative difficulties flowing from court congestion do not weigh against transfer. .............................................. 15

           3.     The remaining public interest factors are neutral. ..................... 15

V.     CONCLUSION ....................................................................................................... 15

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Corrigent Corporation Incorporation – Delaware |
| 2 | Corrigent Corporation Registration - Massachusetts |
| 3 | Foreign Corporation Certificate of Registration - Massachusetts |
| 4 | Plaintiff's Corrigent Corporation's Preliminary Infringement (August 3, 2022) |
| 5 | Exhibit 1 of Plaintiff's Corrigent Corporation's Preliminary Infringement (August 3, 2022) |
| 6 | Exhibit 2 of Plaintiff's Corrigent Corporation's Preliminary Infringement (August 3, 2022) |
| **7** | Exhibit 3 of Plaintiff's Corrigent Corporation's Preliminary Infringement (August 3, 2022) |
| 8 | Exhibit 4 of Plaintiff's Corrigent Corporation's Preliminary Infringement (August 3, 2022) |
| 9 | Exhibit 5 of Plaintiff's Corrigent Corporation's Preliminary Infringement (August 3, 2022) |
| 10 | U.S. Patent No. 4,881,230 (Clark) |
| 11 | Preliminary Invalidity Claim Chart for the '369 patent in view of U.S. Patent No. 4,811,230 (Clark) |
| 12 | U.S. Patent No. 6,052,362 (Somer) |
| 13 | Preliminary Invalidity Claim Chart for the '369 patent in view of U.S. Patent No. 6,052.362 (Somer) |
| 14 | U.S. Patent No. 7,212,490 (Kao) |
| 15 | Preliminary Invalidity Claim Chart for the '461 patent in view of U.S. Patent No. 7,212,490 (Kao) |
| 16 | U.S. Patent No. 6,212,171 (LaFollette) |
| 17 | Preliminary Invalidity Claim Chart for the '485 patent in view of U.S. Patent No. 6,212,171 (LaFollette) |
| 18 | U.S. Patent No. 7,154,858 (Zhang) |
| 19 | Preliminary Invalidity Claim Chart for the '485 patent in view of U.S. Patent No. 7,154,858 (Zhang) |
| 20 | U.S. Patent No. 6,976,087 (Westfall) |
| 21 | Preliminary Invalidity Claim Chart for the '461 patent in view of U.S. Patent No. 6,976,087 (Westfall) |
| 22 | U.S. Patent No. 2005/0163115 (Dontu) |
| 23 | Preliminary Invalidity Claim Chart for the '400 patent in view of U.S. Patent No. 2005/0163115 (Dontu) |
| 24 | U.S. Patent No. 200/0198371 (Smith) |
| 25 | Preliminary Invalidity Claim Chart for the '400 patent in view of U.S. Patent No. 2005/0198371 (Smith) |
| 26 | U.S. Patent No. 6,735,198 (Edsall) |
| 27 | Preliminary Invalidity Claim Chart for the '400 patent in view of U.S. Patent No. 6,735,198 (Edsall) |
| 28 | U.S. Patent No. 7,277,386 (Ferguson) |

| Exhibit | Description |
|---|---|
| 29 | Preliminary Invalidity Claim Chart for the '602 patent in view of U.S. Patent No. 7,277,386 (Ferguson) |
| 30 | U.S. Patent No. 7,477,657 (Murphy) |
| 31 | Preliminary Invalidity Claim Chart for the '602 patent in view of U.S. Patent No. 7,477,657 (Murphy) |
| 32 | U.S. Patent No. 7,606,235 (Ayyangar) |
| 33 | Preliminary Invalidity Claim Chart for the '602 patent in view of U.S. Patent No. 7,606,235 (Ayyangar) |
| 34 | LinkedIn profile for Michael Smith |
| 35 | LinkedIn profile for Sitaram Dontu |
| 36 | LinkedIn profile for Thomas Edsall |
| 37 | LinkedIn profile for Kui Zhang |
| 38 | LinkedIn profile for Nischal Sheth |
| 39 | LinkedIn profile for James Murphy |
| 40 | LinkedIn profile for Arthi Ayyangar |
| 41 | LinkedIn profile for Chaitanya Kodeboyina |
| 42 | LinkedIn profile for Leon Bruckman |
| 43 | LinkedIn profile for David Zelig |
| 44 | LinkedIn profile for Ronen Solomon |
| 45 | LinkedIn profile for Uzi Khill |
| 46 | Docket Navigator Search Result for NDCA (Sept. 13, 2022) |
| 47 | Docket Navigator Search Result for WDTX (Sept. 13, 2022) |
| 48 | Screen capture from Juniper.net (Sept. 13, 2022) |
| 49 | Screen capture from Intel.com (Sept. 13, 2022) |
| 50 | "Corrigent Corporation" Google search results (Sept. 13, 2022) |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe, Inc.*,
   823 F. App'x  929 (Fed. Cir. 2020) ..................................................................12, 15

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
   No. 6:13-cv-362, 2014 WL 10748106 (W.D. Tex. June 11, 2014)...........................8

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020).................................................................7, 12, 14, 15

*In re Apple Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) ......................................................................11, 12

*DataQuill, Ltd. v. Apple Inc.*,
   No. 13-ca-706, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ...............................15

*In re DISH Network LLC*,
   No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)...................................10

*E-Sys. Designs, Inc. v. Mentor Graphics Corp.*,
   No. 4:17-cv-00682, 2018 WL 2463795 (E.D. Tex. June 1, 2018) ...........................14

*Fintiv Inc. v. Apple Inc.*,
   No. 6:18-cv-00372, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) .....................7, 9

*Gemalto S.A. v. CPI Card Grp. Inc.*,
   No. 15-CA-0910, 2015 WL 10818740 (W.D. Tex. Dec. 16, 2015) ..........................9

*In re Genentech, Inc.*,
   566 F.3d at 1344 ...........................................................................................7, 10, 11, 15

*Gesture Tech. Partners, LLC, v. Apple Inc.*,
   No. 6:21-cv-00121-ADA, 2022 WL 3592451 (W.D. Tex. Aug. 22, 2022) ............14

*In re Google LLC*,
   No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...................................8

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)..........................................................................13, 14

*In re HP, Inc.*,
   No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) .................................10

*Kleiner v. Southwest Air. Co.*,
   No. 5:08-cv-00218, 2008 WL 4890590 (W.D. Tex. Nov. 4, 2008) .......................................10

*LED Wafer Solutions, LLC v. Samsung Elec. Co., Ltd. et al*.,
   No. 6:21-CV-00292-ADA (Aug. 22, 2022)...................................................................................9

*Netlist, Inc. v. SK Hynix Inc*.,
   No. 6:20-cv-00194, 2021 WL 2954095 (W.D. Tex. Feb. 2, 2021) ......................................12

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009)...................................................................................13, 14

*Parus Holdings Inc. v. LG Elecs. Inc*.,
   No. 6:19-cv-00432, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) ...................................11

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc*.,
   No. 6:11-cv-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ........................................12

*In re Radmax*,
   720 F.3d 285 (5th Cir. 2013) ..............................................................................................8

*In re Samsung Elecs. Co., Ltd.*,
   2 F.4th 1371 (Fed. Cir. 2021) ............................................................................................13

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ...........................................................................................6, 7

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ......................................................................................6, 11, 12

*Wireless Recognition Techs. LLC v. A9.com*,
   No. 2:10-cv-364, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012).............................................14

*Xiros, Ltd., v. Depuy Synthes Sales, Inc*.,
   No. 6:21-CV-00681-ADA, 2022 WL 3592448 (W.D. Tex. Aug. 22, 2022)..........................14

*XR Comms., LLC v. HP Inc.*,
   No. 6:21-CV-694-ADA, 2022 WL 3448746 (W.D. Tex. Aug. 17, 2022).......................10, 15

*XY, LLC v. Trans Ova Genetics, LC*,
   No. 16-ca-00447, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) .............................................8

**Statutes**

28 U.S.C. § 1400(b) ....................................................................................................................7

**Rules**

Fed. R. Civ. P. 45(B)(ii)..............................................................................................................9

Fed. R. Civ. P. 45(c)(1)(A) ...............................................................................................9

## I.      INTRODUCTION

This lawsuit should be transferred to the Northern District of California.  Defendant Cisco Systems, Inc. ("Cisco") developed the accused products and functionalities primarily at or near Cisco's headquarters in the Northern District of California, and the vast majority of the Cisco employees who are knowledgeable about the accused products and functionalities live and work there.  There are also numerous third-party witnesses in Northern California.

Further, there is no reason for this case to remain in the Western District of Texas.  Public records show that Plaintiff Corrigent Corporation ("Corrigent") is not incorporated or headquartered in Texas, and Corrigent's own Complaint does not identify any connection between Corrigent and this District.  Nor do any of the named inventors of the Asserted Patents appear to reside in this District, or even in the United States.  Further, Corrigent did not identify any connection between itself and this District when the parties met and conferred regarding this motion, and there does not appear to be any such connection.  While Cisco has an office in Austin and used to have an office in San Antonio, the accused functionalities were developed elsewhere— primarily in the Northern District of California—and the Austin office does not outweigh Cisco's headquarters in the transfer analysis.  In sum, the relative ease of access to sources of proof, the availability of compulsory process, the cost of witness attendance, and the localized interests in resolving this dispute all overwhelmingly support transfer of this case to the Northern District of California, and no factor weighs against transfer.  Therefore, Cisco respectfully asks the Court to grant this transfer motion.

## II.     BACKGROUND

### A.      Procedural History and Parties

On April 19, 2022, Corrigent filed the Complaint in this suit, alleging infringement of U.S. Patent Nos. 6,957,369 (the "'369 patent"); 7,113,485 (the "'485 patent"); 7,330,431 (the "'431

patent"); 7,593,400 (the "'400 patent"); and 9,118,602 (the "'602 patent") (collectively, "Asserted Patents"). Compl. ¶ 1. Corrigent served its preliminary infringement contentions on August 3, 2022, accusing Cisco's Nexus 7000 Series Switches, Nexus 9000 Series Switches, Catalyst 8000 EDGE Platforms, Catalyst 9500 Series Switches, Collaboration Platform BE7000, ASR 9000 Series Routers, and NCS 540/560 Series Routers (collectively, "Accused Products") of infringing one or more of the Asserted Patents. *See* Rosenberg Decl. ¶¶ 7–12 and Exs. 4–9 (Inf. Cont. at 3–4). Corrigent's claim charts include allegations relating to Bidirectional Forwarding Detection ("BFD") and Multiprotocol Label Switching ("MPLS"), IOS XR software, link bundling, and latency measurement. *See, e.g.*, Ex. 5 at 1-31; Ex. 6 at 1-29; Ex. 8 at 1-25; Ex. 9 at 1-38.

On August 12, 2022 the Court entered a Scheduling Order setting September 14 as the deadline for motions to transfer. D.I. 37 at 1.

Although Corrigent filed its Complaint in this District, Corrigent itself does not appear to have any connection whatsoever to this District. Corrigent was incorporated in Delaware on February 11, 2022, two months before it filed suit. Compl. ¶ 2; Ex. 1 (DE Certificate of Information). On April 2, 2022, Corrigent registered to do business in the state of Massachusetts, listing its principal office as 291 Main Street, West Newbury, MA 01985. Ex. 2 (MA Registration); Ex. 3 (MA Certificate). During the parties' meet and confer regarding this motion, counsel for Cisco asked whether Corrigent has any connection to the Western District of Texas, and Corrigent's counsel did not identify any such connection. Rosenberg Decl. ¶ 6. And a web search for "Corrigent Corporation" does not reveal any connection to the Western District of Texas, or the state of Texas generally, beyond the filing of this lawsuit. *Id.* ¶ 53; Ex. 50 (results).

Defendant Cisco is headquartered in the Northern District of California and incorporated in Delaware, and Cisco's roots in Northern California can be traced back to its inception; its name

was taken from the last five letters of "San Fran<u>cisco</u>" and Cisco's corporate logo is a stylized

form of the Golden Gate Bridge.  Haase Decl. ¶¶ 3-4.  Cisco currently employs approximately

13,623 full-time employees in Northern California, by far the largest concentration of Cisco

employees anywhere in the country.  *Id.* ¶ 6.  By contrast, while Cisco has an office in Austin,

Texas, that office has only 1,331 employees.  *Id.* ¶ 8.  Cisco also has offices in Allen, Richardson,

and Spring, Texas, which are all outside the Western District and have a total of 2,047 employees.

*Id.* ¶¶ 8-9.

**B.      The Majority of Witnesses and Evidence are Located in Northern California**

**1.      Cisco witnesses and evidence relevant to the accused technologies are located in Northern California.**

Cisco's management and primary research and development facilities are located in the

Northern District of California.  *Id.* ¶ 5.   Thus it is no surprise that witnesses, documents, and

source code related to the Accused Products are located or managed in that district, and that

specific accused functionalities identified by Corrigent in its infringement contentions were

developed in Northern California as well.  Ponnapalli Decl. ¶¶ 4–7; Imam Decl. ¶¶ 4–8; Arias

Decl. ¶¶ 4–5; Breton Decl. ¶¶ 4–6; Young Decl. ¶ 5; Joshi Decl. ¶ 3; Rayapureddy Decl. ¶ 3.  More

specifically, as documented in the attached declarations from Cisco employees who work on the

Accused Products:

***Nexus 7000 and 9000 Series Switches***.  Corrigent accuses Cisco's Nexus 7000 and 9000

Series Switches of infringing the '369 and '602 patents.  These products were developed in or near

San Jose, California, or outside the United States.  Ponnapalli Decl. ¶¶ 4–5.  To the extent these

products support BFD and MPLS functionality (which are identified in Corrigent's infringement

claim charts), the development work occurred in or near San Jose, and knowledgeable Cisco

employees are located there.  *Id.* ¶¶ 6–7.  The Cisco product documentation and source code base

for the Nexus 7000 and 9000 series switches are also managed and controlled from Cisco's northern California locations, as well as from India.  *Id.* ¶ 8; Rayapureddy Decl. ¶ 3.

*Catalyst 8000 EDGE Platforms and Catalyst 9500 Series Switches*.  Corrigent accuses Cisco's Catalyst 8000 EDGE Platforms and Catalyst 9500 Series Switches of infringing the '485 and '369 patents respectively.  Cisco's management and research and development facilities relating to the software for Catalyst 8000 EDGE Platforms and Catalyst 9500 Series Switches are primarily located in or near San Jose, California, where there are hundreds of Cisco employees who work on these products.  Imam Decl. ¶ 4.  There are also employees who work on these products in Research Triangle Park, North Carolina, in Ottawa, Canada, and in Bangalore, India, and there is one employee who is located in the Dallas areas.  *Id.*  To the extent that Cisco's Catalyst 8000 EDGE Platforms and Catalyst 9500 Series Switches support BFD and MPLS functionality (which are identified in Corrigent's infringement claim charts), the work involved was conducted in or near Cisco's San Jose headquarters or outside the United States, and there are Cisco engineers in the San Jose area who are knowledgeable about BFD and MPLS in connection with these products.  Imam Decl. ¶¶ 4–6.  The Cisco software documentation and source code base for the Catalyst 8000 EDGE Platforms and Catalyst 9500 Series Switches are also managed and controlled from Cisco's northern California locations.  *Id.* ¶ 8.  While there is a hardware team in Austin that works on aspects of the hardware for some *other* Cisco Catalyst products, that team does not work on the accused Catalyst products (the 800 EDGE Platforms and 9500 Series Switches), and does not support the accused BFD or MPLS functionalities in any event.  *Id.* ¶ 7.

*ASR 9000 Series Routers; NCS 540/560 Series Routers*.  Corrigent accuses Cisco's ASR 9000 Series Routers and NCS 540/560 Series Routers of infringing the '485 and '400 patents. Corrigent's infringement claim charts identify the IOS XR Software that runs on these routers, and

focus on alleged functionality relating to MPLS, link bundling, and latency measurement.  Ex. 5;
Ex. 8.  The research and development facilities relating to the IOS XR operating system, the ASR
9000 Series Routers, and NCS 540/560 Series Routers are primarily located in or near San Jose,
California.  Breton Decl. ¶ 4.  Most of the Cisco employees who work on the IOS XR operating
system, the ASR 9000 Series Routers, and NCS 540/560 Series Routers are located in or near San
Jose—including hundreds of employees who work there on these products—and there are also
some employees in Canada and India.  *Id.*  To the extent these products support MPLS and to the
extent they contain functionality related to link bundling or latency measurement (which are
identified in Corrigent's infringement claim charts), Cisco's development of that functionality
would have taken place in its primary research and development facilities near its San Jose,
California headquarters, and possibly in Research Triangle Park, North Carolina or in Canada and
India.  *Id.* ¶ 5.  For example, the Cisco engineers who developed functionality related to MPLS for
the ASR 9000 Series Routers did so at or near the San Jose headquarters.  *Id.*  The Cisco
documentation and source code base for the ASR 9000 Series Routers and NCS 540/560 Series
Routers are also managed and controlled from Cisco's northern California locations, as well as
from Canada and India.  *Id.* ¶ 6; Joshi Decl. ¶ 3.

   ***Collaboration Platform BE7000***.   Corrigent accuses Cisco's Collaboration Platform
BE7000 of infringing the '431 patent.  The hardware for the BE7000 is provided by a Cisco
business unit managed from Cisco's San Jose headquarters.  Arias Decl. ¶ 4.  The operating system
for the BE7000 is provided by VMware, Inc., who is headquartered in Palo Alto, California, which
is also in the Northern District.  *Id.*  Cisco employees who work on the application software for
the BE7000 and its functionalities are located primarily in Bangalore, India.  *Id.*  Some employees
who developed functionalities for the BE7000 are based in or near Cisco's office in Richardson,

Texas, which is in the *Eastern* District of Texas.  *Id.*  Cisco is aware of only one employee in Austin ever being been involved in product management for the BE7000, and he has not been in that role since before the pandemic.  *Id.* ¶ 5.

> ### 2.  Significant third-party witnesses are located in the Northern District of California.

Cisco has identified several third-party witnesses in northern California who are associated with prior art that Cisco plans to include in its preliminary invalidity contentions, including Cisco's own prior art.  For example, the named inventors and authors of the prior art references charted in the attached preliminary invalidity claim charts, including references assigned to Cisco, appear to be located in the Northern District of California.  Rosenberg Decl. ¶¶ 13–44; Exs. 10–41.  Besides Cisco's own prior art, Cisco has also identified other companies with prior art, such as Juniper Networks, Inc. and Intel, Corp., who are both headquartered in Northern California, which is where any subpoena will be served.  Rosenberg Decl. ¶¶ 51–52 and Exs. 48–49.

## III.   LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").  If so, the court should balance the private convenience interests of the parties and the public interest in the fair and efficient administration of justice—*i.e.*, the "private" and "public" interest factors.  *See, e.g.*, *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The private factors are: (1) the relative ease of access to evidence; (2) the availability of compulsory process; (3) the cost of attendance for willing witnesses; and (4) "all other practical problems that make a trial easy, expeditious and

inexpensive." *Id.* The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in the case; (3) the familiarity of the forum with the relevant law; and (4) the avoidance of conflict-of-laws or foreign law problems. *Id.*

## IV.    ARGUMENT

### A.    This Action Could Have Been Brought in the Northern District of California

The preliminary requirement for transfer is satisfied here because Corrigent could have brought its claims in the Northern District of California. Under the patent venue statute, an action for "patent infringement may be brought in the judicial district . . . where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Cisco is headquartered in San Jose, and Corrigent's allegations of infringement presumably encompass acts committed there, because Corrigent accuses Cisco of placing Accused Products "in[to] the stream of commerce." Compl. ¶¶ 3, 6. Thus, this action could have been brought in the Northern District of California.

### B.    The Private Factors Strongly Weigh in Favor of Transfer

#### 1.    Key sources of proof are in the Northern District of California.

The sources-of-proof factor weighs in favor of transfer because the bulk of the relevant evidence is in Northern California. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *accord Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019) ("In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored."). Here, the Northern District of California is by far the primary location for evidence regarding the accused Cisco products, thus

weighing heavily in favor of transfer.  *See* Ponnapalli Decl. ¶ 8; Imam Decl. ¶ 8; Arias Decl. ¶ 4;

Breton Decl. ¶ 6; Young Decl. ¶ 5; Haase Decl. ¶ 5; Joshi Decl. ¶ 3; Rayapureddy Decl. ¶ 3.

Indeed, most of the development work for the accused products and functionalities took

place in the Northern District of California, strongly supporting transfer.  *See* Ponnapalli Decl. ¶¶

4–7; Imam Decl. ¶¶ 4–7; Arias Decl. ¶ 4; Breton Decl. ¶¶ 4–5.  This development history is

important to the venue analysis because "[i]n determining the ease of access to sources of proof,

the Court will look to the location where the allegedly infringing products were researched,

designed, developed and tested."  *XY, LLC v. Trans Ova Genetics, LC*, No. 16-ca-00447, 2017 WL

5505340, at *13 (W.D. Tex. Apr. 5, 2017); *accord Affinity Labs of Texas, LLC v. Blackberry Ltd.*,

No. 6:13-cv-362, 2014 WL 10748106, at *6 (W.D. Tex. June 11, 2014) ("[A] court should also be

mindful of the location of the activities surrounding the research, development, and production of

the accused products because '[t]he trier of fact ought to be as close as possible to the milieu of

the infringing device and the hub of activity centered around its production.'") (internal citation

omitted).

Likewise, transfer is supported by the fact that the source code for most of the Accused

Products is managed primarily in Northern California, and will be managed from there for source

code inspections to the extent inspections are necessary in this case.  *See* Ponnapalli Decl. ¶ 8;

Imam Decl. ¶ 8; Breton Decl. ¶ 6; Rayapureddy Decl. ¶ 3; Joshi Decl. ¶ 3; Young Decl. ¶ 5.  The

Federal Circuit has confirmed that access to source code is easiest at the location of "document

custodians" and "where documents are created and maintained, which may bear on the ease of

retrieval."  *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

While it is possible to gain access to the source code from other locations, the fact that the

custodians of the documents reside in the Northern California favors Northern California.  *See In*

*re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (stating that the focus is on "*relative* ease of access, not *absolute* ease of access" (emphases in original)).[1]

Furthermore, companies that may have documentary and physical evidence related to prior art, such as Juniper Networks, Inc. and Intel, Corp., are headquartered in Northern California, which is where any subpoenas to them will be served. Rosenberg Decl.¶¶ 51–52. And Corrigent itself is located well outside the Western District of Texas, and has not identified any Corrigent witnesses or documents located in this District either. *Id.* ¶¶ 3-6. Because the vast majority of evidence in this case is located in California, this factor weighs strongly in favor of transfer.

### 2.    The Northern District has subpoena power over third-party witnesses.

The second private factor also weighs in favor of transfer because the Northern District has subpoena power over relevant non-party witnesses. A court can only subpoena a witness to attend trial (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc*., No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). As this Court has recognized, the focus for this factor is on *non-party* witnesses whose attendance may need to be secured by a Court order. *See Fintiv*, 2019 WL 4743678, at *5.

---

[1] Likewise, to the extent that documents are stored in other districts—such as some documents regarding the Collaboration Platform BE7000 product which may be located in Cisco's Richardson, Texas office in the Eastern District of Texas—that fact is irrelevant and does not weigh against transfer. *See LED Wafer Solutions, LLC v. Samsung Elec. Co., Ltd. et al*., No. 6:21-CV-00292-ADA, slip op. at 5 (W.D. Tex. Aug. 22, 2022) ("In this case, the two competing forums are the WDTX and NDCA, so any information outside the two competing forums is not relevant.").

The majority of third-party witnesses who are likely to testify at trial in this case reside in California, and specifically, in the Northern District.  For example, because many accused functionalities were designed and developed at Cisco's headquarters, "[i]t is foreseeable that a number of [Cisco's] former . . . employees, many of whom likely reside [] near [Cisco's headquarters], may be called upon to testify."  *See Kleiner v. Southwest Air. Co.*, No. 5:08-cv-00218, 2008 WL 4890590, at *4 (W.D. Tex. Nov. 4, 2008).  Cisco has also identified a significant number of third-party prior-art witnesses and entities who appear to be located in Northern California.  *See* Rosenberg Decl. ¶¶ 13–16, 19-20, 23-24, 31-36 and Exs. 10–13, 16-17, 20-21, 28-33.  And because "there is no indication that [the] witness[es]" identified thus far would be "willing," the presumption is that a subpoena will be necessary, which would heavily favor transfer to the Northern District.  *See In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (quoting *In re HP, Inc*., No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)).

By contrast, Cisco is unaware of any relevant third-party witnesses within the subpoena power of this District.  For example, the named inventors on the Asserted Patents all appear to be located in Israel, and thus do not weigh against transfer.  Rosenberg Decl. ¶¶ 45–48 and Exs. 42–45.  *See Genentech*, 566 F.3d at 1344 ("[W]itnesses from Europe [would] be required to travel a significant distance no matter where they testify."); *XR Comms., LLC v. HP Inc.*, No. 6:21-CV-694-ADA, 2022 WL 3448746, at *5 (W.D. Tex. Aug. 17, 2022) (witnesses from Taiwan "would have to travel a significant distance no matter where they testify," and thus "have a neutral effect on the transfer analysis in the present case").

Because many third-party witnesses with knowledge of the Accused Products and prior art are located in the Northern District of California, and because other witnesses are located too far

away from this District to weigh against transfer, this second private interest factor weighs heavily in favor of transfer. *See In re Apple Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (finding this factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue"); *see also Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly.").

### 3. The costs and burdens for willing witnesses weigh in favor of transfer.

Litigating this case in California will decisively reduce the costs and burdens to willing witnesses, and thus, favors transfer. "The convenience of the witnesses is probably the single most important factor in transfer analysis." *Parus Holdings Inc. v. LG Elecs. Inc*., No. 6:19-cv-00432, 2020 WL 4905809, at *5 (W.D. Tex. Aug. 20, 2020) (citing *Genentech*, 566 F.3d at 1342). "Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317. The Fifth Circuit has held that when the distance between the venues is "more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.*

Here, the time and expense required for "willing" witnesses to travel over 1,700 miles from Northern California to Texas strongly favors transfer. The overwhelming majority of witnesses most knowledgeable about the accused technologies are located in the Northern District of California. While there are a few Cisco employees in Richardson, Texas who worked on *one* of the functionalities accused of infringing *one* of the five Asserted Patents, that work occurred *outside* the Western District of Texas, and in any event they do not outweigh the overwhelming number of people in Northern California, particularly when third parties such as former employees

and prior art authors are also mostly located in Northern California. *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-cv-00194, 2021 WL 2954095, at *6 (W.D. Tex. Feb. 2, 2021) ("Courts properly give more weight to the convenience of non-party witnesses than to party witnesses.").

Finally, to the extent that any potential witnesses are located outside the United States (for example, the named inventors of the Asserted Patents) or on the east coast, that does not weigh against transfer and instead is neutral with respect to this factor. Even if they are willing witnesses, this does not mean that they will be any less inconvenienced traveling to Texas versus California, especially given the availability of direct flights to San Jose, San Francisco, and Oakland. *Apple*, 581 F. App'x at 889 n.1 ("Whether these identified witnesses are willing to attend trial or not, the location of the witnesses and costs associated with travel to the Eastern District of Texas are relevant to the convenience analysis."). Regardless of whether they are closer to Texas or California, these witnesses will have to incur travel, lodging, and related costs. *See Apple*, 979 F.3d at 1342 ("[A]lthough a flight from New York to WDTX might take a bit less time than from New York to NDCA, in either instance these individuals will likely have to leave home for an extended period of time and incur travel, lodging, and related costs."); *see also In re Adobe Inc.*, 823 F. App'x 929, 931 (Fed. Cir. 2020) (holding that district court "failed to weigh the cost of attendance for willing witnesses," noting that the defendant "identified a significant number of its own employees as potential witnesses who reside in the Northern District of California," while the plaintiff's "own employees will be coming from outside both districts"). Thus, the cost of attendance for willing witnesses weighs heavily in favor of transfer.

### 4.     No practical concerns weigh against transfer.

The Court also considers "other practical problems that make a trial easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in

favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013).  While Corrigent has filed parallel suits in the District of Delaware asserting some of the same Asserted Patents against third parties Dell and Arista, there are no such other suits pending in this District or in the Northern District of California, and thus, this factor is neutral.

### C.    The Public Factors Favor Transfer to the Northern District of California

#### 1.    California has a strong local interest in this case.

The Northern District of California's interest in this case is compelling.  The "research[], design[], and develop[ment]" of the Accused Products in Northern California are "significant factors that give the Northern District of California a legitimate interest in adjudicating the case[] 'at home.'"  *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021).  Because the Accused Products were developed primarily at or near Cisco's headquarters in California, and individuals who are knowledgeable about those products and the prior art live and work there, this case "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."  *In re Hoffmann-La Roche Inc*., 587 F.3d 1333, 1336 (Fed. Cir. 2009).

By contrast, Corrigent has not alleged any local interest in this District that would not exist in the Northern District of California.  *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (considering whether there are "parties, witnesses, or evidence [with] any material connection to the venue chosen by the plaintiff").  Corrigent did not identify any connection between itself and this District, either in the Complaint or when the parties met and conferred regarding this motion.  Rosenberg Decl. ¶ 6.  And none of Corrigent's infringement contentions or infringement-related allegations in the Complaint relate specifically to the Western District. "Interests that 'could apply virtually to any judicial district or division in the United States,' such

13

as the nationwide sale of infringing products, are disregarded in favor of particularized local interests." *Wireless Recognition Techs. LLC v. A9.com*, No. 2:10-cv-364, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012). Thus, sales of the Accused Products throughout the United States, including this District, do not establish "a meaningful connection to the case . . . ." *Nintendo*, 589 F.3d at 1198; *see also Xiros, Ltd., v. Depuy Synthes Sales, Inc*., No. 6:21-CV-00681-ADA, 2022 WL 3592448, at *7 (W.D. Tex. Aug. 22, 2022) (granting transfer where "[t]he sale and use of the Accused Products are not constrained to either the WDTX or [the proposed transferee district]").

Further, although Cisco has offices in Austin and had offices in San Antonio (now closed), there is no significant connection between those offices and the issues in this litigation that would give this District a local interest against transfer. *See Apple*, 979 F.3d at 1345 (explaining that local interest factor "notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit'*") (alteration in original) (citation omitted). In any event, those offices are outweighed in the analysis by Cisco's headquarters in California. *See E-Sys. Designs, Inc. v. Mentor Graphics Corp.*, No. 4:17-cv-00682, 2018 WL 2463795, at *6 (E.D. Tex. June 1, 2018) ("[T]he public interest is greater in the [transferee venue] where [defendant] is headquartered and where nearly 1,000 of its employees reside."); *accord Gesture Tech. Partners, LLC, v. Apple Inc*., No. 6:21-cv-00121-ADA, 2022 WL 3592451, at *6 (W.D. Tex. Aug. 22, 2022) (finding that defendant's presence in Austin "does not outweigh its headquarters in the NDCA"). Therefore, this public interest factor militates in favor of transfer. *See Hoffmann-La Roche Inc*., 587 F.3d at 1338 (internal citations omitted) ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor be weighed in that venue's favor.").

### 2. Administrative difficulties flowing from court congestion do not weigh against transfer.

This administrative factor concerns "[t]he speed with which a case can come to trial and be resolved[.]" *Genentech*, 566 F.3d at 1347. Here, more than 840 patent cases are pending in this Court as compared to fewer than 220 patent cases pending in the Northern District of California. Rosenberg Decl. ¶¶ 49–50; Exs. 46–47. Thus, this factor does *not* weigh against transfer. Indeed, this Court recently reviewed similar statistics and found that "[a]ny difference in docket congestion and time-to-trial is negligible" between this District and the Northern District of California, rendering this factor neutral. *XR Comms.*, 2022 WL 3448746 at *6 (granting transfer). The same conclusion applies here, and thus this factor does not weigh against transfer.

In any event, time to trial "appears to be the most speculative" of the factors in the transfer analysis. *Genentech*, 566 F.3d at 1348; *see also DataQuill, Ltd. v. Apple Inc.*, No. 13-ca-706, 2014 WL 2722201, at *4 (W.D. Tex. June 13, 2014) (holding that first public interest factor was neutral because "[a]ttempting to accurately understand another court's docket from the outside is always a difficult task"). Furthermore, the Federal Circuit has twice held that "a court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *Apple*, 979 F.3d at 1344; *see also Adobe*, 823 F. App'x at 931 (holding that district court "ran afoul of governing precedent in giving dispositive weight to its ability to more quickly schedule a trial"). Thus, to the extent this factor is relevant, it does not weigh against transfer.

### 3. The remaining public interest factors are neutral.

Because both districts are experienced with patent law, and because there are no concerns about conflicts of law or the application of foreign law, these factors are neutral.

## V.   CONCLUSION

For the foregoing reasons, Cisco respectfully requests that the Court transfer this case.

Dated:  September 14, 2022

Respectfully submitted,

*/s/ Stuart M. Rosenberg , with permission by Michael E. Jones*

Michael E. Jones
State Bar No: 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Brian A. Rosenthal
brosenthal@gibsondunn.com
Katherine Dominguez *(pro hac vice)*
kdominguez@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Stuart M. Rosenberg *(pro hac vice)*
srosenberg@gibsondunn.com
Ryan K. Iwahashi *(pro hac vice)*
riwahashi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendant Cisco Systems, Inc.*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that pursuant to Local Rule CV-7(g), counsel for Defendant Cisco met and conferred with counsel for Plaintiff Corrigent on September 13, 2022 regarding the basis for this motion.  Counsel for Corrigent stated that Cisco should consider the motion opposed.

*/s/ Stuart M. Rosenberg, with permission by*
*Michael E. Jones*
Stuart M. Rosenberg

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2022, the foregoing was filed electronically in compliance with Local Rule 5.1 and served via the Court's electronic filing system on all counsel who have consented to electronic service on this 14th day of September, 2022.

*/s/ Michael E. Jones*
Michael E. Jones