**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| Corrigent Corporation | Civil Action No. 6:22-cv-00396-ADA |
|                       Plaintiff, | **JURY TRIAL DEMANDED** |
|    v. | ████████████████████ |
| Cisco Systems, Inc. | |
|                 Defendant. | **PUBLIC VERSION** |

**PLAINTIFF CORRIGENT'S OPPOSITION TO DEFENDANT CISCO'S MOTION**
**TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**
**UNDER 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND AND STATEMENT OF FACTS ...................................................... 1

        A.      Corrigent's technology was developed in Israel and its principal is in MA. .......... 1

        B.      Defendant has offices in the District, and throughout Texas and the world. .......... 1

        C.      Witnesses and evidence are outside of the NDCA, including in the
                District. ........................................................................................................................ 2

                1.      Documents and source code are stored in Richardson. .............................. 2

                2.      Defendant has Employees that work on the Accused Products from
                        all over the world, including in the District and throughout Texas. ........... 3

III.    DEFENDANT HAS NOT "CLEARLY DEMONSTRATED" THAT THE NDCA
        IS THE "CLEARLY MORE CONVENIENT" FORUM. ................................................... 8

        A.      The private interest factors weigh against transfer. ................................................. 8

                1.      Relative ease of access to sources of proof weighs against transfer. .......... 8

                2.      Availability of compulsory process weighs against transfer. ................... 10

                3.      Cost of attendance for willing witnesses weighs against transfer. ............ 12

        B.      The public interest factors weigh against transfer. ............................................... 14

                1.      Administrative difficulties weigh against transfer. ................................... 14

                2.      Local interest weighs against transfer and is at least neutral. ................... 15

IV.     CONCLUSION ........................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Bel Power Solutions v. Monolithic Power Systems*,
2022 WL 2161056 (W.D. Tex. June 6, 2022) ...................................................................9, 12

*In re CloudFlare, Inc.*,
2022 WL 17075045 (Fed. Cir. Nov. 18, 2022).........................................................................15

*In re Hewlett Packard Enter. Co.*,
2022 WL 32909326 (Fed. Cir. Aug. 9, 2022).........................................................................15

*Intell. Ventures I LLC v. Hewlett Packard Enter. Co.*,
No. 6:21-CV-596-ADA, 2022 WL 1491096 (W.D. Tex. May 11, 2022) ......................8, 9, 10

*Kajeet Inc. v. Trend Micro, Inc.*,
2022 WL 126490 (W.D. Tx. Jan. 12, 2022) ...................................................................13, 14

*In re Monolithic Power Systems, Inc.*,
50 F. 4th 157 (Fed. Cir. 2022) ...............................................................................................12

*Monterey Rsch., LLC v. Broadcom Corp.*,
No. W-21-CV-00541-ADA, 2022 WL 526240 (W.D. Tex. Feb. 21, 2022)..............................9

*Monterey Rsch., LLC v. Broadcom Corp.*,
No. W-21-CV-00542-ADA, 2022 WL 526242 (W.D. Tex. Feb. 21, 2022)..................2, 14, 15

*In re Radmax*,
720 F.3d 285 (5th Cir. 2013) ...................................................................................................9

*In re Vistaprint Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010)................................................................................................8

*VoIP-Pal.com, Inc. v. Verizon Commc'ns, Inc.*,
No. 6:21-CV-00672-ADA, 2022 WL 1785625 (W.D. Tex. June 1, 2022) ......................10, 14

*In re Volkswagen, Inc.*,
545 F.3d 304 (5th Cir. 2008) ...........................................................................................8, 13

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Transcript of the deposition of James Arias (November 14, 2022) |
| 2 | Transcript of the deposition of Divakar Rayapureddy (November 14, 2022) |
| 3 | Transcript of the deposition of June Haase (November 16, 2022) |
| 4 | Transcript of the deposition of Ramesh Ponnapalli (November 16, 2022) |
| 5 | Transcript of the deposition of Sapna Joshi (November 17, 2022) |
| 6 | Transcript of the deposition of Nicolas Breton (November 18, 2022) |
| 7 | Transcript of the deposition of Muhammad Imam (November 21, 2022) |
| 8 | Transcript of the deposition of Michael Young (November 22, 2022) |
| 9 | Transcript of the deposition of Jed Greene (November 29, 2022) |
| 10 | Defendant's Supplemental Objections and Responses to Plaintiff's First Set of Venue-Related Interrogatories (Nos. 1–5), dated October 20, 2022 |
| 11 | Letter from Harvard Business Services, Inc. to R. Baker, bearing Bates range COR_CSC00002376 – COR_CSC00002393 |
| 12 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001218 |
| 13 | VMware office locations |
| 14 | LinkedIn Profile of Stephen Burke (marked as Dep. Ex. 3) |
| 15 | LinkedIn Profile of Wade Hamblin (marked as Dep. Ex. 5) |
| 16 | Email from M. Imam, dated November 17, 2022, produced as Bates number CISCO_CORRIGENT-00001537 |
| 17 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001520 (marked as Dep. Ex. 10) |
| 18 | Email from M. Martinez, dated November 15, 2022, produced as Bates number CISCO_CORRIGENT-00001536 |
| 19 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00000913 (marked as Dep. Ex. 17) |

| Exhibit | Description |
|---------|-------------|
| 20 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001216 (marked as Dep. Ex. 18) |
| 21 | Email from B. Halappa, dated November 14, 2022, produced as Bates number CISCO_CORRIGENT-00001538 |
| 22 | Screenshot of chat message, produced as Bates number CISCO_CORRIGENT-00001542 |
| 23 | Screenshot of chat message, produced as Bates number CISCO_CORRIGENT-00001545 |
| 24 | Assignment data for U.S. Patent No. 8,990,430 |
| 25 | Assignment data for U.S. Patent No. 6,735,198 |
| 26 | Assignment data for U.S. Patent No. 7,154,858 |
| 27 | Assignment data for U.S. Patent No. 7,839,843 |
| 28 | Cisco's Preliminary Invalidity Contentions, dated September 28, 2022 |
| 29 | Cisco Invalidity Claim Chart Exhibit B-3 |
| 30 | Cisco Invalidity Claim Chart Exhibit C-9 |
| 31 | U.S. Patent No. 7,079,555 |
| 32 | U.S. Patent No. 5,420,985 |
| 33 | U.S. Patent No. 5,321,393 |
| 34 | U.S. Patent Application Publication No. 2003/0147387 |
| 35 | U.S. Patent No. 7,551,616 |
| 36 | U.S. Patent No. 6,052,726 |
| 37 | U.S. Patent No. 6,308,282 |
| 38 | U.S. Patent No. 6,782,336 |
| 39 | U.S. Patent No. 5,453,992 |
| 40 | U.S. Patent No. 6,757,247 |

| Exhibit | Description |
|---|---|
| 41 | Texas Instruments office locations |
| 42 | Hewlett Packard Enterprise office locations |
| 43 | Peter Renucci LinkedIn Profile |
| 44 | Jeff Timbs LinkedIn Profile |
| 45 | Stephen Carlton LinkedIn Profile |
| 46 | Mike Fontenot LinkedIn Profile |
| 47 | Lee Whetsel LinkedIn Profile |
| 48 | Jay Cantrell LinkedIn Profile |
| 49 | Edward Schurig LinkedIn Profile |
| 50 | Sejun Song LinkedIn Profile |
| 51 | Pail Elias LexisNexis Profile Search Results |
| 52 | Scott Kyl LexisNexis Profile Search Results |
| 53 | Edward Harbin LexisNexis Profile Search Results |
| 54 | Paras Shah LexisNexis Profile Search Results |
| 55 | Shelia Field LexisNexis Profile Search Results |
| 56 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00000914 (filtered by Texas) |
| 57 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00000915 (filtered by Texas) |
| 58 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00000916 (filtered by Texas) |
| 59 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001029 (filtered by Texas) |
| 60 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001045 (filtered by Texas) |

| Exhibit | Description |
|---------|-------------|
| 61 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001053 (filtered by Texas) |
| 62 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001235 (filtered by Texas) |
| 63 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00000914 (filtered by Texas, then WDTX counties) |
| 64 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00000915 (filtered by Texas, then WDTX counties) |
| 65 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00000916 (filtered by Texas, then WDTX counties) |
| 66 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001029 (filtered by Texas, then WDTX counties) |
| 67 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001045 (filtered by Texas, then WDTX counties) |
| 68 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001053 (filtered by Texas, then WDTX counties) |
| 69 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001235 (filtered by Texas, then WDTX counties) |
| 70 | Google Maps distance calculations from Orlando, Florida to Waco, Texas and San Francisco, California |
| 71 | Google Maps distance calculations from Research Triangle, Durham, North Carolina to Waco, Texas and San Francisco, California |
| 72 | Google Maps distance calculations from Foxborough, Massachusetts to Waco, Texas and San Francisco, California |
| 73 | Google Maps distance calculations from West Newbury, Massachusetts to Waco, Texas and San Francisco, California |
| 74 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001073 |
| 75 | Lex Machina Comparator Report between Western District of Texas and Northern District of California |

| Exhibit | Description |
|---------|-------------|
| 76 | United States District Courts — National Judicial Caseload Profile, available for download at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf |
| 77 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001521 (marked as Dep. Ex. 21) |
| 78 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-00001522 (marked as Dep. Ex. 22) |
| 79 | Spreadsheet, produced as Bates number CISCO_CORRIGENT-0000912 (marked as Dep. Ex. 4) |
| 80 | Cisco Catalyst 9000 Switches, Your network, your way, 3rd ed., bearing Bates range COR-CSC00002690 – COR-CSC00002971 |
| 81 | Vardhaman Marennavar LinkedIn Profile, bearing Bates range COR-CSC00003042 – COR-CSC00003043 |
| 82 | General Warranty Deed from Travis County, Texas, dated March 18, 2022 |
| 83 | Soumya Viswanathan LinkedIn Profile |
| 84 | Tim Hebert LinkedIn Profile, bearing Bates range COR-CSC00002510 – COR-CSC00002515 |
| 85 | Huiyang Yu LinkedIn Profile, bearing Bates range COR-CSC00002580 – COR-CSC00002582 |
| 86 | Joseph Mlodzianowski LinkedIn Profile, bearing Bates range COR-CSC00002635 – COR-CSC00002640 |
| 87 | M. Sean McGee LinkedIn Profile, bearing Bates range COR-CSC00002453 – COR-CSC00002457 |
| 88 | Sury Shant LinkedIn Profile, bearing Bates range COR-CSC00002467 – COR-CSC00002458 |
| 89 | Cisco Invalidity Appendix A – Obviousness of U.S. Patent 6,957,369 |
| 90 | Cisco Invalidity Appendix D – Obviousness of U.S. Patent 7,593,400 |
| 91 | Table of Relevant Prospective Texas Witnesses |
| 92 | Email from R. Kappers, dated November 1, 2022 |

I.       INTRODUCTION

Defendant Cisco's motion to transfer should be denied because Defendant has not "clearly demonstrated" that the NDCA is "clearly more convenient" than this District.  Defendant's motion is premised on the incorrect assertion that nearly all of the work on the Accused Products takes place in the NDCA and hardly anywhere else, especially not Texas.  Reality is different.  Defendant is global, with employees working on the Accused Products all over the world, mostly outside of the U.S. in Canada, India, China, Ireland, and Israel, but also throughout Texas.  Defendant has approximately 4,000 employees and 9 offices in Texas, with 1,331 employees in Austin. Defendant's Richardson office stores product documentation and source code for the Accused Products.  And just as many of Defendant's Texas-based employees work on the Accused Products as Defendant's NDCA-based employees, including Directors of Product Management and Marketing Leads.  A closer and proper look at the transfer factors reveals that each factor weighs against transfer or is neutral.  The NDCA is not the "clearly more convenient" forum.

II.      BACKGROUND AND STATEMENT OF FACTS

A.       Corrigent's technology was developed in Israel and its principal is in MA.

Israel-based Corrigent-Systems Ltd. was a pioneering telecommunications company that invested approximately $200M toward research and development.  Dkt. 1 ¶¶ 8–12.  The Asserted Patents are the fruits of its labor.  *Id*. The inventors reside in Israel.  *Id*. Rich Baker, the President of Corrigent Corp., which obtained all rights to the Asserted Patents, resides in MA.  Ex. 11.

B.       Defendant has offices in the District, and throughout Texas and the world.

Defendant is a communications company with tens of thousands of employees scattered across the U.S. and the world.  Dkt. 39-1, ¶ 4–9; Ex. 1, Arias Tr. at 46-47.  Defendant is headquartered in the NDCA, but most of its employees do not work there.  Dkt. 39-1, ¶¶ 5–7. Defendant has nine offices Texas and eight percent of its U.S. work force works here, including:

1,331 employees work in Austin and 1,509 in Richardson.  *Id.* ¶¶ 6-9; Exs. 12, 74.

      **C.**    **Witnesses and evidence are outside of the NDCA, including in the District.**

Defendant claims that its "management and primary research and development facilities are located in the [NDCA]."  Dkt. 39 at 3.  Based on that, Defendant quips: "Thus it is no surprise that witnesses, documents, and source code related to the Accused Products are located or managed in that district."  *Id*.  Defendant's declarant for this proposition, however, had no idea what R&D occurs in the NDCA and performed no investigation to identify if R&D occurs at other locations. Ex. 3, Haase Tr. at 11. Other declarants revealed a similar theme—they merely provided some names of people they personally knew, and blindly relied on spreadsheets generated by Ms. Haase without even checking the spreadsheets or performing any meaningful investigation of all of the relevant employees in Texas. Ex. 7, Imam Tr. at 8-12, 54-55; Ex. 6, Breton Tr. at 12-13, 33, 45-46, 48.  Defendant selectively provided incomplete and incorrect information, from cherry-picked declarants often with no or irrelevant knowledge, and only did attorney-directed follow-up investigations in an effort to *eliminate* witnesses based in Austin. Ex. 4, Ponnapalli Tr. at 67-70; Ex. 7, Imam Tr. at 56-59. But discovery shows that witnesses and evidence relevant to the Accused Products are located outside of the NDCA, including in the District and throughout Texas, confirming the superficiality of Cisco's investigation.  *Monterey*, 2022 WL 526242, at *7 (transfer denied where investigation "somewhat circumspect and superficial").

      **1.  Documents and source code are stored in Richardson.**

Defendant's discovery responses and corporate designee admit that "Servers store Cisco product documentation are located in Richardson, TX, with failover servers located in Research Triangle Park, NC [RTP]."  Ex. 10 at 9; Ex. 8, Young Tr. at 31-35.  Defendant also admits that: "Servers that store source code for Cisco products are located in [RTP]," with a copy of that source code stored in Richardson.  Ex. 10 at 9; Ex. 8, Young Tr. at 12-15, 18-19, 27, 34-37.  Mr. Young

admitted that product documentation "could be in Texas or any other location", but he did not

know and Defendant did not identify other servers that store product documentation or source code

in the normal course of business.  Ex. 8, Young Tr. at 34-38. ***Richardson and RTP are the only***

***servers storing product documentation or source code in evidence, and no servers in the NDCA***

***storing product documentation or source code are in evidence***.[1]

> ### 2.  Defendant has Employees that work on the Accused Products from all over the world, including in the District and throughout Texas.

**BE 7000** - Defendant's designee, James Arias, is a Product Manager that works from

Orlando, Florida.  Dkt. 39-5 ¶¶ 3, 4.  He stated that "[t]he hardware for the BE7000 is provided by

a Cisco business unit that is managed from" the NDCA, but he was referring only to the

management process of assembling components software and hardware (how to "put them

together"), which is "actually run in our manufacturing/supply chain organization."  Ex. 1, Arias.

Tr. at 31–32.  Mr. Arias did not know who in the NDCA was in charge of this process.  *Id*. at

32:10–20.  Nor did he know of who designs the component hardware, or where.  *Id*. at 33–35.

As for software, Mr. Arias explained that VMware provides the operating system for the

BE7000.  Dkt. 39-5 ¶ 4.  VMware has several offices in Texas, including at least one office in

Austin (*see* Ex. 13), which Mr. Arias did not know or consider.  Ex. 1, Arias Tr. at 37–38.  Mr.

Arias did not know "who at VMware actually develops and designs the operating system" or

whether they do so in Austin or the NDCA.  *Id*. at 36–37.  Employees from Defendant that work

on application software "are located primarily in Bangalore, India, and some employees . . . are

based in or near Richardson, Texas."  Dkt. 39-5 ¶ 4.  Mr. Arias admitted that Chris Pearce, a

---

[1] Defendant's discovery responses only reference to a NDCAL server is to "store document sharing and collaboration systems." Ex. 10 at 9.  Defendant's did not assert that this server stores product documentation or source code. Two weeks after the close of venue discovery and two days before this brief was due, Cisco served an untimely supplemental interrogatory response.  Any attempt to rely on this supplement should be rejected as untimely, and contrary to its 30(b)(6) testimony.

Distinguished Engineer at Cisco who has been with the company more than 20 years, is based in the Dallas-Richardson area and handles bandwidth management related to the BE7000 product. Ex. 12 at 184 (12/36 in Dallas section); Ex. 1, Arias Tr. at 43-44; Dkt. 39-5 ¶ 4.

Mr. Arias admits that his old manager, Stephen Burke, works in Austin, and between 2012–2019 was Director of Product Management overseeing the BE7000. Ex. 1, Arias Tr. at 48–54; Ex. 14. Mr. Burke is now Director of Business Strategy and Acceleration in the same group. *Id.* at 55. Numerous members of Cisco's field sales organization are based in Austin. *Id.* at 46-48; Ex. 79 at 16-17. Mr. Arias omitted from his declaration that his current boss, Wade Hamblin, who took over Mr. Burke's Product Management role, works in Richardson and has been with Cisco for more than 20 years. *Id.* at 10, 26, 54, 71–73, 87-89; Ex. 15. Saurabh Chandra lives in Allen, Texas, and works for Mr. Hamblin in a "customer strategy advisory role" in connection with the BE7000. Ex. 1, Arias Tr. at 71-74. Prakash Mishra is a Technical Lead in Richardson who does supply chain engineering work for BE7000. *Id.* at 76–77; Ex. 79 at 4. Finally, Tim Conyers, an Engineering Product Manager, is based in Allen, Texas who is involved with customer experience for the BE7000. Ex. 1 at 85-86. These witnesses are all relevant to the accused functionalities.

**Catalyst 8000 EDGE/9500** - Defendant's declarant, Muhammad Imam, declared that employees work on the Catalyst 8000 EDGE and Catalyst 9500 from the "Dallas areas" (Richardson), RTP, North Carolina, Canada, India, and the NDCA.[2] Dkt. 39-4 ¶¶ 4–8. For example, Mr. Imam testified that Minhaj Uddin is in Richardson and works on technical marketing for Catalyst 9500. Ex. 7, Imam Tr. at 24–25. Minhaj Uddin is featured as one of the authors of

---

[2] Mr. Imam explained that: RTP has both a software engineering team and marketing team and a sales leader; Canada has "close to a hundred or maybe slightly more," that works on "the common software that we have across both products"; India has "more than a hundred people, probably more" working on "functions like software engineering, testing, various features with the software, within IOS XE" and includes product managers. Ex. 7, Imam Tr. at 15–18, 20–21, 23–28, 37-40.

the 3rd Edition of Cisco's Publication "Cisco Catalyst 9000 Switches: Your Network, Your Way," which discusses the Catalyst 9500 and its operating system (IOS-XE) in detail; unlike Mr. Imam, Mr. Uddin contributed to *each* of the 2017, 2019, and 2022 revisions of that publication.  Ex. 80 at 4-5, 8-9.    Mr. Imam also testified that relevant employees for the Catalyst work from Foxborough, Massachusetts; Sandy, Utah; Ireland; and China.[3]   The Marketing Lead for the Catalyst 9500, Reza Koohrangpour, is also in Austin and oversees six marketing managers.  Ex. 7, Imam Tr. at 35–39; Ex. 77 at 6.  So, too, is Gabriel Dixon, who is a Product Marketing Manager for the Catalyst 8000 Edge.  Ex. 7 at 50; Ex. 16; Ex. 78 at 12.  Numerous technical employees based in Texas worked on Catalyst 8000, including Deepak Gupta and Riley Kraft (software engineers in Austin), as well as Tina Yu and Hassan Naseh (Engineering Technical Leaders) and additional software engineers based in Richardson.  Ex. 78 at 11; Ex. 21.  Finally, "Technical Solutions Architects"—Josh Bell (Spring, TX), Ranga Sridharan (Allen, TX), and Masood Ahmad (Allen, TX)—are on Ivan Duggan's Global Sales Team that "work[s] on routing and SD-WAN, which includes Catalyst 8000 Edge." Ex. 7, Imam Tr. at 51-52; Ex. 78 at 13.

**Nexus 7000/9000** – Defendant's first declarant, Mr. Rayapuredy, only compiles software images written by others, **and has no role in writing the software that performs the relevant switching and routing functions**.  Ex. 2, Rayapureddy Tr. at 16:2–10.  He is a cherry-picked, irrelevant witness.   Defendant's other declarant, Mr. Ponnapalli, is a Director of Software Engineering and asserted that the software for the Nexus is developed and managed by employees in the NDCA, Canada, and India.  Dkt. 39-3 ¶ 1, 3*, 4; Ex. 4, Ponnapalli Tr. at 18–20, 24–25; Ex.

---

[3] The Marketing Lead for the Catalyst 8000 Edge, John Joyal, is in Foxborough MA.  Ex. 7, Imam Tr. at 48-49. The Product Management Leader for the Catalyst 8000 Edge, Archana Khetan, is in Sandy, Utah.  *Id.* at 45-46.  The Routing SD-WAN Sales Leader for the Catalyst 8000 Edge, Ivan Duggan is in Ireland.  *Id.* at 51-52.  Hardware teams for both products are in China.  *Id.* at 53-54.

17.[4]  Mr. Ponnapalli did not mention in his declaration any Austin or Texas employees, but there are several he acknowledged in his deposition. Mr. Ponnapalli admitted that Vardhaman Marennavar works in the Houston area, has been at Cisco over 16 years and focuses on the Nexus 9000. Ex. 4 at 32-33; Ex. 81 ("Developer in Nexus 9K switch"). Cody McCain is an Engineering Product Manager based in Richardson that is identified on the Nexus product spreadsheet. *Id.* at 55; Ex. 17 at 4. There are more than 60 customer delivery consultants and engineers on Cisco's customer enablement team for the Nexus products that are based in Texas (including Austin, Richardson, Spring, and Houston). Ex. 4 at 58-59, 69-70; Ex. 17 at 22-23 (rows 930-995). For example, Rosemary Cortez, is a customer project manager who does work in Austin scheduling deployments of Nexus systems in the field at Home Depot. Ex. 4 at 65-66; Ex. 18.

**ASR 9000 and NCS 540/560** - Defendant again designated someone, Ms. Joshi, that is only "responsible for building the final, compiled images for software that runs" on those products and has no role in writing the software. Dkt. 39-2 ¶ 3; Ex. 5, Joshi Tr. at 11:11–13. Ms. Joshi is thus yet another cherry-picked, irrelevant witness. Defendant also withheld that **her "manager's manager," Soumya Viswanathan, currently is located in Austin**. Ex. 5 at 21. Ms. Viswanathan is a Vice President of Engineering who is "[r]esponsible for platform independent IOS-XR"—the operating system that runs on the ASR 9000s and the NCS 540/560. Ex. 82 (Travis County Deed); Ex. 83 (Viswanathan LinkedIn). Mr. Breton, Cisco's other declarant, is a Leader of Product Management that asserted that employees responsible for those products reside in RTP, Canada, India, or the NDCA. Dkt. 39-6 ¶¶ 3–5; Ex. 6, Breton Tr. at 5, 19–20. "[B]etween 100 to 200

---

[4] Mr. Ponnapalli only identified five engineers in NDCA (Dkt. 39-3 ¶¶ 6, 7), while the team in Canada is "around ten people," and the team in India is at least "hundreds of people" and handles "various aspects" of the products. *Id.* at 19–20, 24–25, 28–31, 60–61. The hardware teams are in the NDCA and Israel, with the team in Israel comprising "a lot" of employees. *Id.* at 7–9, 36–37.

people" are in Canada "working on . . . some pieces of the IOS XR operating system that runs on the [ASR] 9000s and NCS 540/560" and "300 to 400" people are in India. *Id.* at 20–22, 25–27. He admitted that Tariq Habibullah, an employee in Richardson, works as a Customer Delivery Engineering Technical Leader for the ASR 9000 product. *Id.* at 38-39; Ex. 19 at 6.

**Additional employees** - Corrigent sought additional information about who works on the Accused Products.  Defendant responded by producing spreadsheets that allegedly identify the employees that work on the Accused Products.  Defendant's investigation and preparation of these spreadsheets is woefully inadequate and incomplete on its face.[5]  For example, some of the witnesses Defendant is relying on, Mr. Rayapureddy and Ms. Joshi, do not even appear on the spreadsheets associated with their products. *See* Exs. 17, 19, 20.  Corrigent also uncovered several relevant employees that work on the Accused Products from the District and Texas that are either not identified in the product spreadsheets, not identified by declarants, or both.  These include employees such as Joseph Mlodzianowski (Austin-Product Management Architect with "Cisco Nexus 7k & 9k, ASR1/9 and Catalyst switch Expertise"), Sean McGee (Austin-Director of Systems Engineering for, *inter alia*, the Nexus 9000 product line), and Sury Shant (Richardson-Engineering Technical Leader who works on Cisco platforms such as Nexus 9k, Nexus 3k, Nexus 7k, NCS 5500, Cisco 8000, ASR 9k, [and] Catalyst Switches"). Exs. 86-88; Ex. 12 at 20, 290, 443.

Cisco's (incomplete) spreadsheets do, however, identify several employees that work on cross-functional teams for the Accused Products in the District and throughout Texas.  *See* Exs.

---

[5] Defendant's lawyers received a handful of names and Ms. Haase merely generated a spreadsheet of reports to these people. Ex. 3, Haase Tr. at 18, 19, 27.  Ms. Haase does not know any of the employees and performed no investigation to confirm that the spreadsheets "are a complete picture of the employees that are responsible for the accused products in this case."  Ex. 3, Haase Tr. at 29:1–6; *id*. at 25–31.  The spreadsheets also do not identify any employees that previously worked on the Accused Products or are outside of the U.S.  *Id.* at 24-25, 29.

17, 19, 20, 77-79.  Defendant attempts to run from its Austin employees, but its own emails confirm that one of four employees that it tried to disown, Rosemary Cortez, does work related to the Nexus 7000/9000 from Austin.  Ex. 18.  Other belatedly produced documents reaffirmed that "Austin team member" Deepak Gupta is a software engineer that "works on Catalyst 8000 Edge" and "is working on SDWAN manageability infra[structure]."  Ex. 21; *see also* Ex. 78.

Contrary to Defendant's self-serving conclusion that the majority of witnesses and documents are in the NDCA based on cherry picked witnesses and incomplete investigations, relevant witnesses and documents are located in the District, Texas, and around the world.

## III.   DEFENDANT HAS NOT "CLEARLY DEMONSTRATED" THAT THE NDCA IS THE "CLEARLY MORE CONVENIENT" FORUM.

Defendant has failed to meet its burden to "clearly demonstrate" that NDCA is "clearly more convenient" than this forum.  *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010); *In re Volkswagen, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008).

### A.   The private interest factors weigh against transfer.[6]

#### 1.   Relative ease of access to sources of proof weighs against transfer.

Defendant is wrong that "the vast majority of evidence" is in the NDCA.  Dkt. 39 at 9. Defendant admits that product documentation is collected centrally and stored in Richardson, and source code is collected centrally in RTP, with a copy stored again in Richardson.  Ex. 10 at 9; Ex. 8, Young Tr. at 12-15, 34-38.  Relative to the NDCA, it would be easier to access documents from the District since they are located down the road in Richardson and RTP.  And, in the end, Richardson and RTP—**not the NDCA**—are the only **known locations** that host product documentation and source code and weigh against transfer.[7]  *Intell. Ventures I LLC v. Hewlett*

---

[6] The first through third private interest factors weigh against transfer.  The fourth is neutral.

[7] These Richardson and RTP locations are not "irrelevant."  Dkt. 39 at 9 n.1, citing *LED Wafer*

*Packard Enter. Co.*, No. 6:21-CV-596-ADA, 2022 WL 1491096, at *4 (W.D. Tex. May 11, 2022). ("The Court accords the location of the Texas servers weight, as their proximity to this Court may bear on relative ease of access to documents therein.").

Defendant incorrectly asserts this factor supports transfer because, despite the locations of its servers, certain documents and source code are "managed and controlled" from NDCA.  This does not refer to where the materials are actually stored but rather merely relates to where certain employees are located.[8]  Ex. 7, Imam Dep. at 32:1-20.  Employees that work on the Accused Products in technical, marketing, and other capacities, reside and work all over the world, including at least in Austin and Richardson, Florida, North Carolina, Utah, Massachusetts, the NDCA, India, Canada, Israel, Ireland, and China. *See* Ex. 6, Breton Dep. at 30-31 (admitting "management" was distributed across several locations).   Given the locations of these numerous relevant individuals, the ease of access to relevant documents and source code is just as easy in the District and Texas than in the NDCA.  *Intell. Ventures I*, 2022 WL 1491096, at *5 (evidence in India, Massachusetts, Colorado and Texas did not weigh in favor of transfer); *Bel Power Solutions v. Monolithic Power Systems,* 2022 WL 2161056, at *7 (W.D. Tex. June 6, 2022) (evidence in China, NDCA and Texas did not weigh in favor of transfer).

Defendant also incorrectly asserts that this case should be transferred because source code inspection in this case will be "managed primarily in Northern California."  Dkt. 39 at 8 (citing Young Decl. ¶ 5).   "[P]arties cannot manufacture venue with discovery ultimatums."  *Monterey*

---

*Solutions, LLC v. Samsung Elec. Co., Ltd. et al*. As the Court noted, under controlling Fifth Circuit law (*In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013)), "the question is relative ease of access."
[8] Defendant does not identify a single, relevant product document or source code pertaining to the Accused Products.  Cisco's unsupported general allegations are insufficient and do not support transfer.  *Monterey Rsch., LLC v. Broadcom Corp.,* No. W-21-CV-00541-ADA, 2022 WL 526240, at *3 (W.D. Tex. Feb. 21, 2022).

*Rsch., LLC*, 2022 WL 526240, at *3. Mr. Young testified that engineers he coordinates with to arrange inspections "might be located outside" of the NDCA, and the review itself could take place anywhere "as long as there's connectivity." Ex. 8, Young Tr. at 6, 11–13. Defendant conceded server **locations** for source code productions are in Richardson or RTP. *Supra*, pp. 2-3.

Finally, Defendant points to Juniper and Intel (both headquartered in the NDCA) as potential third-party prior art documents. Dkt. 39 at 9. Defendant's reliance on these and other third-parties fails for the reasons set forth below in regard to the second private interest factor.

### 2.   Availability of compulsory process weighs against transfer.

Defendant's argument that this "factor weighs heavily in favor of transfer" fails for several reasons. First, Defendant does not name any former employee that developed the accused functionalities, currently resides in the NDCA, and will be called to testify. Defendant offers only speculation: "it is foreseeable that a number of Cisco's former employees, many of whom likely reside near Cisco's headquarters, may be called to testify." Without more, "the Court cannot reasonably weigh their relevance." *Intell. Ventures I LLC v. Hewlett Packard Enter. Co.*, No. 6:21-CV-596-ADA, 2022 WL 1491096, at *8 (W.D. Tex. May 11, 2022).

Cisco also ignores its own ***former*** employees based in this District that are relevant and subject to the subpoena power of the court. For example, Tim Hebert, based in Austin, worked for Cisco more than two decades as a tester for "ASR 9000 Edge Routers" and the IOS-XR operating system, which is used for both the ASR 9000 and NCS 540/560 product, and has specific expertise in Multiprotocol Label Switching (MPLS). Ex. 84, Tim Hebert LinkedIn. And Huiyang Yu, another former employee based in Austin, was a software engineer that worked for Cisco for 8 years with a focus on the Nexus 7000 and 9000 products. Ex. 85, Huiyang Yu LinkedIn.

Second, Defendant's "third-party prior art witnesses" do not favor transfer. To start, the Court heavily discounts prior art witnesses because they "rarely appear at trial." *VoIP-Pal.com,*

*Inc. v. Verizon Commc'ns, Inc.*, No. 6:21-CV-00672-ADA, 2022 WL 1785625, at *4 (W.D. Tex. June 1, 2022).  Defendant only identifies the following people in NDCA: Michael Smith, Thomas Edsall, Sitaram Dontu, Kui Zhang, Nischal Sheth, Jim Murphy, Arthi Ayyangar, Chaitanya Kodeboyina, Juniper Networks, and Intel.  *See* Dkt. 39-43 through 39-50, Exs. 34–41; Dkt. 39-57 and 39-58, Exs. 48 and 49.  Mr. Smith and Mr. Edsall are not even third-parties.  Mr. Smith is a "Distinguished Engineer at Cisco" (Dkt. 39-43, Ex. 34) and Mr. Edsall is a "Emeritus Advisor/Fellow at Cisco."  Dkt. 39-45, Ex. 36.  Mr. Smith's and Mr. Edsall's prior art patents— along with Kui Zhang's and Sitaram Dontu's—are also assigned to Defendant, rendering them irrelevant to the unwilling witness factor.  *See* Dkt. 39-33 through 39-36; Exs. 24–27.

Moreover, applying Defendant's logic to the rest of its invalidity contentions, ***more third party inventors and corporate assignees are located in Texas, and subject to this Court's subpoena power,*** than in the NDCA, including non-party assignees Alcatel (Richardson according to patents cited by Defendant), Texas Instruments (Dallas), and Hewlett-Packard Development Co. (Dallas), and non-party inventors Peter Renucci (Austin), Jeffrey Timbs (Austin), Stephen Carlton (Plano), Michael Fontenot (Plano), Lee Whetsel (Allen), Jay Cantrell (Dallas), Ed Schurig (Frisco), Song, Sejun (College Station), Elias, Paul A. (Plano), Scott, Kyl W. (Richardson), Harbin, Edward A. (Dallas), Shah, Paras A. (Houston), and Shelia Field (Frisco).  Exs. 28-30 (invalidity contentions and claim charts); Exs. 31–40 (prior art patents listing the above-referenced individuals); Ex. 89-90 (charts regarding '369 patent and '400 patent); Exs. 41-55; *see* Ex. 91.

Defendant also overlooks its large customer base within the District and throughout Texas. *See generally* Ex. 10 at 10; Exs. 56-62, 63-69 (spreadsheets showing sales of accused products to numerous customers in Texas); Ex. 9, Greene Tr. at 4-52.  Defendant's customers in Texas (such

as Home Depot,[9] *supra*, p. 6) are relevant to Corrigent's claims of indirect and contributory infringement that play an important role in this case and also weigh against transfer. *In re Monolithic Power Systems, Inc.,* 50 F. 4th 157, 161 (Fed. Cir. 2022) at *7 (denying mandamus where customers are located in WDTX and witnesses could be compelled relating to induced and contributory infringement); *Bel Power Solutions v. Monolithic Power Systems,* 2022 WL 2161056 (W.D. Tex. June 6, 2022) (evidence of customers near Austin weighs against transfer).

### 3.   Cost of attendance for willing witnesses weighs against transfer.

**First**, numerous of Defendant's US-based employees who work on the Accused Products and might testify in this action are based in Texas—Austin, Richardson, Spring, or Allen—and would find it far more convenient to attend trial in this District than in the NDCA.  Of those named, many more reside in the District and Texas than they do in the NDCA.[10]  A summary of nearly 40 relevant witnesses in Texas is included as Ex. 91.  These witnesses include: BE 7000 Product Management leads, a supply chain management engineer, and numerous field sales members in Austin and Richardson; Catalyst 8000/9500 product marketing lead, technical engineers, leaders, and technical solutions architects in Austin, Richardson, Spring, and Allen; for Nexus, dozens of customer enablement team members and a customer project manager in Austin and Richardson; and for ASR 9000 and NCS 540/560, a Vice President of Engineering who covers the IOS-XR operating system in Austin, along with a Customer Delivery Engineer based in Richardson.  *See* §

---

[9]   Corrigent requested, but Defendant refused to produce the names of its Texas-based customers who purchase the Accused Products.  Ex. 92 (Nov. 1, 2022 Email); Ex. 9, Greene Tr. at 38-39.

[10]  Texas witnesses include Stephen Burke (Austin), Wade Hamblin (Richardson), Saurabh Chandra (Richardson), Tim Conyers (Allen), Tina Yu (Richardson), Hassan Naseh (Richardson), Josh Bell (Spring), Rangan Sridharan (Allen), Masood Ahmad (Allen), Chris Pearce (Dallas-Richardson), Minhaj Uddin (Richardson), Reza Koorhrangpour (Austin), Gabriel Dixon (Austin), Forest Wilder (Austin), Rosemary Cortez (Austin), Riley Kraft (Austin), Vardhaman Marennaver (Houston), Cody McCain (Richardson), and Deepak Gupta (Austin).  *See e.g.,* Ex. 91.

II.C.2. *supra*. Defendants submitted declarations from a handful of employees or contractors, but at most only three of these are potentially relevant.[11]  The employees in or nearby this district underscore the convenience of **this District** and weigh heavily against transfer.[12]  Defendant's other US-based employees are scattered across the country and are neutral.  Moreover, several witnesses reside in neither forum, but the District is more convenient.[13]

**Second**, most potential willing technical witnesses are outside of the U.S., and therefore Texas is no less convenient than California for these witnesses.  As Mr. Arias explained: "All of our organizations are global."  Ex. 1, Arias Tr. at 47.  The majority of Defendant's employees work overseas, in countries like Canada, India, China, Ireland, and Israel.  *See* § II.C.2. *supra*.  As for Corrigent, Israel is home to the inventors.  These witnesses could travel to either district and the convenience for most witnesses is therefore neutral.  Even where aspects of the products are developed in California, the software for numerous of the Accused Products is heavily developed or managed in Israel, Canada, and India.  *Id.*  This includes accused functionalities like Bidirectional Forwarding Detection (BFD) and Multiprotocol Label Switching, which is developed globally (outside of California), and relevant witnesses are from foreign countries.  Ex. 4, Ponnapalli Tr. at 29-31 (Nexus MPLS in India);  Ex. 6, Breton Tr. at 26-29 (ASR/NCS MPLS

---

[11] One declarant, Haase, merely confirmed Cisco is headquartered in NDCA.  Young merely confirmed Cisco manages source code review from NDCA.  Rayapureddy and Joshi merely compile images for software and are extremely unlikely to testify.  Arias is a product manager in Orlando, FL not NDCA.  These declarants are irrelevant and/or do not support transfer to NDCA.
[12] Cisco has not identified or provided sufficient evidence to determine if there are other potential witnesses in NDCA or WDTX.  In such circumstances, the Court has at the very least refused to weigh this factor in favor of transfer.  *Kajeet Inc. v. Trend Micro, Inc.*, 2022 WL 126490, *5 (W.D. Tx. Jan. 12, 2022) *citing In re Overhead Door Corporation,* 2021 WL5816634, at *2 (Fed. Cir. 2021).
[13] For example, the District is closer for James Arias (Orlando, FL), Mark Palmer (RTP, NC), Josh Joyal (Foxborough, MA) and Rich Baker (West Newbury, MA).  *Compare Volkswagen*, 545 F.3d at 317 (instructing to consider the "additional distance to be travelled") and Exs. 70-73.

in Ottawa and India); Ex. 7, Imam Tr. at 25-30 (MPLS and BFD in Bangalore). The hardware for

several accused products is also developed outside the United States.  Ex. 6, Breton Tr. at 49-53

(NCS and ASR Hardware in Bangalore); Ex. 7, Imam Tr. at 30-31, 53-54 (Catalyst Hardware in

Austin and China); Ex. 4, Ponnapalli Tr. at 8-10 (Nexus Hardware in Israel).[14]

> **B.      The public interest factors weigh against transfer.[15]**

> **1.    Administrative difficulties weigh against transfer.**

The first factor weighs against transfer because this Court reaches trial faster than the

NDCA.  The unrebutted evidence shows a clear disparity between the time-to-trial in the Court (2

years to trial) and the NDCA (3 years to trial).  Ex. 75 at 5; Ex. 76 at 35, 67; *Kajeet*, 2022 WL

126490, at *7 ("the NDCA, on average, takes over one year longer to get patent cases to trial").

This data "is well-supported by this Court's proven track record to expeditiously resolve patent

cases before it."  *Monterey Rsch., LLC v. Broadcom Corp.*, No. W-21-CV-00542-ADA, 2022 WL

526242, at *15 (W.D. Tex. Feb. 21, 2022) (collecting cases).  This factor, therefore, weighs against

transfer regardless of whether it is "the most speculative" or that it should only be weighed "as a

single factor."  *Compare VoIP-Pal.com*, 2022 WL 1785625, at *5 (quoting *In re Genentech*, 566

F.3d at 1347) (denying transfer and finding this factor weighs against transfer).

Defendant mistakenly suggests that rapid disposition of this case is "not particularly

relevant," but the Court has disposed of similar arguments before and should do the same here.

*See Monterey Rsch.*, 2022 WL 526242, at *15 (holding that "rapid disposition of this case is

important").  Nor does the number of pending cases alter the analysis.  *See* Dkt. 39 at 15, citing

---

[14] The hardware for the Catalyst 9200/9300 is developed in Austin.  Ex. 7 at 30-31. Catalyst
9200/9300 and Catalyst 9500 are part of the same product family (*see* Ex. 80), and thus Corrigent
believes that these Austin personnel are relevant to products that are or will be accused in this case.
[15] The first and second public interest factors weigh against transfer.  The rest are neutral.

*XR Communications, LLC v. HP Inc.*  Other contemporaneous decisions from the Court, however, find this factor to weigh against transfer under the same facts.

### 2.  Local interest weighs against transfer and is at least neutral.

The District and Texas has a local interest, and it is greater than, and at least equal to, any local interest of the NDCA.  Defendant's Austin office has 1,331 employees, its offices in Allen, Spring, and Richardson, Texas, host another 2,057 employees, and 404 more work either in El Paso, Carrolton, Dallas, Houston, or Roanoke, Texas.  *See* § II.C.2. *supra*.  Richardson stores the product documentation and source code for the Accused Products, at least for litigation purposes. Just as many of Defendant's Texas-based employees work on the Accused Products as those in the NDCA.  Defendant has made significant sales and has numerous customers of Accused Products in the District throughout the State of Texas.  *See* Exs. 56-62; Exs. 63-69.

Defendant argues that the NDCA has a local interest "[b]ecause the Accused Products were developed primarily . . . in California, and individuals who are knowledgeable about those products and the prior art live and work there."  Dkt. 39 at 13.  As Corrigent has explained, discovery tells a very different story.  Even if the NDCA has a local interest in this case, it is outweighed by (or merely equal to) the local interest of the District and Texas.

## IV.   CONCLUSION

Given the evidence transfer should be denied.  At the very least there are factors that weigh against transfer, many that are neutral and at worst some that only slightly favor transfer.  Under such circumstances, the Court should deny transfer.  *In re CloudFlare, Inc.*, 2022 WL 17075045, at *1 (Fed. Cir. Nov. 18, 2022) (denying mandamus where some employees in WDTX worked on accused products and WDTX was convenient for potential sources of proof); *In re Hewlett Packard Enter. Co.*, 2022 WL 32909326, at *1-2 (Fed. Cir. Aug. 9, 2022); *Monterey*, 2022 WL 526242, at *17 (transfer denied where "close call" deemed insufficient for transfer).

15

Dated: December 14, 2022                    Respectfully submitted,

By: */s/ James R. Nuttall*

Charles Ainsworth
State Bar No. 00783521
Robert Christopher Bunt
State Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 418
Tyler, TX 75702
(903) 531-3535
E-mail: charley@pbatyler.com
E-mail: rcbunt@pbatyler.com

James R. Nuttall (IL 6243585) *pro hac vice*
Robert F. Kappers (IL 6313187) *pro hac vice*
Daniel F. Gelwicks (IL 6320663) *pro hac vice*
STEPTOE & JOHNSON LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577-1300
E-mail: jnuttall@steptoe.com
E-mail: rkappers@steptoe.com
E-mail: dgelwicks@steptoe.com

Thomas C. Yebernetsky (DC 219497) *pro hac vice*
Christopher A. Suarez (IL 6307113) *pro hac vice*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
E-mail: tyebernetsky@steptoe.com
E-mail: csuarez@steptoe.com

Michael C. Miller (NY 2066256) *pro hac vice*
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
E-mail: mmiller@steptoe.com

*Attorneys for Plaintiff Corrigent Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic

service are being served this 14th day of December, 2022, with a copy of this filing via email.

*/s/ James R. Nuttall*
James R. Nuttall

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served this 21st day of December, 2022, with a copy of the public version of the preceding filing via the Court's CM/ECF system.

*/s/ James R. Nuttall*
James R. Nuttall