# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

Corrigent Corporation

                Plaintiff,

    v.

Cisco Systems, Inc.

                Defendant.

Civil Action No. 6:22-cv-00396-ADA

**JURY TRIAL DEMANDED**

# PLAINTIFF CORRIGENT CORPORATION'S
# OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
# ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C)

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    BACKGROUND ............................................................................................................ 1

       A.    Procedural History ............................................................................................. 1

       B.    The '369 Patent and Claim Construction ............................................................ 2

       C.    The '485 Patent and Claim Construction ............................................................ 5

III.   THE COURT SHOULD DENY CISCO'S MOTION FOR JUDGMENT ON THE
       PLEADINGS BECAUSE THE ASSERTED CLAIMS OF THE '369 AND '485
       PATENTS CLAIM PATENT ELIGIBLE SUBJECT MATTER ..................................... 6

       A.    Legal Standards.................................................................................................. 6

       B.    The Asserted Claims of the '369 Patent Are Patent Eligible............................... 8

             1.    Defendant has not established that claim 15 of the '369 patent
                   is representative of all the asserted claims. ................................................. 8

             2.    The asserted claims of the '369 patent are eligible under the
                   two-step test of *Alice*................................................................................. 10

                   a)    Step One: The asserted claims (which add or contain
                         additional requirements to those recited in claim 15)
                         are not directed to an abstract idea................................................ 10

                   b)    Step Two: The asserted claims recite inventive concepts............. 13

       C.    The Asserted Claims of the '485 Patent Are Patent Eligible.............................. 14

             1.    Defendant has not established that unasserted claim 16 of the
                   '485 patent is representative of the asserted claims.................................... 14

             2.    The asserted claims of the '485 patent are eligible under the
                   two-step test of *Alice*................................................................................. 16

                   a)    Step One: The asserted claims are not directed to an
                         abstract idea. ................................................................................ 16

                   b)    Step Two: The asserted claims recite inventive concepts............. 18

IV.    JUDGMENT OF INELIGIBILITY IS NOT WARRANTED AND CISCO'S
       MOTION SHOULD BE DENIED .................................................................................. 19

V.     CONCLUSION............................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)..................................................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)........................................................................... *passim*

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)..............................................................................6, 8

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018)................................................................................13

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018)..........................................................................11, 12

*Corrigent Corp. v. Dell Techs., Inc.*,
    2023 U.S. Dist. LEXIS 36242 (D. Del. Mar. 3, 2023) .................................... *passim*

*Ecolab Inc. v. DuBois Chemicals, Inc.*,
    2023 WL 7019266 (D. Del. Oct. 25, 2023) .............................................................20

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)................................................................................13

*Enfish, LLC v. Microsoft Corp.*
    822 F.3d 1327 (Fed. Cir. 2016)........................................................10, 11, 13, 16

*McRO, Inc. v. Bandai Namco Games America Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)..........................................................................12, 17

*Packet Intelligence LLC v. NetScout Sys.*,
    965 F.3d 1299 (Fed. Cir. 2020)................................................................................17

*Realtime Data LLC v. Reduxio Sys., Inc.*,
    831 F. App'x 492 (Fed. Cir. 2020) .........................................................................20

*Rembrandt Wireless Techs., LP v. Broadcom Inc.*,
    2019 WL 6799106 (C.D. Cal. Aug. 22, 2019)........................................................11

*Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*,
    2020 WL 278481 (W.D. Tex. Jan. 10, 2020) ........................................7, 12, 18, 19

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019)................................................................................17

*Teleconference Sys. LLC v. Metaswitch Networks Corp.*,
  2019 WL 6699820 (E.D. Tex. Feb. 5, 2019) ..........................................................................11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)..............................................................12, 13, 17, 18

*Uniloc USA, Inc. v. ADP, LLC*,
  772 F. App'x 890 (Fed. Cir. 2019) ...........................................................9, 15, 16

*Videoshare, LLC v. Google LLC*,
  2020 WL 6365543 (W.D. Tex. May 4, 2020) ........................................................7

## Statutes

35 U.S.C. § 101 ................................................................................................ *passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6)........................................................................................1

Fed. R. Civ. P. 12(c) ...............................................................................1, 8, 19, 20

## <u>TABLE OF EXHIBITS</u>

| Exhibit | Description |
|---------|-------------|
| 1 | Claim Chart for '369 Patent from Initial Infringement Contentions, dated August 3, 2022 |
| 2 | Claim Chart for '485 Patent from Initial Infringement Contentions, dated August 3, 2022 |
| 3 | Excerpt from '369 patent prosecution history |
| 4 | Excerpt from '485 patent prosecution history |
| 5 | C. Suarez Email regarding Case Narrowing Election, dated October 31, 2023 |
| 6 | *Corrigent Corp. v. Dell Techs., Inc.*, No. 22-cv-496, Dkt. 11 (D. Del. Jun. 24, 2022) |
| 7 | *Health Discovery Corp. v. Intel Corp.*, No. 22-cv-356, Dkt. 55 (W.D. Tex. Feb. 17, 2023) |

## I.      INTRODUCTION

Plaintiff Corrigent Corporation ("Corrigent") opposes Defendant Cisco Systems, Inc.'s ("Cisco") motion for judgment on the pleadings.  The issues raised under 35 U.S.C. § 101 are not amenable to judgment on the pleadings for either the '369 or '485 patent.  The asserted claims of these patents are also not invalid as patent ineligible, as both patents are directed to unconventional technologies that incorporate numerous inventive concepts.  Cisco's Rule 12(c) motion is also inappropriate at this stage of the case, where the Court's deadline for amending pleadings has already passed, discovery has been pending for more than six months, opening expert reports are due in less than a month, and summary judgment briefs are due in less than two months.  Cisco filed its Rule 12(c) motion at the eleventh hour to avoid the factual disputes that would arise on a motion for summary judgment or at trial.  Cisco's timing is troubling because the same attorneys representing Cisco filed a virtually identical motion on behalf of Dell over a year ago—on June 24, 2022.  *See Corrigent Corp. v. Dell Techs., Inc.*, No. 22-cv-496 (D. Del.), Dkt. 10–11; Ex. 6.  The Court should not reward such gamesmanship, and Cisco's motion should be denied.

## II.     BACKGROUND

### A.      Procedural History

Corrigent filed its complaint asserting infringement of the '369 and '485 patents on April 19, 2022—more than eighteen months ago.  Dkt. 1 ("Compl.").  Cisco did not move to dismiss under Rule 12(b)(6), and answered the Complaint on July 6, 2022.  Dkt. 22.  After this Court denied Cisco's transfer motion on March 16, 2023, the Court held its *Markman* hearing on March 17, 2023 and issued its *Markman* order on March 21, 2023.  Dkt. 66–69.

Following the *Markman* hearing, fact discovery opened on March 20, 2023.  Over the following six months of fact discovery, Corrigent has propounded interrogatories, requested documents, taken depositions, and reviewed source code pertinent to both the '369 and '485

patents. Fact discovery closes on November 10, 2023, and opening expert reports are due on November 21, 2023. Dkt. 103. During the course of the pending fact and expert discovery, the Court's deadline to amend pleadings ("includ[ing] amendments in response to a 12(c) motion") passed on July 31, 2023. Dkt. 84. Despite all of the above, Cisco filed its 12(c) motion on October 3, 2023—near the tail end of fact discovery, almost a year after the close of the pleadings, and months after the Court's deadline for amending pleadings. Dkt. 94.

During fact discovery, and while Cisco's motion was pending, the parties met and conferred regarding case narrowing on October 13, 2022, as this Court requires. Through that process, Corrigent agreed to reduce the number of asserted patents to no more than five claims per asserted patent by today. Thus, the only asserted claims remaining in this case for the '369 patent are 1, 2, 15, 18, and 21, and the only asserted claims remaining in this case for the '485 patent are 4, 9, and 14. *See* Ex. 5 (Case Narrowing Email Election of October 31, 2023).

### B.     The '369 Patent and Claim Construction

The '369 patent is directed to a modular switching system that performs non-intrusive, diagnostic self-testing. Dkt. 1 (Compl) ¶ 16; Dkt. 1-2 ("'369 patent") at Abstract, 1:5–7. The inventions of the '369 patent, for example, "enable[] an electronic system to test its idle lines and components and detect hidden failures without intruding on normal traffic carried by the system's active lines." '369 patent at 2:26–29. "The testing method makes use of existing components in the system and requires substantially no dedicated testing hardware. It is applicable to all types of subsidiary modules, even in systems that mix different modules using different data formats and communication protocols." *Id*. at 2:29–34; *see also* Compl. ¶ 16.

One embodiment of the inventions of the '369 patent is shown in Fig. 1.



FIG. 1

The modular switching system includes a backplane 26, a main module 22 having switch 28 that is plugged into the backplane 26, and a number of subsidiary modules 24 (A, B, . . . K) also plugged into the backplane 26.  '369 patent at 4:54–5:54, Fig. 1.

The modular switching system self-tests for failures: "failures may result, for example, from changes in temperature or humidity, from electrostatic discharge or from ionizing radiation." *Id*. at 5:34–36.  The modular switching system comprises a system control processor 42 (on main module 22 in Fig. 1) coupled to a number of subsidiary processors 44 (on subsidiary modules 24). *Id*. at 5:32–54, Fig. 1.  These processors perform the non-intrusive diagnostic self-testing using the traces that connect the modules of the system.  *Id*. at 5:55–6:53, Fig. 2; *see also* Compl. ¶ 16.

To self-test, a subsidiary module 24 and corresponding trace are selected as an "aid trace" to aid the self-testing of other, idle traces connecting other subsidiary modules 24.  '369 patent at 5:61–63, Figs. 1–2.  Processor 42 then instructs a processor 44 on the subsidiary module 24 associated with the aid trace 40 "to loop back all traffic that it receives on trace 40" through the switch on the main module.  *Id*. at 5:67–6:22.  With the aid trace configured, the modular switching system proceeds to test each idle trace by exchanging test traffic between the aid trace and idle trace through the switch on the main module until testing is complete.  *Id*. at 6:23–53.

The '369 patent was an improvement over what was known, routine, well understood, and conventional in the art for several reasons.  *See* Compl. ¶ 18.  First, to self-test, the modular

3

switching system tests various idle lines and components flexibly, without disrupting normal traffic. *See, e.g.*, '369 patent at 2:26–29. Second, the '369 patent describes how the diagnostic self-testing may be performed even if the subsidiary modules 24 are of different types that can transmit data in different formats. *See, e.g.*, *id*. at 2:31–28. Moreover, the loopback "function is performed by the backplane interface component, which simply buffers and returns the stream of data bits that it receives," so "[a]s long as the loopback setting is in effect, module K makes no attempt to process the data that it receives." *Id*. at 6:2–7. "Therefore, it makes no difference whether or not the data are in a format that module K is able to recognize and process." *Id*. at 6:7–9. This, too, provides the modular switching system with significant flexibility to test its various idle lines. These aspects were novel, and not well understood, routine, or conventional at the time.

Corrigent's original complaint and contentions asserted infringement of all 26 claims of the '369 patent. Compl. ¶¶ 57–71; Dkt. 1-7 (Claim Chart for '369 Patent); Ex. 1 (Claim Chart for '369 Patent from Initial Infringement Contentions Dated August 3, 2022). However, through the Court's narrowing process, the only remaining asserted claims of the '369 patent are claims 1, 2, 15, 18, and 21. Claim 15 is directed to modular switching systems that improved the computer and communications technology available at the time of invention and overcame significant challenges in the field. Compl. ¶¶ 16–18. For example, the modular switching system of claim 15 communicates test traffic through the switch on the main module (*e.g.*, "the system control processor being further operative to cause test traffic to be transmitted over the second idle trace from the second subsidiary module to the main module"), which, as described above, permits testing of various idle lines and components flexibly. '369 patent at claim 15.

One Court has already held that claim 15 is not abstract under Step One of the *Alice* test, rejecting Cisco's counsel's previous motion to dismiss in the *Dell* case. *Corrigent Corp. v. Dell*

*Techs., Inc.*, No. 22-cv-496-RGA, 2023 U.S. Dist. LEXIS 36242, at *1 (D. Del. Mar. 3, 2023) (holding that Court is "not convinced that Claim 15 [of the '369 patent] is claiming patent-ineligible subject matter").  The asserted claims of the '369 patent (claim 15 included) are directed to modular switching systems that improved the computer and communications technology available at the time of invention and overcame significant challenges in the field.  Compl. ¶ 16-18.  This Court has also construed the claims to require an order of steps, and issued constructions of "idle line," "subsidiary module" and "backplane" that were not present in *Dell.*  Dkt. 69 at 2–3.

### C.    The '485 Patent and Claim Construction

The '485 patent is directed to network switches and routers configured to measure latency between nodes within a network.  Compl. ¶ 22; Dkt. 1-3 ("'485 patent") at 1:6–10, 2:59–61, Abstract.  The inventions of the '485 patent "provide simple, accurate methods for measuring round-trip latency between pairs of nodes in a network."  Compl. ¶ 22; '485 patent at 2:65–67.  One embodiment of the '485 patent is shown in Fig. 1.  The network 20 of Fig. 1, a switching or router network, comprises nodes 22 "connected by bidirectional communication media, such as optical fibers or conductive wires."  '485 patent at 6:21–40, Fig. 1.  The '485 patent describes numerous ways how the invention can measure latency and notes that the invention overcame several challenges in the art, including the need to synchronize clocks at originating and peer nodes.  '485 patent at 6:41–53; *see also id.* at 2:34–55 (describing how the '485 patent overcame several drawbacks that existed in the art), Abstract; *see also* Compl. ¶ 22.

The specification introduces the concept of a latency measurement packet (LMP), which may include components relating to timing the transmission and receipt times at peer and generating nodes.  *See* '485 patent at Table I.  "Preferably, the LMP also contains an indication of a class of service (CoS)."  *Id.* at 3:21–25.  Including a CoS indicator allows nodes on the network to handle packets "with the same level of priority [] at this CoS level" when latency is measured.

*Id.* at 7:56–58.  The system can also "disregard[] the respective latencies of any of the packets that are received [at a node] out of the sequence, as indicated by . . .  serial numbers."  *Id.* at 5:1–6.

Corrigent's  original  complaint  and  infringement  contentions  alleged  that  Defendant infringes claims 1–20 of the '485 patent.  Compl. ¶¶ 67-72;  Dkt. 1-8 (Claim Chart for '485 Patent); Ex. 2 (Claim Chart for '485 Patent from Initial Infringement Contentions Dated August 3, 2022). However, through the Court's narrowing process, the only remaining asserted claims of the '485 patent are claims 4, 9, and 14.  Independent claim 16 is no longer asserted in this case. Cisco's motion seeks to dismiss all claims of the '485 patent (*see generally* Cisco Br.).  While claim 16 was dismissed in the *Dell* case, it is not asserted here, and the same Court held that claim 16 is not "necessarily representative of every claim of the ['485] patent," and that asserted claim 9 "consists of substantially more" than claim 16.  *Dell*, 2023 U.S. Dist. LEXIS 36242, at *4.  This Court also construed the '485 patent to limit the meaning of "latency measurement packet" to include at least some of the fields disclosed in Table I of the patent.  Dkt. 69 at 3.  The asserted claims of the '485 patent are directed to switching and router networks configured to measure latency between nodes in a specific manner that improved the computer and communications technology availability at the time of invention and overcame significant challenges in the field.  Compl. ¶¶ 22–24.

## III.   THE COURT SHOULD DENY CISCO'S MOTION FOR JUDGMENT ON THE PLEADINGS BECAUSE THE ASSERTED CLAIMS OF THE '369 AND '485 PATENTS CLAIM PATENT ELIGIBLE SUBJECT MATTER

### A.   Legal Standards

"The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which underlies step two of the *Alice* framework, "is a question of fact.  Any fact . . . that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).  Resolving eligibility on the pleadings, therefore, is appropriate "only when there

are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). "[P]lausible factual allegations may preclude dismissing a case under §101 where, for example, 'nothing on th[e] record . . . refutes those allegations as a matter of law.'" *Id.* (citing *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016)).

"[B]ecause a patent is presumed valid and requires clear and convincing evidence to prove its invalidity," a motion on the pleadings "is a procedurally awkward place for a court [to] resolve a patent's § 101 eligibility." *Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*, 19-CV-00257-ADA, 2020 WL 278481, at *5 (W.D. Tex. Jan. 10, 2020). When considering motions regarding patent eligibility under 35 U.S.C. § 101, "[i]nsufficient discovery is another factor that can affect a court's analysis because 'whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination.'" *Id.* at *6 (quoting *Berkheimer*, 881 F.3d at 1369). Thus, "fact discovery can also affect a § 101 analysis." *Id.* "The lack of fact discovery could be particularly problematic for dependent claims. Each dependent claim adds an additional limitation that is not present in the independent claim such that each additional limitation may provide the inventive concept that is otherwise lacking in the independent claim." *Id.* Additional limitations "may—individually or in conjunction with the other claim limitations (*i.e.*, 'as an ordered combination' of elements)—'transform the nature of the claim into a patent-eligible application.'" *Videoshare, LLC v. Google LLC*, No. 19-CV-00663-ADA, 2020 WL 6365543, at *7 (W.D. Tex. May 4, 2020) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014)). Differences "in the type of claims" may also be relevant because "it may be more difficult to determine if an apparatus claim . . . is directed to an abstract idea given the recitation of real-world components, which may not be present in [a] method claim." *Id.* at *7.

Rather than resolve Section 101 motions on the pleadings, this Court generally prefers that issues pertaining to Section 101 at summary judgment or trial, as confirmed by the Court's recent decision in *Health Discovery Corp. v. Intel Corp. See* Ex. 7, No. 22-cv-356, Dkt. 55, at 41 (W.D. Tex. Feb. 17, 2023) (denying 12(c) motion "without prejudice to the motion being raised, again, either in the form of summary judgment and/or if we have to deal with it in terms of if you go to trial").[1]

**B.    The Asserted Claims of the '369 Patent Are Patent Eligible.**

**1.    Defendant has not established that claim 15 of the '369 patent is representative of all the asserted claims.**

Corrigent asserts claims 1, 2, 15, 18, and 21 of the '369 patent.  Defendant essentially asserts, without analysis, that claim 15 is representative of the other claims, and almost exclusively analyzes that claim.  *See* Cisco Br. 13 (asserting "other claims of the '369 patent . . . merely recite the same subject matter of claim 15 in various permutations, and with different bells and whistles that do not change the focus of the claims"); *id.* at 16–18.  But the Court may only "treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."  *Berkheimer*, 881 F.3d at 1365.  Neither of those situations apply.  Claim 15 of the '369 patent is not representative of the other four asserted claims, and Defendant has not met its burden to demonstrate otherwise.

Claim 15 is not representative.  For example, independent claim 21 further recites that the subsidiary modules are of "different types" and configured to communicate test traffic "in different, respective first and second formats."  '369 patent at claim 21.  This was a significant

---

[1] Cisco notably cited the Court's earlier decision in *Health Discovery* in its brief (*see* Cisco Br. 5), but ignored that this Court ultimately denied Intel's Rule 12(c) motion on the same patents when the case was refiled, deferring any ruling on the issue until summary judgment or trial.  Cisco cites no authority from this Court that granted a Section 101 motion for judgment on the pleadings.

innovation in the field of network switching and routing, and it imparted even further self-testing flexibility to the modular switching system.  And, this innovation was one specific reason why the Examiner allowed claim 21 over the prior art in the first place.  Ex. 3, COR-CSC00000062 at 163–65, 171–78; *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 897–98 (Fed. Cir. 2019) (finding claimed related to file packets not abstract where "the addition of the file packet limitation during prosecution was the heart of the patent's allowance").  Moreover, claim 2 has an additional requirement that test data is looped back substantially without being processed, and claim 18 adds the requirement that the switch is repeatedly configured so that all idle lines in a system across numerous ports are tested for failures.

Defendant's argument that appears to relate to claim 21 misses the mark.  Cisco Br. 15.  Defendant's citation to the specification (6:5–9) that "it makes no difference whether or not the data are in a format" undercuts its argument and, instead, supports the conclusion that claim 21 (and other claims reciting this limitation) constitute an improvement to what was known and understood in the art.  It is plausible that it was not known, well-understood, routine, or conventional at the time of invention to perform diagnostic, self-testing of traces between modules of different types and using different data formats.  '369 patent at 6:5–9.  Instead, any testing that might have occurred was between the same types of modules that process data in the same format.  The '369 patent improved upon this conventional wisdom and practice such that "it makes no difference whether or not the data are in a format."  '369 patent at 6:6–9.

Defendant thus makes no serious effort to establish the representativeness of claim 15.  Defendant merely states for the independent claims (without analysis) that "[t]his same apparatus or process for testing an idle line for hidden failure is claimed in all the independent claims with minor wording variations."  Cisco Br. 4.  For the dependent claims, Cisco states without analysis

that "the dependent claims do not recite meaningfully different limitations."  Cisco Br. 4–5.  Cisco has not shown that claim 15 is representative, and it is not representative.

> ### 2.   The asserted claims of the '369 patent are eligible under the two-step test of *Alice*.
>
> > #### a)   Step One: The asserted claims (which add or contain additional requirements to those recited in claim 15) are not directed to an abstract idea.

Neither Claim 15 nor the other asserted claims are directed to an "abstract idea."  Claim 15 is directed to an improved modular switching system, one that performs non-intrusive, diagnostic self-testing by transmitting test traffic for loopback via a switch on a main module.  '369 patent at claim 15.  This is apparent from the claim language itself.  The modular switching system is formed of a "backplane," "main module, plugged into the backplane" and comprising "a switch," and "subsidiary modules," all of which are interconnected by traces.  *Id*.  The modular switching system performs diagnostic self-testing by transmitting test traffic for loopback via the switch on the main module.  *Id*.  The system was a significant improvement in computer networking because it could test its idle lines and components flexibly and in a non-intrusive or disruptive manner.

Courts routinely find claims that, like claim 15, recite specific improvements over prior systems are not directed to abstract ideas at step one.  Indeed, Judge Andrews held in *Corrigent v. Dell* that claim 15 "claims an apparatus that performs diagnostic testing on idle traces, and it seems sufficiently specific that I do not think I can say it is claiming an abstract idea."  *Dell*, 2023 U.S. Dist. LEXIS 36242, at *1.

Federal Circuit case law is consistent with Judge Andrews' ruling in Delaware.  In *Enfish, LLC v. Microsoft Corp.*, the Federal Circuit held that claims reciting a "self-referential" database were not directed to an abstract idea.  822 F.3d 1327 (Fed. Cir. 2016).  The Court applied a basic principle: "We do not read *Alice* to broadly hold that all improvements in computer-related

technology are inherently abstract and, therefore, must be considered at step two." *Id*. at 1335. Rather, claims "directed to an improvement to computer functionality," where "the focus of the claims is on the specific asserted improvement in computer capabilities," are not directed to an abstract idea and are eligible at step one. *Id*. at 1335–36.  Here, it is entirely plausible that the claims are directed to specific improvements in computer failure detection technology.

The Federal Circuit has repeatedly applied this principle to "hold various improvements of systems directed to patent eligible subject matter under § 101." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) ("Like the improved systems claimed in *Enfish*, *Thales*, *Visual Memory*, and *Finjan*, these claims recite a specific improvement over prior systems, resulting in an improved user interface for electronic devices.").

Other district courts have found claims specifically directed to improved switching systems not directed to an abstract idea at step one of *Alice* and, therefore, patent eligible.  For example, in *Rembrandt Wireless Techs., LP v. Broadcom Inc.*, the Court found that the challenged switching protocol claims were directed to a "specific protocol to facilitate efficient switching and *improve overall system functionality*"—not an abstract idea.

> Rather than rearrange input data to produce the same data in different form, the Claims provide for a more efficient method of *communication* of information from one device to another by arranging existing technical components and capabilities to produce an original and improved system of transmission.

2019 WL 6799106, at *5–6 (C.D. Cal. Aug. 22, 2019) (emphasis in the original).  Similarly, in *Teleconference Sys. LLC v. Metaswitch Networks Corp.*, the Court found that videoconferencing switching claims were not directed to an abstract idea because, instead, "the asserted claims focus on a specific device—an allegedly improved videoconferencing services switch—not merely the idea of videoconferencing itself."  2019 WL 6699820, at *4 (E.D. Tex. Feb. 5, 2019).

The Court should follow the guidance and logic of these cases and reach a similar

conclusion.  None of the asserted claims are directed toward an abstract idea.  They are directed to tangible, modular switching systems that improve upon the art by providing for flexible and non-intrusive diagnostic self-testing of modules connected to a switching system by transmitting test traffic for loopback.  *Id.*  They employ techniques that allow for versatile testing of hardware connected to a master switch in a unique and innovative way.  *Id.*

Defendant argues that claim 15 of the '369 patent is "directed to the patent-ineligible abstract idea of transmitting a test communication and reporting whether the communication is received—*i.e.*, transmitting and reporting information about a communication path."[2]  Cisco Br. 12.  But this is both inaccurate and an oversimplification.  The claim language does not simply recite a "test" or a "ping" between network nodes; it is focused on a particular configuration and testing methodology that facilitates a type of loopback testing that was not known in the art. Cisco's oversimplification of claim 15 is what the Court "must be careful to avoid."  *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).    That oversimplification reflects this Court's general concern with analogies that "abstract away important technical details that could impact the court's eligibility decision."  *Slyce*, at *7.  Claim 15 recites more than just "transmitting and reporting information," as it utilizes the physical components of a system to implement particular types of testing using particular steps.  And the same is true of claims 1, 2, 18, and 21, which recite ***additional details*** about the diagnostic testing systems and methods beyond those recited in claim 15.

The claims at issue in Defendant's cited cases—*Electric Power*, *Two-Way Media*, and

---

[2] Dell attempted to characterize the alleged "abstract idea" of the '369 patent almost the exact same way, and Judge Andrews denied Dell's motion. *See* Ex. 6, *Dell*, No. 22-cv-496, Dkt. 11 at 15 (asserting '369 patent is directed to "transmitting and reporting information about a communication path.").

*BSG*—are different.  *See* Cisco Br. 13–15.  In each of those cases, the claims recited abstract ideas carried out by unimproved, generic computer components.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018).  None of those cases concerned claims, like the asserted claims here, that recite an "improvement to computer functionality" itself, namely, an improved modular switching system for implementing testing and failure detection that overcame challenges in the art.

Moreover, Cisco cannot avoid Judge Andrews' prior ruling in *Dell* denying the almost identical previous 12(b)(6) motion on the '369 patent.  *Dell*, 2023 U.S. Dist. LEXIS 36242, at *1. Cisco argues that Judge Andrews "erred as a matter of law" (Cisco Br. 15–16) by suggesting that a claim's specificity is not relevant to eligibility.  But neither *Mayo* or *Arisa Diagnostics*—life sciences cases about laws of nature—held that claim specificity is irrelevant to eligibility, let alone that it is irrelevant to eligibility in the context of computer inventions.  Contrary to Cisco's argument, claim specificity is relevant to deciding whether a patent claim is abstract.  *See, e.g.*, *Enfish*, 822 F.3d at 1335–36 (claims directed to "specific asserted improvement in computer capabilities" not abstract).

      b)      **Step Two: The asserted claims recite inventive concepts.**

The asserted claims also recite several inventive concepts at step two, and the Court should deny Defendant's motion for this additional reason.  For example, the modular switching system communicates test traffic through the switch on the main module, which, as described above, permits testing of various idle lines and components flexibly, in a non-disruptive manner and without intruding on normal traffic.  '369 patent at claim 15.  This unique switch configuration improved and overcame significant challenges in the field, and was not well-understood, routine, or conventional at the time of invention.  Compl. ¶ 16–18.

Cisco is silent about this inventive concept.  *See* Cisco Br. 16–20.  It argues only that "selecting network lines, transmitting packets, monitoring the receipt of a packet, and reporting information are all well-understood, routine and conventional steps performed on various generic computer networks."  Cisco Br. 17.  But this oversimplifies the language of claim 15 and, worse, ignores the limitation requiring that test traffic for loopback is communicated via a switch on the main module. This limitation was an improvement to switching technology.

Cisco is also wrong that the other asserted claims of the '369 patent, such as claims 1, 2, 18, and 21, "involve the same conventional and generic computer components."  Cisco Br. 18–20. As described above in Section III.B.1, claim 15 is not representative, and the other claims recite several inventive concepts that render the claims patent eligible at step two of *Alice*.  Claims 1, 18, and 21 recite different limitations to claim 15, including requirements pertaining to flexible testing compatible with modules that handle different data formats, as well as requirements pertaining to repeated testing that tests all idle lines.  *See supra* Section III.B.1. Cisco tries to argue that these concepts are not inventive (*see* Cisco Br. 18–19), but they plausibly are, because sending test packets that need not be processed can be construed as inventive (creating flexibility for modules that handle different data formats), and the notion of testing all idle lines rather than some can plausibly be viewed as inventive because it suggests a more thorough and robust testing system than one that is incapable of testing all lines.

The claims of the '369 patent are patent eligible at both steps of *Alice*, and the Court should deny Defendant's motion.  At the very least, there are questions of fact that render Defendant's patent-eligibility challenge premature and require that the Court deny Defendant's motion.

### C.    The Asserted Claims of the '485 Patent Are Patent Eligible.

### 1.    Defendant has not established that unasserted claim 16 of the '485 patent is representative of the asserted claims.

Corrigent asserts claims 4, 9, and 14 of the '485 patent.  Defendant essentially suggests that unasserted claim 16 is representative of the other claims, and almost exclusively analyzes that claim.  *See* Cisco Br. 3 (asserting that other claims "simply recite variations of the same set of limitations as claim 16"); *id.* at 9–11.  But claim 16 is not representative of the other asserted claims, and Defendant has not shown otherwise.  *See JSDQ Mesh*, 2016 WL 4639140, at *2; *Cronos Techs.*, 2015 WL 5234040, at *2.  Claim 9 recites transmitting packets in a sequence and measuring variations in latency by disregarding packets received out of order.  '485 patent at claim 9.  This limitation describes an improvement to the latency measurement technology of the day and, in fact, helped distinguish these claims over the prior art during prosecution.  Ex. 4, COR-CSC00000219 at 245, 247, 249–51, 334; *see Uniloc*, 772 F. App'x at 897–98.  Thus, Judge Andrews held in *Dell* that he did not think Claim 16 was representative, "not[ing] for example that Claim 9 . . . consists of substantially more" than claim 16.  *Dell*, 2023 U.S. Dist. LEXIS 36242, at *4.  Additionally, dependent claims 4 and 14 include requirements to claims 1 and 11 pertaining to measuring variations in latencies across several measurements.

Cisco makes no serious effort to establish the representativeness of claim 16 or to distinguish Judge Andrews' prior ruling.  Cisco Br. 11–12.  In fact, Cisco admits that "claims 9 and 19 recite transmitting latency measurement packets in a sequence, monitoring a variation in the latencies in the sequence, and discarding packets that are out of sequence."  Cisco provides no explanation as to how those claims are identical (or even similar) to claim 16.  Cisco Br. 11.  Nor does Cisco materially address the added limitations of claims 4 and 14.  Claim 16 is thus not representative of all claims of the '485 patent at least because others "add one or more inventive concepts that would result in patent eligibility[.]"  *Cronos Techs.*, 2015 WL 5234040, at *2.  The Court should deny Cisco's motion for this reason alone.

2.     **The asserted claims of the '485 patent are eligible under the two-step test of *Alice*.**

a)     **Step One: The asserted claims are not directed to an abstract idea.**

The asserted claims are not directed to an abstract idea.  They are generally directed to an improved network switch or router configured to measure latency between nodes in the network in a specific manner that involves a specific packet structure involving measurements that were not employed in the prior art.  '485 patent at claims 4, 9, 14.  This is apparent from the language of claims, which recite an "apparatus comprising a node in the network" configured to measure latency specific to a class of service using a "latency measurement packet" (LMP) "containing an indication that the packet belongs to a selected one of the classes of service."  '485 patent at claims 1, 4, 9, 11, 14.  The networked apparatus not only accounts for differences in classes of service, but also for the processing time of packets at peer nodes, avoiding the need for clock synchronization.  Claim 4 (depending from claim 1) further allows the system to account for variations in latencies, and claim 9 allows the system to account for packets that are received out of sequence.  Because the asserted claims plausibly recite specific improvements over prior systems, they are not directed to an abstract idea at step one.  *See Enfish,* 822 F.3d at 1335.

*Uniloc v. ADP* reinforces that the asserted claims are not directed to abstract ideas because, there, the Federal Circuit found that claims related to, among other things, network packets were not directed to an abstract idea.  772 F. App'x at 897–98.  In that case, as here, "the addition of the file packet limitation during prosecution was the heart of the patent's allowance" and was "the clear 'focus' of the claims and the asserted advance described in the specification."  *Id*.  This led the Federal Circuit to conclude that "the claims . . . are directed to the use of file packets with segments configured to initiate centralized registration of an application from an application server, and that this is not an abstract idea."  *Id*.  The claims, instead, recited "a particular

improvement in the functioning of prior art application distribution networks."[3]  *Id.*

Defendant, again, oversimplifies the claims, focusing on unasserted, non-representative claim 16 and stating that claim 16 is directed to only "the difference between the time of transmission and time of receipt—*i.e.*, subtraction."  Cisco Br. 6.  Such an oversimplification is what the Court "must be careful to avoid."  *McRO*, 837 F.3d at 1313.  The asserted claims—claims 4, 9, and 14, recite much more than just "subtraction" as one court has already explicitly held.  *See Dell*, *supra*.  The claims, for example, involve the implementation of an LMP (removing the need to synchronize clocks at an origination and peer node) with specific parameters to facilitate latency measurement that accounts for the processing time at peer nodes, delay variations, sequencing and removal of packets, and classes of service.

Cisco's remaining arguments also miss the mark. Cisco Br. 7–9.  **First**, Defendant relies on *Two-Way Media* again, where some claims failed to recite "anything that could be described as [computer architecture]," while other claims that included computer components were limited to "ordinary," and "generic" computer functionality.  *Two-Way*, 874 F.3d at 1336–37.  But in stark contrast to the broad method claims in *Two-Way Media*, the asserted claims of the '485 patent recite an "improvement to computer functionality" itself, namely, an improved network switch or router configured to measure latency between nodes in the network based on a class of service in a specific manner and using an LMP, with adaptations to measure variations in network latency and account for out-of-sequence packets.

**Second**, the asserted claims recite technical solutions to technical problems.  The '485 patent describes a number of drawbacks associated with latency measurement protocols available

---

[3] Other cases are in accord. *E.g.*, *Packet Intelligence LLC v. NetScout Sys.*, 965 F.3d 1299, 1309–10 (Fed. Cir. 2020); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303–04 (Fed. Cir. 2019).

at the time of invention. '485 patent at 2:34–55. And, the asserted claims recite a technical solution to those problems by providing for measuring latency specific to a class of service using an LMP, which allows the networked apparatus to not only account for differences in classes of service, but also account for the processing time of packets at peer nodes without the need to synchronize clocks. This innovation in the use of the LMP to measure latency was significant enough that, **years after** the priority date, the concept was incorporated into relevant standards for network communication and testing by major network solution companies. Further, the monitoring of variation and of packet sequences to discard out of order packets solves further problems with respect to latency measurement precision. The asserted claims (including claim 9) all contain "substantially more" than unasserted claim 16, as Judge Andrews previously held and as Cisco does not even address. *Dell*, 2023 U.S. Dist. LEXIS 36242, at *4. Cisco's only response is to cite *Two-Way Media* and related cases, and to make analogies to traditional paper mail. But resort to such analogies improperly "abstract[s] away important technical details that could impact the court's eligibility decision," as this Court has made clear. *Slyce*, at *7.

b) **Step Two: The asserted claims recite inventive concepts.**

The asserted claims also plausibly recite several inventive concepts at step two, and the Court should deny Defendant's motion for this additional reason. For example, the improved network switch or router is configured to measure latency between nodes of the network in a specific manner, *e.g.*, by using an LMP "containing an indication that the packet belongs to a selected one of the classes of service." '485 patent at claims 1, 4. The manner of measurement vitiated the need for clock synchronization between a first and a second node of a network. Further, claims 4, 9, and 14 recite the requirements of monitoring variations of latencies and/or monitoring the sequence of latency measurement packets so as to discard out-of-order packets. This unique latency measurement protocol for networked routers and switches represented a

18

significant improvement to and overcame significant challenges in the field, and was not well-understood, routine, or conventional at the time of invention.  Even if the claims were directed to an abstract idea (and they are not), the asserted claims meet *Alice*'s requirement that they add something beyond any alleged abstract idea.  Cisco Br. 11; *Alice*, 573 U.S. at 217–18.

Once again, Cisco's analysis of inventive concept focuses almost exclusively on unasserted claim 16. Cisco Br. 9–11.  The switch or router and its latency measurement protocol, including using an LMP "containing an indication that the packet belongs to a selected one of the classes of service," represented an improvement to switching technology of the day and, in fact, helped distinguish the asserted claims over the prior art during prosecution.  But quite apart from that, Cisco's assertions that ***asserted claims*** 4, 9, and 14 lack inventive concepts are entirely conclusory and based on attorney argument.  Cisco Br. 11–12.  It is plausible that monitoring variations of latencies or discarding out-of-sequence packets constitute inventive concepts that further improve systems for measuring latency, particularly when the claims are viewed as ordered combinations.[4]

## IV.     JUDGMENT OF INELIGIBILITY IS NOT WARRANTED AND CISCO'S MOTION SHOULD BE DENIED

For the foregoing reasons, judgment of ineligibility should be denied on the asserted claims of both the '369 and '485 patents.  At minimum, the issue should be deferred to summary judgment or trial given the eleventh-hour nature of Cisco's Rule 12(c) motion with barely a month of fact discovery to go, along with this Court's disfavor toward Section 101 motions that seek dismissal on the pleadings.  *See supra* Sections II.A. and III.A. (Procedural History and Legal Standards); *Slyce*, 2020 WL 278481, at *5 (noting that dismissal on the pleadings is "procedurally awkward" for Section 101 motions); Ex. 7, *Health Discovery*, No. 22-cv-356, Dkt. 55, at 41 (denying 12(c)

---

[4] Cisco also asserts that isolated concepts in the claims, such as "classes of service," were "well known." *E.g.* Cisco Br. 12.  But it considers none of the asserted claims as an ordered combination.

motion "without prejudice to the motion being raised, again, either in the form of summary judgment and/or if we have to deal with it in terms of if you go to trial").  Consistent with this Court's practice, Judge Andrews recently rejected gamesmanship much like Cisco's, denying a late-filed 12(c) motion where the Plaintiff "would have had the opportunity long ago to correct any pleading deficiency" had the motion been filed sooner.  *Ecolab Inc. v. DuBois Chemicals, Inc.*, No. CV 21-567-RGA, 2023 WL 7019266, at *9 (D. Del. Oct. 25, 2023).

To the extent that the Court considers Cisco's Rule 12(c) motion at this late juncture, Corrigent should be granted leave to amend to allege additional factual allegations regarding the numerous inventive concepts underlying the claims of the '369 and '485 patents.  "Factual allegations in a complaint can suffice to overcome *Alice* step 2 and district courts should, as in any civil case, freely grant leave to amend to allege the necessary facts."  *Realtime Data LLC v. Reduxio Sys., Inc.*, 831 F. App'x 492, 498 (Fed. Cir. 2020).  Here, allowed to amend, Corrigent would allege the additional facts regarding the numerous inventive concepts set forth herein, as well as numerous facts adduced during fact and expert discovery.  These additional factual allegations, when accepted as true, would "suffice to overcome *Alice* step 2" for the asserted claims of both the '369 and '485 patents.  *Realtime Data*, 831 F. App'x at 498.  But Corrigent, again, believes that such an amendment is unnecessary at this late juncture when the Court can simply deny the 12(c) motion and afford Cisco the opportunity to re-raise the issue on summary judgment or at trial, when fact and expert discovery on the remaining asserted claims of the '369 and '485 patents has been fully developed and the issue can be addressed on a complete record.

## V.    CONCLUSION

For the foregoing reasons, Cisco's motion for judgment on the pleadings should be denied with respect to both the '369 and '485 patents.

Dated: October 31, 2023                    Respectfully submitted,

                                           By: */s/ James R. Nuttall*

                                           Charles Ainsworth
                                           State Bar No. 00783521
                                           Robert Christopher Bunt
                                           State Bar No. 00787165
                                           PARKER, BUNT & AINSWORTH, P.C.
                                           100 E. Ferguson, Suite 418
                                           Tyler, TX 75702
                                           (903) 531-3535
                                           E-mail: charley@pbatyler.com
                                           E-mail: rcbunt@pbatyler.com

                                           James R. Nuttall (IL 6243585) *pro hac vice*
                                           Katherine H. Tellez (IL 6303475) *pro hac vice*
                                           Robert F. Kappers (IL 6313187) *pro hac vice*
                                           Daniel F. Gelwicks (IL 6320663) *pro hac vice*
                                           Tron Y. Fu (IL 6309042) *pro hac vice*
                                           Candice J. Kwark (IL 6332282) *pro hac vice*
                                           STEPTOE & JOHNSON LLP
                                           227 West Monroe Street, Suite 4700
                                           Chicago, IL 60606
                                           (312) 577-1300
                                           E-mail: jnuttall@steptoe.com
                                           E-mail: ktellez@steptoe.com
                                           E-mail: rkappers@steptoe.com
                                           E-mail: dgelwicks@steptoe.com
                                           E-mail: tfu@steptoe.com
                                           E-mail: ckwark@steptoe.com

                                           Christopher A. Suarez (IL 6307113) *pro hac vice*
                                           STEPTOE & JOHNSON LLP
                                           1330 Connecticut Avenue, NW
                                           Washington, DC 20036
                                           (202) 429-3000
                                           E-mail: csuarez@steptoe.com

                                           Michael C. Miller (NY 2066256) *pro hac vice*
                                           STEPTOE & JOHNSON LLP
                                           1114 Avenue of the Americas
                                           New York, NY 10036
                                           (212) 506-3900
                                           E-mail: mmiller@steptoe.com

                                           *Attorneys for Plaintiff Corrigent Corporation*

21

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 31st day of October, 2023, with a copy of this filing via email.

*/s/ James R. Nuttall*
James R. Nuttall