**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| CORRIGENT CORPORATION,<br><br>        Plaintiff,<br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>        Defendants. | Case No. 6:22-cv-396-ADA-DTG<br><br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS CISCO SYSTEMS INC.'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(C)**

## TABLE OF CONTENTS

**Page**

I. THE CLAIMS OF THE '485 PATENT ARE PATENT INELIGIBLE ..............................1

    A. Step One: The asserted claims of the '485 patent are directed to an abstract idea. ................................................................................................................1

    B. Step Two: The asserted claims do not recite an inventive concept. .......................4

    C. Cisco addressed all of the claims and did not argue that claim 16 was representative. .........................................................................................................5

II. THE CLAIMS OF THE '369 PATENT ARE PATENT INELIGIBLE ............................5

    A. Step One: The asserted claims of the '369 patent are directed to an abstract idea. ................................................................................................................5

    B. Step Two: The asserted claims do not recite any inventive concept. .....................8

    C. Cisco did not argue that claim 15 is representative. ................................................9

III. CISCO'S MOTION IS TIMELY AND SHOULD BE GRANTED ................................10

IV. CONCLUSION................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ..................................................................................... 1, 3

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ..................................................................................................... 2, 6, 8

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ........................................................................................ 8

*Berkheimer v. HP Inc.*,
    890 F.3d 1369 (Fed. Cir. 2018) ........................................................................................ 8

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ........................................................................................ 7

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) ........................................................................................ 6

*Ecolab Inc. v. DuBois Chems., Inc.*,
    No. 21-567, 2023 WL 7019266 (D. Del. Oct. 25, 2023) ................................................ 10

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ........................................................................................ 4

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ................................................................................ 6, 7, 8

*Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*,
    792 F.3d 1363 (Fed. Cir. 2015) ........................................................................................ 2

*Laitram Corp. v. NEC Corp.*,
    163 F.3d 1342 (Fed. Cir. 1998) ........................................................................................ 6

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
    566 U.S. 66 (2012) ............................................................................................................ 7

*Packet Intelligence LLC v. NetScout Sys., Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020) ........................................................................................ 3

*People.ai, Inc. v. Clari Inc.*,
    No. 22-1364, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) ............................................... 4

*Rembrandt Wireless Techs., LP v. Broadcom Inc.*,
    No. 19-CV-00708-JLS-JDE, 2019 WL 6799106 (C.D. Cal. Aug. 22, 2019)...........................7

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)..................................................................................................9

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed Cir. 2019)..................................................................................................3

*Teleconference Sys. LLC v. Metaswitch Networks Corp.*,
    No. 18-CV-234-JDK, 2019 WL 6699820 (E.D. Tex. Feb. 5, 2019) .........................................7

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016).............................................................................................7, 8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)..................................................................................................5

*Uniloc USA, Inc. v. ADP, LLC*,
    772 F. App'x 890 (Fed. Cir. 2019) ...........................................................................................2

**Rules**

Fed. R. Civ. P. 12(c) ...........................................................................................................................10

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| '369 patent | U.S. Patent No. 6,957,369 |
| '485 patent | U.S. Patent No. 7,113,485 |
| Br. | Defendant's Ciso Systems, Inc.'s Motion for Judgment on the Pleadings Under Fed.R. Civ. P. 12(c), (Dkt. 94) |
| Defendant or Cisco | Cisco Systems, Inc. |
| Dkt. | Docket |
| Ex. | Exhibit |
| Plaintiff or Corrigent | Corrigent Corp. |
| Opp. | Plaintiff Corrigent Corporation's Opposition to Defendant's Motion for Judgment on the Pleadings Under Fed.R. Civ. P. 12(c), (Dkt. 108) |

## TABLE OF EXHIBITS

| Exhibit | Document |
|---------|----------|
| A | Excerpt of File History of '485 Patent |

Cisco established in its opening brief that the '369 patent and '485 patent are ineligible under § 101 because the claims are directed to an abstract idea and lack any inventive concept. Corrigent does not—and cannot—meaningfully dispute the abstract ideas to which the claims are directed and fails to point to any concrete inventive concept in the claims. As an initial matter, Cisco's Rule 12(c) motion, which was filed over six months before trial, is not only timely but also far enough in advance of trial so as not to delay it in compliance with the federal rules. There is nothing troubling about it. Moreover, given Corrigent's clear awareness of the Section 101 motion filed in the Dell case, Corrigent was already put on notice of the arguments related to eligibility and had ample time to amend its pleadings prior to the deadline if it wished to do so. On the merits, Corrigent argues against abstractness, but fails to focus on the character of the claims as a whole. Corrigent also attempts to manufacture factual disputes that are unsupported by the complaint and contradict the patents themselves. Thus, Counts 1 and 2 should be dismissed with prejudice.

## I. THE CLAIMS OF THE '485 PATENT ARE PATENT INELIGIBLE

### A. Step One: The asserted claims of the '485 patent are directed to an abstract idea.

The claims of the '485 patent are directed to the abstract idea of measuring latency within a particular class of service. Of the remaining asserted claims, claim 9 is an independent claim, and claims 4 and 14 depend from independent claims 1 and 11, respectively. Independent claims 1, 9, and 11 recite either a "method for measuring latency" or an "apparatus for measuring latency." *See* '485 patent, cls. 1, 9, 11. Step one of the *Alice* test concerns the claim's "character as a whole" and the "focus of the claimed advance over the prior art," which, here, is decidedly abstract. *See Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). Indeed, the specification and the claims themselves consistently state that the "focus" of the advancement is measuring latency. *See* Br. at 7–8 (citing passages from the '485 patent). And, a measure of

1

latency requires nothing more than subtracting two numbers, which is an abstract idea. *See id.* at 8. Corrigent's attempt to characterize the invention as an "improved network switch or router" fails because the alleged "improvement" is in measuring latency, which is itself abstract. *See* Opp. at 16.

Corrigent next contends that the use of a "latency measurement packet" (LMP) for a specific class of service is an improvement over the prior art, Opp. at 16, but that too fails to render the claims non-abstract. As its name makes clear, the "latency measurement packet" is not a new kind of computer technology, but rather is just a data packet used to measure latency, and data packets had been used to measure latency in the prior art. *See* '485 patent at 1:47–55. The use of concededly conventional technologies cannot save the claims. And to the extent Corrigent's argument is that using a specific class of service in the LMP is non-abstract, that argument fails as a matter of law because merely limiting the abstract idea (measuring latency for a class of service) to a particular technical environment cannot make the claims non-abstract. *See Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015); *see also Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225–26 (2014) (implementing an abstract idea "on a generic computer" was not sufficient "to transform . . . into a patent-eligible invention").

Moreover, Corrigent's cited cases are inapposite. In those cases, the court determined that the claims were directed to specific technical solutions, which happened to involve the use of data packets, but the court did not hold or even imply that the use of data packets is what made the claims non-abstract. In *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 897 (Fed. Cir. 2019), the court determined that the claims were directed to an "improvement" in "centralized distribution of software," which happened to be done "by use of a file packet." The use of a file packet was not inventive; it was the new method for centralized distribution that was non-abstract. Here, by

2

contrast, the '485 patent is directed to "measuring latency," which is itself an abstract idea. Moreover, the LMP does not provide even an *alleged* improvement. Instead, the alleged improvement lies in "taking the difference between [the] recorded times of transmission and receipt" of the LMP and "***subtract[ing] out the measured turnaround time*** to find the net round-trip latency." *See* '485 patent at 3:48–55 (emphasis added). The other cases cited by Corrigent in a footnote, *see* Opp. at 17 n.3, are inapplicable for the same reason.[1]

Corrigent faults Cisco for oversimplifying the claims, but Cisco followed what the Federal Circuit has instructed parties to do when determining the "character" of the claims as a "whole." *DIRECTV, LLC*, 838 F.3d at 1257. Claims 4 and 14 simply recites sending a plurality of LMPs in a sequence and monitoring a variation in the latencies. Claim 9 also recites transmitting a sequence of LMPs and then monitoring a variation in the latencies. But these limitations do nothing to change the character of the claims as whole, which is directed to measuring latency. *See* Br. at 7–8 (citing passages from the '485 patent). And, a measure of latency requires nothing more than subtracting two numbers, which is an abstract idea. *See id.* at 8.

Finally, Corrigent argues that the claims recite a technical solution, but as Cisco argued in its opening brief, the problem cited by Corrigent for measuring latency is not unique to computer networks, and existed in traditional paper mail. *See* Dkt. 94 at 8. But even if it were, the use of the LMP to account for the turnaround time and to eliminate the need to synchronize clocks, was not the "focus of the claimed advance over the prior art." *DIRECTV*, 838 F.3d at 1257. Indeed, the examiner had rejected the claims as being anticipated by U.S. Patent No. 5,878,032 ("Mirek")

---

[1] *See Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309–10 (Fed. Cir. 2020) (determining that the claims were directed to a technical solution of identifying disjointed conversations in a network environment, which happened to use information in packets); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303–04 (Fed Cir. 2019) (determining that the claims were directed to a technical solution for real-time network intrusion detection).

because Mirek had disclosed the ability to account for turnaround time and eliminate the need to synchronize clocks using the four timestamps as claimed in the '485 patent. *See* Ex. A ('485 File History at 2). Thus, even if this were a technical improvement, it is not attributable to the '485 patent, and therefore do not save the claims from ineligibility.

    **B.**  **Step Two: The asserted claims do not recite an inventive concept.**

    Corrigent fails to identify anything in the claims that could be considered an inventive concept. Cisco performed a detailed analysis of the claim limitations individually and as an ordered combination showing the lack of an inventive concept. *See* Br. at 9–12. First, the LMP containing an indication of the class of service is not an inventive concept because the '485 patent itself admits that classifying packets based on a class of service was well-known in the art. *See* Br. at 10 (citing '485 patent at 1:56–58). And the LMP is just a data packet. Using data packets to measure latency was well-understood, routine, and conventional at the time of the invention, as the patent admits. *See* '485 patent at 2:38–41. Second, sending packets in sequence and discarding out of sequence packets is a conventional use of packetized communications, which requires packets to arrive in the order they are sent to properly support real-time services. '485 patent at 1:63–64. Finally, monitoring variations of latency measurement packets was also known in the prior art as the examiner found during prosecution. *See* Ex. A ('485 File History at 3 (citing IETF 1889)). Therefore, there is nothing in the claims that could possibly add inventive concepts. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016).

    Even as an ordered combination, the claims do not recite an order of steps other than how these technical components function in "the long-prevalent manual practice" of measuring latency, sending a sequence of packets, or monitoring for variances—all of which were already known in the prior art as the examiner noted during prosecution. *People.ai, Inc. v. Clari Inc.*, No. 22-1364, 2023 WL 2820794, at *8–9 (Fed. Cir. Apr. 7, 2023). There is simply nothing unconventional or

4

inventive about sending a sequence of packets to measure latency and then monitoring the variance. *See* Ex. A ('485 FH). Thus, this particular ordered combination recites only a conventional order of steps and cannot provide an inventive concept.

### C. Cisco addressed all of the claims and did not argue that claim 16 was representative.

Corrigent incorrectly argues that Cisco has used claim 16 as representative of the other asserted claims; however, Cisco merely used claim 16 as a starting point because this claim had already been held by Judge Andrews to be ineligible. *See* Br. at 6. However, Cisco provided a detailed analysis of why each and every claim in the '485 patent was ineligible. *See* Br. at 11–12. Thus, Corrigent's complaint is unfounded.

## II. THE CLAIMS OF THE '369 PATENT ARE PATENT INELIGIBLE

### A. Step One: The asserted claims of the '369 patent are directed to an abstract idea.

Corrigent does not, and cannot, meaningfully dispute that the claims of the '369 patent are directed to transmitting and reporting information about a communication path. Br. at 12. Instead, Corrigent argues that the claimed invention was not known in the art. Opp. at 10. But that is beside the point. Even if "new," the idea of transmitting and reporting information about a communication path is abstract. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339–40 (Fed. Cir. 2017) ("Eligibility and novelty are separate inquires.").

Further, Corrigent's arguments about allegedly improved technology are untethered from the actual claims. Opp. at 10–13. For example, Corrigent argues that the '369 patent is directed to "an improved modular switching system." *Id.* at 10. The patent, however, makes clear that the modular switching system referenced was already in existence. '369 patent at 1:25–36, 2:29–34. Indeed, the '369 patent does not claim a switching system, only a means to test one. *Id.* at 1:5–7. Similarly, Corrigent argues that the '369 patent claims a "non-intrusive" test, but the claims do not

5

recite this limitation anywhere. Opp. at 10; '369 patent, cl. 15. "[I]t is the *claims*, not the written description, which define the scope of the patent right." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) (emphasis in original).

Corrigent also argues that the '369 claims are not abstract because the claims supposedly uses technical language. Opp. at 10. Merely reciting technical components, however, does not make a claim non-abstract. *See Alice*, 573 U.S. at 224 (patent eligibility should not depend on the draftsman's art). Further, all the technical terms Corrigent refers to are generic components that are used to carry out conventional techniques. '369 patent at 1:25–36; Opp. at 10; Br. at 15. For example, the patent admits that "[b]ackplane-based configurations [were] commonly used in communication and computing equipment." '369 patent at 1:25–26. The mere recitation of well-known technical components is insufficient to change the direction of the claims away from the abstract idea. Br. at 15.

Corrigent's reliance on *Enfish* and *Core Wireless* is misplaced. Opp. at 10–11. *Enfish* and *Core Wireless* involved new technologies performing new functions. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018). For example, in *Enfish*, the claims recited a self-referential database, which, according to the patent, actually altered the functioning of the computer. *Enfish*, 822 F.3d at 1335–36. Similarly, the claims in *Core Wireless* recited a new type of digital interface. *Core Wireless*, 880 F.3d at 1362–63. Here, on the other hand, the '369 patent recites the use of existing conventional computer components and functions to transmit and report existing information about communication paths—*i.e.*, performing an abstract idea on well-known, conventional computing components. Br. at 15. This is exactly the type of invention the Federal Circuit has held is patent ineligible. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288

6

(Fed. Cir. 2018) (holding ineligible claims which provided "benefits that flow from performing an abstract idea in conjunction with a well-known database structure").

Similarly, Corrigent's reliance on *Rembrandt* and *Teleconference Systems* is also misplaced as both cases involve "a specific improvement to computer functionality" while the '369 patent is "directed to the use of conventional or generic technology in a . . . well-known environment." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016); Opp. at 11. Specifically, the claims in *Rembrandt* were directed to an improvement to stop non-target transceivers from interfering with transmissions. *Rembrandt Wireless Techs., LP v. Broadcom Inc.*, No. 19-CV-00708-JLS-JDE, 2019 WL 6799106, at *5 (C.D. Cal. Aug. 22, 2019). The claims in *Teleconference Systems* were directed to a specific implementation of a videoconferencing services switch that improved bandwidth, quality of service, and security. *Teleconference Sys. LLC v. Metaswitch Networks Corp.*, No. 18-CV-234-JDK, 2019 WL 6699820, at *4 (E.D. Tex. Feb. 5, 2019). Those inventions are very different from the '369 patent, which does not purport to improve computer functionality, but instead merely to test an existing system using the existing components. '369 patent at 2:26–32.

Finally, as explained in Cisco's opening brief, Judge Andrews erred as a matter of law in holding claim 15 not ineligible because it generally "seems sufficiently specific." Br. at 15–16. However, specificity cannot save claims from being an abstract idea. *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 88 (2012). In *Enfish*, which Corrigent mischaracterizes, the Federal Court held that the claims were specifically directed to a "self-referential table [that] function[ed] *differently* than conventional database structures" and was a "specific asserted improvement in computer capabilities." *Enfish,* 822 F.3d at 1336–37 (emphasis added). The deciding factor was not the specificity of the claims, but the fact that the claims recited a technical

improvement. *Id.* Here, there is no recited technical improvement, but only generic computer components functioning in their conventional way. *See* '369 patent at *id.* at 1:67–2:4, 2:26–32. For example, the switch in the '369 patent connects lines in the same way any other switch connects lines. Because the '369 patent simply uses "conventional or generic technology in a . . . well-known environment," it is directed to an abstract idea. *TLI*, 823 F.3d at 612.

**B.      Step Two:  The asserted claims do not recite any inventive concept.**

In its step two analysis, Corrigent does not rebut Cisco's arguments that the claims only require conventional computer components operating with their basic functions. Br. at 16. Instead, Corrigent argues that the '369 patent contains "a unique switch *configuration*," but this is contradicted by the patent itself, which specifically states it uses conventional components for their intended purpose. '369 patent at 1:67–2:4. "In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, ***it will be difficult, if not impossible, for a patentee to show a genuine dispute.***" *See Berkheimer v. HP Inc.*, 890 F.3d 1369, 1371 (Fed. Cir. 2018) (emphasis added). For example, the '369 patent admits that it does not recite any unique components or functionality, as it "makes use of existing components in the system and requires substantially no dedicated testing hardware." '369 patent at 2:26–32; Br. at 16. According to the patent itself, the claims simply recite the abstract idea of transmitting and reporting information about a communication path with conventional computer components. '369 patent at 2:26–32. This certainly does not amount to "significantly more" than the abstract idea itself, and is therefore insufficient to be inventive concept. *Alice*, 573 U.S. at 218; *see Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) ("The limitations amount to no more than performing the abstract idea . . . with conventional computer components.").

Corrigent also argues that the mere mention of a switch in the module system makes the claim inventive. Opp. at 13. But the claims simply recite using the switch for its ordinary purpose:

transmitting messages between different nodes or modules. '369 patent, cl. 15; *id.* at 1:67–2:4 ("switch, which is typically used for linking the subsidiary modules via the connection lines to a network trunk"). That is it. The claims do not require the switch to do anything other than perform its ordinary functions. *Id.*, cl. 15. Indeed, the patent explicitly states that existing components may be used. *Id.* at 2:26–32. Courts have repeatedly held that utilizing "already available computers, with their already available basic functions" is not sufficient to make an abstract idea inventive. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169–70 (Fed. Cir. 2018).

Corrigent next argues that the claimed subject matter was "not well-understood, routine, or conventional at the time of the invention." Opp. at 13 (citing Compl. ¶¶ 16–18). But Corrigent's argument is contradicted by the patent itself. Each of the steps required by claim 15, such as selecting idle lines, sending a packet through a loop, and then reporting if the packet returns with a predetermined time, is disclosed as well-understood, routine, and conventional. '369 patent at 1:25–54. The patent calls the process of sending a packet using existing protocols through a loop as "well-known," *id*. at 5:50–54. Thus, well-known techniques cannot be the inventive concept.

        **C.**      **Cisco did not argue that claim 15 is representative.**

Unlike Corrigent's assertion, Cisco did not argue that claim 15 is representative. Opp. at 8–10. Instead, Cisco, in its opening brief, analyzed every claim and discussed how each claim added nothing more than the abstract idea. Br. 18–20. For example, Cisco argues that claim 21 does not recite an inventive concept as it only differs from claim 15 by determining if the packet returned intact, instead of a timely manner. Br. at 18. Similarly, claim 1 is merely a system claim with the same limitations. In addition, dependent claim 2 specifies that the traffic is looped back without processing, which already existed at the time of the patent. Br. at 18. Further, Cisco argued that claim 18 only repeated "well-understood, routine and conventional steps." Br. at 19. Corrigent fails to meaningfully respond to any of these arguments, and only states that it may be

9

"possible" that the claims are inventive without any basis. Therefore, Corrigent's argument fails.

### III. CISCO'S MOTION IS TIMELY AND SHOULD BE GRANTED

As an initial matter, Corrigent argues that Cisco should not be allowed to bring a Rule 12(c) motion at this stage in the case, but its argument is not based on any law. Indeed, a Rule 12(c) motion is appropriate anytime "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Cisco's motion, filed over six months before trial, is not only timely but also far enough in advance of trial so as not to delay it—in compliance with the federal rules. There is nothing troubling about it. Moreover, given Corrigent's clear awareness of the Section 101 motion filed in the Dell case, Corrigent was already put on notice of the potential arguments related to eligibility and had ample time to amend its pleadings prior to the deadline if it felt the need to do so. Thus, there was no prejudice to Corrigent, and this case is therefore not analogous to *Ecolab*. *See Ecolab Inc. v. DuBois Chems., Inc.*, No. 21-567, 2023 WL 7019266, at *9 (D. Del. Oct. 25, 2023). The Court should not grant Corrigent's belated requests to amend its pleadings to allegedly "set forth" the "numerous facts adduced" during discovery. Opp. at 20. If Corrigent had wished to include these additionally adduced "facts" in the pleadings with respect to eligibility, Corrigent had the opportunity to do so and chose not to.

### IV. CONCLUSION

For the foregoing reasons, Defendant respectfully asks the Court to dismiss with prejudice Counts 1 and 2 of the complaint because the '485 patent and the '369 patent are directed to patent-ineligible subject matter under 35 U.S.C. §101.

Dated: November 14, 2022                    Respectfully submitted,

By: <u>/s/ Shaun W. Hassett</u>
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
POTTER MINTON, P.C.
102 N. College Ave., Suite 900
Tyler, TX  75702
Telephone:  903.597.8311
Facsimile:  903.593.0846

Brian A. Rosenthal
brosenthal@gibsondunn.com
Katherine Dominguez *(pro hac vice)*
kdominguez@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Stuart M. Rosenberg *(pro hac vice)*
srosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendant Cisco Systems, Inc.*

11