**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| CORRIGENT CORPORATION, | Case No. 6:22-cv-396-ADA-DTG |
| Plaintiff, | |
| v. | |
| CISCO SYSTEMS, INC., | |
| Defendant. | |

**DEFENDANT CISCO SYSTEMS, INC.'S MOTION FOR JUDGMENT ON THE
AMENDED PLEADINGS UNDER FED. R. CIV. P. 12(C)**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................2

    A.      The '369 Patent ......................................................................................2

III.    LEGAL STANDARD ........................................................................................4

IV.     ARGUMENT ....................................................................................................5

    A.      The Claims of the '369 Patent Are Not Patent Eligible.............................5

        1.      *Alice* Step One: The '369 Claims Are Directed to an Abstract Idea ..........5

            a)      Nothing in Corrigent's Amended Complaint Changes the Abstract Nature of the Claims ................................................................................9

        2.      *Alice* Step Two: The '369 Claims Lack Any Inventive Concept .............10

            a)      Claim 1....................................................................................10

            b)      Claim 2....................................................................................14

            c)      Claim 15..................................................................................15

            d)      Claim 18..................................................................................16

            e)      Claim 21..................................................................................16

        3.      Corrigent's Allegations Regarding Novelty and Nonobviousness Are Irrelevant ..............................................................................17

    B.      None of the Attachments to Corrigent's Amended Complaint Can Render the Claims Eligible................................................................................18

    C.      Judgment of Ineligibility is Warranted on the Pleadings.......................19

V.      CONCLUSION................................................................................................20

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| '369 patent | U.S. Patent No. 6,957,369 |
| '485 patent | U.S. Patent No. 7,113,485 |
| Amend. Compl. | First Amended Complaint (Dkt. 297) |
| Cisco | Defendant Cisco Systems, Inc. |
| Corrigent | Plaintiff Corrigent Corporation |
| Compl. | Complaint (Dkt. 1) |

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)................................................................5

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
   97 F.4th 1371 (Fed. Cir. 2024) ........................................................12, 19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014)........................................................................5, 10

*Ariosa Diagnostics v. Sequenom, Inc.*,
   788 F.3d 1371,1378 (Fed. Cir. 2015)................................................9, 14

*Athena Diagnostics v. Mayo Collaborative*,
   915 F.3d 743 (Fed. Cir. 2019)..............................................................10

*In re Bd. of Trustees of Leland Stanford Junior Univ.*,
   991 F.3d 1245 (Fed. Cir. 2021).............................................................15

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)................................................12, 15, 16

*Beteiro, LLC v. DraftKings Inc.*,
   104 F.4th 1350 (Fed. Cir. 2024) ..........................................................12

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)..........................................................7, 8

*CardioNet, LLC v. InfoBionic, Inc.*,
   816 F. App'x 471 (Fed. Cir. 2020) ......................................................17

*CareDx, Inc. v. Natera, Inc.*,
   40 F.4th 1371 (Fed. Cir. 2022), *cert. denied*, 144 S. Ct. 248, 217 L. Ed. 2d 113
   (2023)..............................................................................................13

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019)......................................................19, 20

*Chewy, Inc. v. Int'l Bus. Machines Corp.*,
   94 F.4th 1354 (Fed. Cir. 2024) ...........................................14, 15, 16, 19

*Cisco Sys., Inc. v. Uniloc 2017 LLC*,
   813 F. App'x 495 (Fed. Cir. 2020) ........................................................5

*Corrigent Corp. v. Dell Techs.*,
No. 22- cv-00496-RGA, Dkt. 21(D. Del. March 3, 2023) ......................................................9

*Daedalus Blue LLC v. SZ DJI Tech. Co.*,
No. W-20-CV-00073-ADA, 2022 WL 831619 (W.D. Tex. Feb. 24, 2022).............................19

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018).........................................................................................4, 19

*Electric Power Group, LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016).................................................................................6, 7, 8, 9

*Esignature Software, LLC v. Adobe Inc.*,
No. 2023-1711, 2024 WL 3289488 (Fed. Cir. July 3, 2024)...............................................17

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
839 F.3d 1089 (Fed. Cir. 2016)..................................................................................8, 12, 16

*Ficep Corp. v. Peddinghaus Corp.*,
No. 2022-1590, 2023 WL 5346043 (Fed. Cir. Aug. 21, 2023), *cert. denied*,
144 S. Ct. 1115, 218 L. Ed. 2d 352 (2024)........................................................................17

*In re Gale*,
856 F. App'x 887 (Fed. Cir. 2021) ......................................................................................10

*Guidry v. Am. Pub. Life Ins. Co.*,
512 F.3d 177 (5th Cir. 2007) ...............................................................................................4

*Health Discovery Corp. v. Intel Corp.*,
577 F. Supp. 3d 570 (W.D. Tex. Dec. 27, 2021) ....................................................................4

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
No. 2022-1861, 2024 WL 89642 (Fed. Cir. Jan. 9, 2024)....................................................18

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015).........................................................................................15

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018).........................................................................................13

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998).........................................................................................13

*Mayo Collaborative v. Prometheus Lab'ys*,
566 U.S. 66 (2012)........................................................................................................9, 10

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ......................................................................................13, 18

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)................................................................4, 11, 12, 15, 16, 19

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017)..........................................................................................5

*TNT Marine Serv. v. Weaver Shipyards & Dry Docks, Inc.*,
  702 F.2d 585 (5th Cir. 1983) ............................................................................................1

*Trinity Info Media, LLC v. Covalent, Inc.*,
  72 F.4th 1355 (Fed. Cir. 2023) .......................................................................................13

*Two-Way Media Ltd. v. Comcast Cable Communications LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)...........................................................................7, 8, 9, 17

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
  793 F.3d (Fed. Cir. 2015)................................................................................................14

*Voit Techs., LLC v. Del-Ton, Inc.*,
  757 F. App'x 1000 (Fed. Cir. 2019) ..................................................................................8

*WhitServe LLC v. Dropbox, Inc.*,
  854 F. App'x 367 (Fed. Cir. 2021) ..................................................................................20

*Zyrcuits IP LLC v. Acuity Brands, Inc.*,
  No. 20-1306-CFC, 2021 WL 3287801 (D. Del. Aug. 2, 2021)..........................................7

Pursuant to Federal Rules of Civil Procedure 12(c), Defendant respectfully moves the Court for judgment on the amended pleadings regarding Counts I and II of the Amended Complaint, on the basis that the claims of the '369 and '485 patents are not patent-eligible under 35 U.S.C. § 101.

## I.    INTRODUCTION

During the pre-trial conference on June 24, 2024, the Court held that the '369 and '485 patent claims are ineligible under 35 U.S.C. § 101, and granted Cisco's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).  *See* Dkt. 294.  Corrigent asked for leave to amend its Complaint regarding these two patents, and the Court granted leave to amend.  *Id.*  On July 12, 2024, Corrigent amended its complaint and added new assertions regarding only the '369 patent. Dkt. 297 ("Amended Complaint").  Corrigent chose not to amend its allegations regarding the '485 patent.  *Id.*  Cisco now moves for judgment on the pleadings regarding Corrigent's Amended Complaint as to these two patents.[1]

With respect to the '369 patent, Corrigent's new assertions do not and cannot change the ineligibility of the claims—because Corrigent cannot plead around the '369 claims or the governing law.  The claims of the '369 patent are directed to the abstract idea of transmitting a test communication and reporting whether the communication is received—in other words, transmitting and reporting information.  The Federal Circuit repeatedly has held claims ineligible when they are directed to this type of subject matter.  The intrinsic record confirms that the claims of the '369 patent lack any inventive concept, as they require only existing, known components

---

[1] With respect to the '485 patent, Corrigent has waived its opportunity to amend, and thus the Court should maintain its prior ruling that the claims of the '485 patent are ineligible.  *See, e.g., TNT Marine Serv. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir. 1983) ("[T]he plaintiff chose not to amend its complaint, and it is not entitled to a second trial").

functioning in their routine manner.  Nothing in Corrigent's Amended Complaint can change the intrinsic record or the law, and thus the claims remain ineligible.  Indeed, the Federal Circuit has repeatedly rejected efforts by patentees to plead around their patents for eligibility, just as Corrigent is attempting in its Amended Complaint.  Corrigent spends page after page arguing that the claims are novel and nonobvious over the prior art, or that they improve efficiency by using known computing equipment instead of requiring new equipment.  But the Federal Circuit has rejected those exact arguments in its precedent, holding that novelty and nonobviousness do not establish eligibility, nor does the use of conventional computing equipment to improve efficiency.  Corrigent also relies on its expert Dr. Akl for opinions about eligibility, but those opinions are completely untethered from the actual claim language and from the governing law, and thus are irrelevant.  Therefore, the Court should adhere to its prior ruling that the claims of the '369 patent are ineligible.

## II.    BACKGROUND

### A.    The '369 Patent

The '369 patent is directed to testing whether idle lines are functioning properly "without intruding on normal traffic carried by the system's active lines."  '369 patent at 2:26–29.  The '369 patent refers to failures of idle lines "as 'hidden failures,' because they do not affect service at the moment they occur and thus may go undetected."  *Id.* at 1:11–15.  The concept of testing lines while they are idle (where failures would otherwise "go undetected") is so integral to the patent, the patent is named "Hidden Failure Detection."  *Id.* at [54].

The principal embodiment of the '369 patent is a backplane system (hardware used to establish interconnections) in which a "main module" and two or more "subsidiary modules" are plugged into the backplane and communicate over traces on the printed circuit board of the backplane.  *Id.* at 1:11–36, 1:61–2:4, 2:40–47, 3:12–20, 3:51–4:37, 6:54–67.  Figure 1 (annotated

below) depicts this arrangement:



The patent explains that the disclosed backplane configuration was commonly known, stating the invention relies on "existing components in the system" and does not require "dedicated testing hardware." *Id*. at 1:25–26, 1:33–36, 2:29–32, 4:65–67, 5:5–12, 5:45–48.  As shown above, the main module **24** is connected to the network.  *Id*. at 1:67–2:2, 5:13–14.  It contains a system control processor **42** and a switch **28**.  *Id*. at 1:30–32, 5:1–31.  The main module is then connected via the backplane **28** to two or more "subsidiary modules" **24**.  *Id*. at 1:25–30.  In order to test the system without interrupting service, the idle lines **38** are tested instead of the active lines **36**.  *Id*. at 5:26–31.

Asserted claim 15, for example, recites:

15. Modular electronic apparatus, comprising:

a backplane, which comprises traces for carrying data between modules that are plugged into the backplane;

a main module, plugged into the backplane, the main module comprising a switch having ports for connection to the traces of the backplane;

at least first and second subsidiary modules, plugged into the backplane so as to be connected to the main module by the traces, at least some of which traces are sometimes idle; and

a system control processor, which is operative to select a first idle trace among idle traces connecting the first subsidiary module to a first port of the switch on the main module to serve as an aid trace, to instruct the first subsidiary module to loop back

traffic reaching the first subsidiary module via the aid trace, to select for testing a second idle trace among the idle traces connecting the second subsidiary module to a second port of the switch on the main module, and to configure the switch to link the first and second ports, the system control processor being further operative to cause test traffic to be transmitted over the second idle trace from the second subsidiary module to the main module, wherein the test traffic is conveyed via the switch to the aid trace connecting to the first subsidiary module, and to report that a failure has occurred if the test traffic does not return to the second subsidiary module within a predetermined period of time.

This same apparatus or process for testing an idle line for hidden failure is claimed in all the independent claims with minor wording variations.  *Id.*, cls. 1, 8, 15, 21.  And the dependent claims do not recite meaningfully different limitations that would materially alter the eligibility analysis either, as addressed below.  Further, the '369 patent was issued before *Alice* and *Mayo*, and the examiner did not mention Section 101 at all during prosecution.

## III.   LEGAL STANDARD

"Patent eligibility can be determined on the pleadings under Rule 12(c) when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law."  *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018).  "The standard for deciding a Rule 12(c) motion is the same as a rule 12(b)(6) motion to dismiss."  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (quoting *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007)).  Here, Corrigent has not pleaded any factual allegations in its Complaint that would prevent a ruling on eligibility at the pleading stage.  Indeed, this Court has granted dismissal on the basis of ineligibility where the plaintiff "failed to plead allegations supporting the eligibility of the asserted claims."  *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 587 (W.D. Tex. Dec. 27, 2021).  This Court has also recognized that although "claim construction disputes may bar a patent-eligibility determination at the Rule 12(b)(6) stage," there is no such "impediment" where claim construction has already occurred.  *Id.* at 577.  Here, the Court has already issued a Claim Construction order (Dkt. 69), so there is no

reason to defer the eligibility determination.

Patent eligibility involves a two-step "threshold inquiry." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Step one asks whether the claims are directed to an ineligible "concept," such as an "abstract idea." *Id.* If so, step two asks if the claims contain an "inventive concept" that "amounts to significantly more than a patent upon the [abstract idea] itself." *Id.* at 217–18. This inquiry ultimately is a "question of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). The Federal Circuit has made clear that a patentee's "conclusory statements regarding eligibility" need not be accepted as true and "d[o] not preclude dismissal." *See, e.g.*, *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498–99 (Fed. Cir. 2020). Finally, the Federal Circuit has held that "a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

## IV.    ARGUMENT

### A.    The Claims of the '369 Patent Are Not Patent Eligible

The claims of the '369 patent are directed to the patent-ineligible abstract idea of transmitting a test communication and reporting whether the communication is received—*i.e.*, transmitting and reporting information about a communication path. Courts have repeatedly held similar claims to be abstract. Moreover, the claims of the '369 patent do not contain a concrete, inventive concept sufficient to transform the abstract idea into a patent-eligible invention.

#### 1.    *Alice* Step One: The '369 Claims Are Directed to an Abstract Idea

The claims of the '369 patent are directed to the abstract idea of transmitting a test communication and reporting whether the communication is received—*i.e.*, transmitting and reporting information about a communication path. For example, claim 15 discloses an apparatus

that selects two idle network lines to test, and then transmits a test packet in a loop through those lines.  This idea is no different than the longstanding practice of testing whether a communication line is functioning properly by asking for a message to be repeated back—for example, when a dispatch operator or field commander sends out an instruction and asks "do you copy?" and the recipient repeats it back to acknowledge receipt.  Once the information returns, the apparatus reports the result, including if the information returned in a timely manner.  '369 patent, cl. 15.  The other claims of the '369 patent are directed to this same abstract idea, as they merely recite the same subject matter of claim 15 in various permutations, and with different bells and whistles that do not change the focus of the claims.

These claims fail Step One of *Alice*, and indeed are indistinguishable from claims held to be ineligible by the Federal Circuit.  For example, the court in *Electric Power Group, LLC v. Alstom S.A.* held claims abstract where they were directed to "collecting information, analyzing it, and displaying certain results of the collection and analysis."  830 F.3d 1350, 1353 (Fed. Cir. 2016).  The patent at issue described "systems and methods for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results."  *Id.* at 1351.  The Federal Circuit held that "[t]he advance [the claims] purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions."  *Id.* at 1354.

Here, just as in *Electric Power*, the claims involve performance monitoring.  *Compare, e.g.*, '369 patent, cl. 15, *with Elec. Power*, 830 F.3d at 1351.  The claims also require reporting the results of a test process, just as the claims in *Electric Power* required "presenting the results of abstract processes of collecting and analyzing information."  *Compare* '369 patent, cl. 15, *with*

*Elec. Power*, 830 F.3d at 1354. Therefore, just like the claims in *Electric Power*, the claims of the '369 patent are directed to an abstract idea.

Similarly, in *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, the claims at issue were "directed to the abstract idea of (1) sending information, (2) directing the sent information, (3) monitoring receipt of the sent information, and (4) accumulating records about receipt of that the sent information." 874 F.3d 1329, at 1336 (Fed. Cir. 2017). The Federal Circuit held the claims patent ineligible for being directed solely to the abstract idea of "monitoring the delivery of real-time information." *Id*. at 1340–41. Here, likewise, the '369 claims recite an apparatus which sends a test packet to travel through two selected idle lines in a loop, just as *Two-Way Media* required "sending information" and "directing a portion of the routing path." *Compare* '369 patent, cl. 15, *with Two-Way Media Ltd.*, 874 F.3d at 1337–38. The alleged advance in the '369 patent—transmitting test traffic over the specified path and then "report[ing] that a failure has occurred if the test traffic does not return"—is just as abstract as the claims in *Two-Way Media*, which recited "accumulating records that indicate which streams of packets were received by which users." Therefore, the '369 claims are directed to an abstract idea as a matter of law.

The claims of the '369 patent also fail to "provide a technical solution to a technical problem," *Zyrcuits IP LLC v. Acuity Brands, Inc.*, No. 20-1306-CFC, 2021 WL 3287801, at *4 (D. Del. Aug. 2, 2021), and instead focus on "an 'abstract idea' for which computers are invoked merely as a tool," *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018) (internal citation omitted). In *BSG*, the claims recited a database system and method that included a "self-evolving generic index." *Id.* at 1283. The patentee argued that the claims recited "a non-abstract improvement in database functionality" because they allegedly improved the quality of organization of information in the database. *Id.* at 1287. The court rejected this argument because

the claims were "not improvements to database functionality." *Id.* at 1288.  Instead, "they [were] benefits that flow from performing an abstract idea in conjunction with a well-known database structure." *Id.* at 1288.  Here, the '369 patent confirms that the alleged invention "requires substantially no dedicated testing hardware." '369 patent at 2:29–31; *id.* cl. 15.  Instead, the claims recite performing the abstract idea using existing conventional computer components and functions.  *See id.*  For example, the switch in the '369 patent connects lines in the same way any other switch connects lines.  *See id.* at 3:14–17.  Like the claims in *BSG*, the claims at most reap benefits from performing an abstract idea in conjunction with well-known network components and are therefore patent ineligible.  *See also Two-Way Media*, 874 F.3d at 1338; *Elec. Power*, 830 F.3d at 1354.

The dependent claims which refer to performing the abstract idea on modules with different data formats also fail to add a technical solution.  In fact, the '369 patent explicitly states that whether the module data formats and communication protocols are the same "makes no difference" to the alleged invention.  '369 patent at 6:5–9.  The Federal Circuit has rejected the argument that "employing different formats" improves "the functioning of the computer" where (as here) claims merely use "generic computer components performing conventional . . . techniques to carry out the claimed invention."  *Voit Techs., LLC v. Del-Ton, Inc.*, 757 F. App'x 1000, 1003 (Fed. Cir. 2019); *see also FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) ("The mere combination of data sources, however, does not make the claims patent eligible.").  Here, the '369 claims merely recite conventional components for performing the abstract idea.  '369 patent at 2:29–31.  Thus, the claims of the '369 patent are directed to an abstract idea.

Notably, while Judge Andrews in the District of Delaware denied a motion to dismiss the '369 patent, he erred as a matter of law in his analysis, holding that claim 15 is not ineligible at the

pleading stage only because it "seems sufficiently *specific* that I do not think I can say it is claiming an abstract idea."  Memorandum Order, *Corrigent Corp. v. Dell Techs.*, No. 22- cv-00496-RGA, Dkt. 21, 1 (D. Del. March 3, 2023) (emphasis added).  That was error, because the Supreme Court and Federal Circuit have held repeatedly that claims are not rendered eligible merely by being *specific*.  *See, e.g.*, *Mayo Collaborative v. Prometheus Lab'ys*, 566 U.S. 66, 88 (2012) (rejecting patentee's argument that "because the particular laws of nature that its patent claims embody are narrow and *specific*, the patents should be upheld" (emphasis added)); *Ariosa Diagnostics v. Sequenom, Inc*., 788 F.3d 1371,1378 (Fed. Cir. 2015) (likewise rejecting patentee's argument that "because the particular application of the natural phenomena that the '540 patent claims embody are narrow and *specific*, the claims should be upheld" (emphasis added)); *id.* at 1379 ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does *not* demonstrate patent eligibility." (emphasis added)).  Here, regardless of whether the '369 patent claims are "specific," they are plainly directed to an abstract idea, as shown by the Federal Circuit caselaw above holding closely analogous claims abstract.  *See, e.g.*, *Elec. Power*, 830 F.3d at 1354; *Two-Way Media*, 874 F.3d. at 1337.

### a)      Nothing in Corrigent's Amended Complaint Changes the Abstract Nature of the Claims

The Court has already held, when granting Cisco's motion for judgment on the pleadings regarding Corrigent's original Complaint, that the '369 claims are directed to an abstract idea. Nothing in Corrigent's Amended Complaint can change the claims themselves, and so the Court should adhere to its prior ruling that the claims are abstract.  Corrigent now asserts that the claims of the '369 patent are directed to a technical solution to a technical problem because the claims are directed to "diagnostic testing of electrical equipment."  *See* Amend. Compl. ¶ 17 (citing '369 patent, 1:5–7); *see also* ¶¶ 18 ("identifying failures"), 23 ("failure detection"), 24 ("network failure

detection"), 25 ("self-testing and diagnosing"), 26 ("self-testing and diagnosing").  But diagnostic tests are still abstract.  The Supreme Court and the Federal Circuit have repeatedly held that diagnostic tests using well-known equipment to observe a deficiency are not patent eligible.  *See, e.g.*, *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc*., 566 U.S. 66, 82 (2012) (applying conventional diagnostic methods to observe a natural correlation "add[s] nothing specific to the laws of nature other than what is well-understood, routine, conventional activity, previously engaged in by those in the field"); *Athena Diagnostics v. Mayo Collaborative*, 915 F.3d 743, 772–53 (Fed. Cir. 2019) (affirming judgment of ineligibility, stating "[c]laiming a natural cause of an ailment and well-known means of observing it is not eligible for patent because such a claim in effect only encompasses the natural law itself."); *see also In re Gale*, 856 F. App'x 887, 889–90 (Fed. Cir. 2021) ("Mr. Gale's claims are directed to a method for monitoring the reporting of diagnostic test results, not to any technological improvement.").  Here, the '369 patent relies only on existing, conventional components, such as a switch and communication lines, to diagnose if there is an ailment in the system, *i.e.*, a fault.  Further, the '369 patent explicitly states that the faults it is attempting to diagnose are a generic problem with any electronic equipment, such as faults from temperature or humidity changes or from electrostatic discharge.  '369 patent at 5:34–37.  Thus, the claims merely require testing for a fault that correlates to a natural cause.  This is precisely what the Federal Circuit has held is patent ineligible.

### 2.    *Alice* Step Two: The '369 Claims Lack Any Inventive Concept

The '369 claims fail to recite "significantly more" than the abstract idea itself, whether the elements are considered individually or as an ordered combination.  *Alice*, 573 U.S. at 217–18.  Nothing in Corrigent's Amended Complaint changes that analysis, because the '369 patent itself admits that the claimed invention relies only on existing, known technology.

### a)    Claim 1

***1[pre]: In an electronic system that includes a main module and at least first and second subsidiary modules, each of said at least first and second subsidiary modules connected to the main module by one or more lines for carrying data, at least some of which lines are sometimes idle, the main module including a switch having ports connected to the lines, a method for self-testing the system, comprising:***

The language of the preamble of claim 1 merely requires conventional computer components operating with their basic functions.  In fact, the '369 patent admits that the alleged invention "mak[es] use of existing components in the system and requires substantially no dedicated testing hardware."  '369 patent at 2:29–31; *see also id.* at 1:25–26, 1:33–37, 1:67–2:4, 4:65–67, 5:5–12, 5:45–48, 5:50–54.  For example, the claims simply recite using a switch for its ordinary purpose:  transmitting a message between different nodes or modules.  '369 patent at 1:67–2:4 ("switch, which is typically used for linking the subsidiary modules via the connection lines to a network trunk"), 5:5–12 ("[t]his cross-connection function is commonly available in off-shelf physical layer Switches"), 5:50–54 ("The control channel linking the processors is typically an ethernet channel, over which the processors communicate using a suitable management protocol, such as the well-known Simple Network Management Protocol (SNMP)").  The claims do not require the switch to do anything other than perform its ordinary functions.  Indeed, Corrigent admits in its Amended Complaint that the claimed invention relies only on existing components.  Amend. Compl. ¶¶ 20–21.

Incredibly, Corrigent now alleges that the claims are eligible *because* they rely only on existing components.  Amend. Compl. ¶ 20.  But that allegation fails as a matter of law.  The Federal Circuit has held that utilizing "already available computers, with their already available basic functions" is not sufficient to make an abstract idea inventive.  *See SAP Am.*, 898 F.3d at 1169–70 (finding the claims required "no improved computer resources," and instead were implemented using "already available computers, with their already available basic functions, to

use as tools in executing the claimed process" (internal quotation omitted)); *see also AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1380 (Fed. Cir. 2024) ("[A] patentee that emphasizes a claim's use of certain technology, for example, a general-purpose computer, fails at step two when the intrinsic record establishes that the technology is conventional or well-known in the art."); *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1358 (Fed. Cir. 2024) (affirming dismissal of complaint "[w]here, as here, the specification describes the components and features listed in the claims generically, it supports the conclusion that these components and features are conventional" (internal quotation omitted)).  Therefore, nothing in claim 1[pre] renders the claim patent eligible.

> *1[a]: selecting a first idle line among idle lines connecting the first subsidiary module to a first port of the switch on the main module to serve as an aid line;*
> *1[b]: instructing the first subsidiary module to loop back traffic reaching the first subsidiary module via the aid line;*
> *1[c]: selecting for testing a second idle line among the idle lines connecting the second subsidiary module to a second port of the switch on the main module;*
> *1[d]: configuring the switch to link the first and second ports;*
> *1[e]: transmitting test traffic over the second idle line from the second subsidiary module to the main module, wherein the test traffic is conveyed via the switch to the aid line connecting to the first subsidiary module; and*
> *1[f]: reporting that a failure has occurred if the test traffic does not return to the second subsidiary module within a predetermined period of time.*

These limitations also fail to recite an inventive concept as the steps recited are all well-understood, routine and conventional.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018).  For example, selecting network lines, transmitting packets, monitoring the receipt of a packet, and reporting information are all well-understood, routine and conventional steps performed on various generic computer networks.  '369 patent at 6:5–9; *see also SAP Am.*, 898 F.3d at 1169–70; *Berkheimer*, 881 F.3d at 1370; *see also FairWarning IP*, 839 F.3d at 1097. Further, these steps cannot be considered the inventive concept because they do not impart any alleged invention beyond the abstract idea itself.  *See Berkheimer*, 890 F.3d at 1369.  Corrigent's

Amended Complaint does not change this analysis, because Corrigent cannot plead around the admissions in the patent itself. *See Sanderling Mgmt. Ltd. v. Snap Inc*., 65 F.4th 698, 706 (Fed. Cir. 2023) (affirming judgment of ineligibility under Rule 12, stating "[n]o amendment to a complaint can alter what a patent itself states."); *Trinity Info Media, LLC v. Covalent, Inc*., 72 F.4th 1355, 1365 (Fed. Cir. 2023) (affirming judgment dismissing amended complaint, and rejecting patentee's argument that "the district court failed to consider allegations in its amended complaint that several features of the asserted claims were not 'well-understood, routine or conventional'"); *id*. at 1366 ("conclusory allegations that the prior art lacked elements of the asserted claims are insufficient to demonstrate an inventive concept").

Corrigent now alleges that claim 1 is innovative because it can "identify hidden failures in networking systems." Amend. Compl. ¶ 19. However, Corrigent's statements about allegedly improved technology are untethered from the actual claims. Amend. Compl. ¶ 17. For example, Corrigent states that the '369 patent is directed to "non-intrusive self-testing," but the claims do not recite this limitation anywhere. *Compare id.* at ¶¶ 17–18 *with* '369 patent, cl. 15. "[I]t is the claims, not the written description, which define the scope of the patent right." *Laitram Corp. v. NEC Corp*., 163 F.3d 1342, 1347 (Fed. Cir. 1998) (emphasis in original). In addition, even if the claims recited a "non-intrusive" test,—they do not—a non-intrusive test itself is abstract, and the Federal Circuit has found similar applications lack an "inventive concept." *See Interval Licensing LLC v. AOL, Inc*., 896 F.3d 1335, 1341, 1348 (Fed. Cir. 2018) (affirming decision that "providing information to a person without interfering with the person's primary activity" is abstract idea and "[a]ppending rote conventional activity in this way to an abstract idea does not amount to an inventive concept."); *see also CareDx, Inc. v. Natera, Inc*., 40 F.4th 1371, 1378 (Fed. Cir. 2022), *cert. denied*, 144 S. Ct. 248, 217 L. Ed. 2d 113 (2023) (holding non-invasive diagnostic to be

patent ineligible); *Ariosa Diagnostic*, 788 F.3d at 1374–81 (holding that a "non-invasive test used for prenatal diagnosis of certain fatal characteristics" to be patent ineligible).

Even if considered as an ordered combination, there is no inventive concept.  The claimed steps outlined above involve selecting idle lines, sending a packet through a loop, and then reporting if the packet returns within a predetermined time.  Amend. Compl. ¶ 21.  This recites nothing more than well-known steps required to gather information about communication links, send information over the links, and report results.  *See* '369 patent at 1:37–54.  The combination of steps therefore recites nothing more than the abstract idea itself and "add[s] nothing that is not already present when the steps are considered separately."  *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d at 1306, 1334 (Fed. Cir. 2015).  The court's order-of-steps construction also does not render the claims eligible, as the ordering does not make the claims non-abstract nor does it impart any inventive concept.

###### b)   Claim 2

> *2: A method according to claim 1, wherein instructing the first subsidiary module comprises configuring the first subsidiary module to loop back the traffic to the main module substantially without processing data comprised in the test traffic.*

Dependent claim 2 specifies that the subsidiary module loops back traffic "without processing the data."  But the '369 patent acknowledges that loopback tests, which do not require processing, already existed prior to the alleged invention.  '369 patent at 1:37–46.  The patent also states that the processor, which instructs the subsidiary module to loopback traffic, is a generic and conventional computer component.  *Id.* at 2:29–31, 5:67–6:9.  The Amended Complaint also asserts that by not processing the test traffic, the alleged invention is faster and more efficient than the prior art systems.  Amend. Compl. ¶ 23.  However, mere speed and efficiency is insufficient to render a claim inventive.  *Chewy, Inc. v. Int'l Bus. Machines Corp.,* 94 F.4th 1354, 1367 (Fed. Cir. 2024) (affirming judgment of ineligibility and holding that even accepting the patentee's

expert testimony that "the prior art methods" could not operate "in an efficient manner," the claims were nevertheless ineligible because the claimed invention merely "uses conventional off-line batch processing to more efficiently implement the abstract idea"); *see also id*. at 1367 ("We have repeatedly held 'claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept.'") (quoting *Intell. Ventures I LLC v. Cap. One Bank (USA),* 792 F.3d 1363, 1367 (Fed. Cir. 2015)).  Therefore, these claims do not supply an inventive concept.  *In re Bd. of Trustees of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1250 (Fed. Cir. 2021)

### c)   Claim 15

*15[pre]: Modular electronic apparatus, comprising:*
*15[a]: a backplane, which comprises traces for carrying data between modules that are plugged into the backplane;*
*15[b]: a main module, plugged into the backplane, the main module comprising a switch having ports for connection to the traces of the backplane;*
*15[c]: at least first and second subsidiary modules, plugged into the backplane so as to be connected to the main module by the traces, at least some of which traces are sometimes idle; and*
*15[d]: a system control processor, which is operative to select a first idle trace among idle traces connecting the first subsidiary module to a first port of the switch on the main module to serve as an aid trace, to instruct the first subsidiary module to loop back traffic reaching the first subsidiary module via the aid trace, to select for testing a second idle trace among the idle traces connecting the second subsidiary module to a second port of the switch on the main module, and to configure the switch to link the first and second ports, the system control processor being further operative to cause test traffic to be transmitted over the second idle trace from the second subsidiary module to the main module, wherein the test traffic is conveyed via the switch to the aid trace connecting to the first subsidiary module, and to report that a failure has occurred if the test traffic does not return to the second subsidiary module within a predetermined period of time.*

Corrigent admits that claim 15 is similar to claim 1 but uses traces instead of lines.  Amend. Compl. ¶ 24.  Traces, likes lines, were well-known and conventional.  '369 patent at 2:29–31.  The claims do not require the traces to do anything other than perform its ordinary functions.  Therefore, claim 15, like claim 1, is not inventive.  *See SAP Am.*, 898 F.3d at 1169–70; *Berkheimer*,

881 F.3d at 1370–71; *see also FairWarning IP*, 839 F.3d at 1097.  Further, these steps cannot be considered the inventive concept because they do not impart any alleged invention beyond the abstract idea itself.  *See Berkheimer*, 890 F.3d at 1369.

### d)   Claim 18

*Apparatus according to claim 15, wherein the system control processor is operative to select one or more further idle traces for testing among the idle traces in the system, wherein the further idle traces connect to further ports of the switch on the main module, and to repeatedly configure the switch, cause the test traffic to be transmitted, and report the failure when it occurs with respect to the further idle traces until all the idle lines have been tested.*

Dependent claim 18 specifies selecting an idle line to test, while the other lines are being used and repeating the test until all idle lines have been tested.  As explained above, selecting lines is a well-understood, routine, and conventional step performed by generic computer networks.  '369 patent at 2:29–31; *see also SAP Am.*, 898 F.3d at 1169–70; *Berkheimer*, 881 F.3d at 1370; *see also FairWarning IP*, 839 F.3d at 1097.  Additionally, repeating the test until all idle lines have been tested simply repeats these well-understood, routine and conventional steps.  *Id.*  Corrigent asserts that claim 18 was innovative because it allowed for the testing of all idle traces in a system "without the need for manual intervention."  Amend. Compl. ¶ 25.  However, claim 18 does not require automation.  In addition, mere efficiency is insufficient to render a claim inventive.  *Chewy, Inc.,* 94 F.4th at 1367 (affirming judgment of ineligibility)  Therefore, these claims do not supply an inventive concept.

### e)   Claim 21

*21[pre]: Modular electronic apparatus, comprising:*
*21[a]: a backplane, which comprises traces for carrying data between modules that are plugged into the backplane;*
*21[b]: a main module, plugged into the backplane;*
*21[c]: a plurality of subsidiary modules, plugged into the backplane so as to be connected to the main module by the traces; and*
*21[d]: a system control processor, which is operative to select first and second subsidiary modules of different types for testing among the multiple subsidiary*

16

***modules, the first and second subsidiary modules being configured to transmit
and receive the data in different, respective first and second formats, and which
is further operative to test the modules by causing the first subsidiary module to
loop back traffic reaching the first subsidiary module from the main module, by
configuring the main module to connect the first and second subsidiary modules,
so that a traffic transmitted by the second subsidiary module is conveyed to the
first subsidiary module via the main module and is then looped back via the main
module to the second subsidiary module, and by causing the second subsidiary
module to transmit test traffic in the second format to the main module, and
assessing whether the test traffic is returned intact from the first module.***

Compared to claim 15, claim 21 substitutes determining whether a packet returned "within
a predetermined time" with determining if the test traffic returned "intact."  Amend. Compl. ¶ 26.
Whether the packet is returned within a specific time or in a specific condition is simply reporting
a different metric, which does not provide an inventive concept.  *See CardioNet, LLC v. InfoBionic,
Inc.*, 816 F. App'x 471, 476–77 (Fed. Cir. 2020) (determining that even the use of a new metric
was not an inventive concept).  Further, requiring two formats does not make the claim inventive
because the patent admits that the format of the modules "makes no difference" to the alleged
invention.  '369 patent, 6:2–9; *see also* 5:21–28.

As none of the claims recite an inventive concept, the claims are all patent ineligible.

### 3.     Corrigent's Allegations Regarding Novelty and Nonobviousness Are Irrelevant

In its Amended Complaint, Corrigent now alleges that the claims of the '369 patent are
inventive because they were not disclosed in the prior art.  *See* Amend. Compl. ¶¶ 22–23, 28–33.
However, the Federal Circuit has repeatedly held that "eligibility and novelty are separate
inquires."  *See Two-Way Media*, 874 F.3d at 1339–40; *see also Esignature Software, LLC v. Adobe
Inc.*, No. 2023-1711, 2024 WL 3289488, at *3 n.1 (Fed. Cir. July 3, 2024) ("To the extent
Esignature's argument is intended to show claim 1's purported novelty . . . novelty alone does not
avoid the problem of abstractness.") (internal quotation omitted); *Ficep Corp. v. Peddinghaus
Corp.*, No. 2022-1590, 2023 WL 5346043, at *7 (Fed. Cir. Aug. 21, 2023), *cert. denied*, 144 S.

Ct. 1115, 218 L. Ed. 2d 352 (2024) ("Questions of nonobviousness such as secondary considerations, however, are irrelevant when considering eligibility."). Therefore, Corrigent's new allegations about eligibility fail as a matter of law, and the Court should adhere to its prior ruling that the claims are ineligible.

**B.     None of the Attachments to Corrigent's Amended Complaint Can Render the Claims Eligible**

Further, while Corrigent's Amended Complaint cites to expert reports and infringement claim charts attached to the Amended Complaint, none of those attachments can render the claims eligible, because none of them can contradict the '369 patent itself or the governing law.  The Federal Circuit has held clearly that "[n]o amendment to a complaint can alter what a patent itself states." *Sanderling Mgmt Ltd.*, 65 F.4th at 706.  Indeed, the Federal Circuit has held that dismissal of an amended complaint is warranted where the patentee's allegations of inventiveness are "detached from what is claimed or discussed in the patent." *Int'l Bus. Machines Corp. v. Zillow Grp., Inc*., No. 2022-1861, 2024 WL 89642, at *4 (Fed. Cir. Jan. 9, 2024).  That is exactly the case here, because Corrigent's expert's opinions are untethered to the claims and contradicted by the patent itself and Corrigent's own evidence.

For example, Corrigent's Amended Complaint relies on an opinion by Dr. Akl that the claims are directed to "the problem of testing for failures in network communications systems while regular traffic is running within the system."  Amend. Compl. Ex. 9, ¶ 12.  But this assertion is entirely untethered to the asserted claims, which do not mention, let alone require, a "network" or "network communications systems."  *See* '369 patent, cls. 1, 2, 15, 18, 21.  Similarly, Dr. Akl opines that the claimed invention is supposedly "[u]nlike prior art methods" in that it "does not require additional testing hardware or the need to disable components. . ." but his opinion is directly contradicted by one of the other exhibits to Corrigent's Amended Complaint, which

18

discloses several such testing methods that existed in the art before the '369 patent.  *See, e.g.*, Amend. Compl. Ex. 27, (describing ping (41), fping (51), echoping (51), arping (52), hping (185), nemesis (187)).  In any event, Dr. Akl's opinion is irrelevant because, as reviewed above, the Federal Circuit has held that relying on existing hardware components does not render a claim eligible.  *See, e.g.*, *SAP Am.*, 898 F.3d at 1160–70; *AI Visualize*, 97 F.4th at 1380.  Indeed, the Federal Circuit recently affirmed dismissal of an amended complaint in similar circumstances, holding that the patentee's expert testimony about supposed differences between the claims and prior art is *irrelevant* to eligibility.  *See Chewy, Inc.*, 94 F.4th at 1367.

Moreover, these opinions by Dr. Akl should not be considered in the first place, because they are untimely.  The report they are contained in, which is attached to Corrigent's Amended Complaint as Exhibit 9 thereto, is a new report signed months after the close of expert discovery and not served on Cisco until the filing of the Amended Complaint.  *See* Amend. Compl. ¶ 15; Dkt. 297-6 (Ex. 9).  Corrigent has not sought leave to supplement Dr. Akl's opinions, and leave would not be justified in any event, because Dr. Akl already addressed patent eligibility in his rebuttal expert report, and there have not been any factual developments since then warranting a new report.  *See* Dkt. 298-1 at ¶¶ 309–15.  Therefore, Dr. Akl's new report is untimely, and should be excluded.  *See Daedalus Blue LLC v. SZ DJI Tech. Co.*, No. W-20-CV-00073-ADA, 2022 WL 831619, at *4–5 (W.D. Tex. Feb. 24, 2022) (excluding untimely report).

### C.      Judgment of Ineligibility is Warranted on the Pleadings

Finally, there are no factual disputes that would prevent the Court from holding the '369 patent claims ineligible on the pleadings.  *Data Engine Techs.*, 906 F.3d at 1007.  Although Corrigent alleges in conclusory fashion that the claimed subject matter was "not well-understood, routine, or conventional," Amend. Compl. ¶¶ 17, 21–26, 28, 31, 33, Corrigent has failed to provide "plausible and specific *factual* allegations that aspects of the claims are inventive."  *Cellspin Soft,*

19

*Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).  Corrigent has alleged no "specific factual allegations" on what aspects of the claims are inventive or comprise an improvement in computer functionality.  *Id.*  And any such allegation would be refuted by the intrinsic record in any event. As explained above, the '369 patent admits that the claims recite only conventional technologies. *See, e.g.*, '369 patent at 2:29–31.  Thus, there are no factual disputes that would prevent the Court from deciding this motion under Rule 12(c).  *See WhitServe LLC v. Dropbox, Inc*., 854 F. App'x 367, 373 (Fed. Cir. 2021).

However, to the extent the Court wishes to convert this motion into a motion for summary judgment given that discovery is already closed, Cisco respectfully requests that the Court grant judgment accordingly.

## V.    CONCLUSION

For the reasons stated above, Cisco respectfully requests that the Court grant judgment on the pleadings and dismiss Corrigent's Counts I and II of the Complaint with prejudice, because the claims of the '369 and '485 patents are directed to patent-ineligible subject matter.

Respectfully submitted,

Dated:  July 25, 2024                    By:  */s/ Shaun W. Hassett*
                                              Michael E. Jones
                                              State Bar No. 10929400
                                              mikejones@potterminton.com
                                              Shaun W. Hassett
                                              State Bar No. 24074372
                                              shaunhassett@potterminton.com
                                              POTTER MINTON, P.C.
                                              110 N. College Ave., Suite 500
                                              Tyler, TX  75702
                                              Telephone:  903.597.8311
                                              Facsimile:  903.593.0846

                                              Brian A. Rosenthal
                                              brosenthal@gibsondunn.com
                                              Katherine Dominguez *(pro hac vice)*
                                              kdominguez@gibsondunn.com
                                              GIBSON, DUNN & CRUTCHER LLP
                                              200 Park Avenue
                                              New York, NY  10166-0193
                                              Telephone:  212.351.4000
                                              Facsimile:  212.351.4035

                                              Stuart M. Rosenberg *(pro hac vice)*
                                              srosenberg@gibsondunn.com
                                              GIBSON, DUNN & CRUTCHER LLP
                                              1881 Page Mill Road
                                              Palo Alto, CA  94304-1211
                                              Telephone:  650.849.5300
                                              Facsimile:  650.849.5333

                                              *Attorneys for Defendant Cisco Systems, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2024, the foregoing was filed electronically in compliance with Local Rule 5.1 and served via the Court's electronic filing system on all counsel who have consented to electronic service on this 25th day of July, 2024.

*/s/ Shaun W. Hassett*
Shaun W. Hassett

## Appendix A

## U. S. Patent No. 6,957,369

| Claim 1 | In an electronic system that includes a main module and at least first and second subsidiary modules, each of said at least first and second subsidiary modules connected to the main module by one or more lines for carrying data, at least some of which lines are sometimes idle, the main module including a switch having ports connected to the lines, a method for self-testing the system, comprising:<br>selecting a first idle line among idle lines connecting the first subsidiary module to a first port of the switch on the main module to serve as an aid line;<br>instructing the first subsidiary module to loop back traffic reaching the first subsidiary module via the aid line;<br>selecting for testing a second idle line among the idle lines connecting the second subsidiary module to a second port of the switch on the main module;<br>configuring the switch to link the first and second ports;<br>transmitting test traffic over the second idle line from the second subsidiary module to the main module, wherein the test traffic is conveyed via the switch to the aid line connecting to the first subsidiary module; and<br>reporting that a failure has occurred if the test traffic does not return to the second subsidiary module within a predetermined period of time. |
|---|---|
| Claim 2 | A method according to claim 1, wherein instructing the first subsidiary module comprises configuring the first subsidiary module to loop back the traffic to the main module substantially without processing data comprised in the test traffic. |
| Claim 15 | Modular electronic apparatus, comprising:<br>a backplane, which comprises traces for carrying data between modules that are plugged into the backplane;<br>a main module, plugged into the backplane, the main module comprising a switch having ports for connection to the traces of the backplane;<br>at least first and second subsidiary modules, plugged into the backplane so as to be connected to the main module by the traces, at least some of which traces are sometimes idle; and<br>a system control processor, which is operative to select a first idle trace among idle traces connecting the first subsidiary module to a first port of the switch on the main module to serve as an aid trace, to instruct the first subsidiary module to loop back traffic reaching the first subsidiary module via the aid trace, to select for testing a second idle trace among the idle traces connecting the second subsidiary module to a second port of the switch on the main module, and to configure the switch to link the first and second ports, the system control processor being further operative to cause test traffic to be transmitted over the second idle trace from the second subsidiary module to the main module, wherein the test traffic is conveyed via the switch to the aid trace connecting to the first subsidiary module, and to report that a failure has occurred if the test traffic does not return to the second subsidiary module within a predetermined period of time. |

| Claim 18 | Apparatus according to claim 15, wherein the system control processor is operative to select one or more further idle traces for testing among the idle traces in the system, wherein the further idle traces connect to further ports of the switch on the main module, and to repeatedly configure the switch, cause the test traffic to be transmitted, and report the failure when it occurs with respect to the further idle traces until all the idle lines have been tested. |
|---|---|
| Claim 21 | Modular electronic apparatus, comprising:<br>a backplane, which comprises traces for carrying data between modules that are plugged into the backplane;<br>a main module, plugged into the backplane;<br>a plurality of subsidiary modules, plugged into the backplane so as to be connected to the main module by the traces; and<br>a system control processor, which is operative to select first and second subsidiary modules of different types for testing among the multiple subsidiary modules, the first and second subsidiary modules being configured to transmit and receive the data in different, respective first and second formats, and which is further operative to test the modules by causing the first subsidiary module to loop back traffic reaching the first subsidiary module from the main module, by configuring the main module to connect the first and second subsidiary modules, so that a traffic transmitted by the second subsidiary module is conveyed to the first subsidiary module via the main module and is then looped back via the main module to the second subsidiary module, and by causing the second subsidiary module to transmit test traffic in the second format to the main module, and assessing whether the test traffic is returned intact from the first module. |