IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CORRIGENT CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>    Defendant. | Civil Action No. 6:22-cv-396-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT CISCO SYSTEMS INC.'S MOTION FOR JUDGMENT AS A MATTER
OF LAW REGARDING INFRINGEMENT AND DAMAGES**

**TABLE OF CONTENTS**

Page

I. LEGAL STANDARD ................................................................................................................ 1

II. ARGUMENT ............................................................................................................................ 1

    A. No Reasonable Jury Could Find That The Accused Products Infringe The '602 Patent ...................................................................................................................... 1

        1. Cisco does not "dedicat[e] a sub-set of bits in a data packet label prepared by the first MPLS/LAG switch to encode said port serial number of said single physical tunnel port of the LAG into the data packet label." ............ 1

        2. Cisco does not assign a single physical tunnel port of a LAG to a network tunnel ........................................................................................................ 6

        3. Cisco does not ensure a "single physical tunnel port of the LAG meets a bandwidth requirement of the network tunnel." ......................................... 6

    B. No Reasonable Jury Could Find That Corrigent Carried Its Burden To Prove Damages ................................................................................................................ 7

        1. Corrigent did not present reliable evidence of apportionment to the accused functionality. ............................................................................... 7

        2. Corrigent did not present evidence that Cisco would have agreed to a per-unit royalty at the hypothetical negotiation. ............................................... 9

        3. Substantial evidence does not support any award of damages. ................ 10

CONCLUSION ........................................................................................................................... 11

Cisco Confidential

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015)........................................................................................8

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)....................................................................................1, 8

*Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018)....................................................................................8, 9

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)........................................................................................7

*Knight v. Kirby Inland Marine*,
    482 F.3d 347 (5th Cir. 2007) ..........................................................................................7

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)...........................................................................................9

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).................................................................................9, 10

*Riles v. Shell Exploration & Prod. Co.*,
    298 F.3d 1302 (Fed. Cir. 2002).....................................................................................10

*SIMO Holdings v. H.K. uCloudlink Network Tech.*,
    983 F.3d 1367 (Fed. Cir. 2021)........................................................................................1

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000)........................................................................................................1

**Rules**

Federal Rule of Civil Procedure 50(a) ...........................................................................................1

Cisco Confidential

Defendant Cisco Systems, Inc. respectfully moves pursuant to Federal Rule of Civil Procedure 50(a) for judgment as a matter of law that it does not infringe U.S. Patent No. 9,118,602 and that Plaintiff Corrigent Corporation is not entitled to any damages.

## I.     LEGAL STANDARD

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).  Rule 50 "allows the trial court to remove . . . issues from the jury's consideration when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (internal quotations omitted).

## II.     ARGUMENT

### A.     No Reasonable Jury Could Find That The Accused Products Infringe The '602 Patent.

To establish infringement of a patent, "the patentee must show that the accused device contains *each and every limitation* of the asserted claims." *SIMO Holdings v. H.K. uCloudlink Network Tech.*, 983 F.3d 1367, 1380 (Fed. Cir. 2021) (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1215 (Fed. Cir. 2014)).  Corrigent accuses Cisco's Nexus 7000, Catalyst 9000, and ASR 9000 products of infringing claims 1, 15, and 22 of U.S. Patent No. 9,118,602.  Tr. 207:17-212:1.  Each of the arguments below applies to all asserted claims.  No reasonable jury could find literal infringement.[1]

### 1.     Cisco does not "dedicat[e] a sub-set of bits in a data packet label prepared by the first MPLS/LAG switch to encode said port serial number of said single physical tunnel port of the LAG into the data packet label."

---

[1] Corrigent does not assert infringement under the doctrine of equivalents.

1

Cisco Confidential

Each of the asserted independent claims (1 and 15) requires a series of limitations related to encoding a "port serial number of [a] single physical tunnel port" into an MPLS label. Corrigent did not—and could not—provide evidence that Cisco's accused products meet this limitation. As an initial mater, Dr. Akl agreed that the claims "require[] dedicating a subset of bits in the label to encode *the serial number of the physical port*." Tr. 313:7-10; *see also* Tr. 330:22-331:3 (agreeing that the "serial number of the physical tunnel port" must be "encoded in the data label"); Tr. 313:20-21 (agreeing the port "needs to be physical"); Tr. 314:5-6 (agreeing the port must be physical and not virtual). But rather than providing evidence that Cisco's products encode the serial number of the physical port into the data label, he stated that *he did not opine* that "the physical ports that are on [Cisco's] products, the serial numbers that are on those are encoded in any data labels." Tr. 308:3-8. In fact, Dr. Akl agreed he was not "pointing to those [physical port serial numbers] for anything." *Id.* Indeed, Cisco's engineer confirmed that the "Cisco Catalyst 9000 series products" do not "dedicate a subset of bits in a data packet label prepared by a first MPLS/LAG switch to encode a port serial number of a single physical tunnel port of LAG into the data packet label." Tr. 450:13-18; *see also* Tr. 707:10-25. Because Dr. Akl did not—and could not—demonstrate that Cisco's products meet the literal language of the claims, he asserted (and then shortly after contradicted himself) it was not "a requirement of the claim that the physical port serial number has to be encoded in the data label." Tr. 308:18-23.

But Dr. Akl could not avoid admitting that his analysis is legally insufficient. In other words, he admitted that he does not even attempt to point to any evidence that Cisco's products encode a serial number of a single physical port in the MPLS packet label. Tr. 315:5-12 ("Okay. Now, if the accused products, the Cisco products in this case, actually took a physical serial

Cisco Confidential

number of a physical port and put that in a data label, one would expect that in the thousands of documents, you would find a document that says we're putting the port serial number in the data label, wouldn't you? A. I didn't look for that. So I don't know the answer."). He sought to justify his conceded lack of evidence "that a physical data port or a physical port has a serial number that goes into the data label" by contradicting his previous testimony and asserting "[t]hat's not what the claim requires." Tr. 320:10-15. The Court should grant judgment as a matter of law because the claims require just that: "encod[ing] said port serial number of said single physical tunnel port of the LAG into the data packet label," and Dr. Akl has no infringement opinion (and no evidence to support a finding of infringement) under the literal words of the claims.

Rather than matching Cisco's products to the plain language of the claims, Dr. Akl pointed to three parts of the MPLS label in an effort to meet the encoding or dedicating limitation: the **VE ID**, **VE block offset**, and **label base**. Tr. 321:13-21; Tr. 230:20-231:2; PTX-497 at 9 (RFC 4761 at Fig. 2); Tr. 254:18-255:1. Dr. Akl agreed he was not pointing to any other bits in the label as meeting this claim limitation. Tr. 321:6-25.

The **VE ID** simply identifies a device—an edge device or edge switch. Tr. 231:41-16; 329:1-3. Dr. Akl agreed that the VE ID "alone" is not a serial number of a physical tunnel port. Tr. 329:25-330:2. Instead, Dr. Akl testified the "VE ID *relate[s]* to assigning a single physical tunnel port." Tr. 231:23-25. Similarly, he explained that a pseudowire can "*relate* to physical ports." Tr. 197:18-25. "Relating" to physical ports cannot and does not meet the claim limitation.[2]

---

[2] Dr. Akl did not explain what the VE block offset or label base do. Tr. 231:16-22 ("we're going to have a block offset and we're going to have a label base. And a label base is like where you're going to start counting"); Tr. 232:16-22.

3

Cisco Confidential

Dr. Akl then testified that the VE ID, VE block offset, and label base are "used in an equation to create the serial number." Tr. 232:16-22. Specifically, they "create a VC label," Tr. 239:2-5, or "set up a pseudowire," Tr. 256:11-12. *See also* Tr. 257:2-7.

The ***VC Label*** or ***VC ID*** identifies a pseudowire or virtual circuit. Tr. 239:14-16. Dr. Akl could not say whether the VC label or VC ID is a serial number of a single physical tunnel port. Instead, Dr. Akl testified on direct that the ***VC label*** is an example of a "***pseudowire label***" "[a]nd it could be an ***MPLS label***." Tr. 239:20-23. First, there was no testimony that a pseudowire label contains the port serial number of a physical tunnel port. Instead, Dr. Akl said "the pseudowires in these link aggregation groups" are "physical tunnel ports," without testimony that the VC label identifying a pseudowire encoding the port serial number of a physical tunnel port. Tr. 243:15-24; *see also* Tr. 197:18-23 (testifying that pseudowires "relate to" physical tunnel ports). Corrigent points to Dr. Akl's testimony that the VC label comes from an "equation in the standard," but nothing in Dr. Akl's testimony or the RCF 4761 standard links the VC label or a pseudowire label to the serial number of a physical port or physical tunnel port. Tr. 257:1-7 (Dr. Akl); Tr. 748:1-10 (Corrigent's counsel); *see also* Tr. 750:1-16 (explaining the '602 patent specification also distinguishes a pseudowire label from the serial number of a physical port).

And Dr. Akl's confirmation that the serial number needs to point to a *physical* tunnel port, Tr. 314:2-6, means that pointing to a *virtual* circuit or a *pseudo*wire does not meet the claim language.

Second, the MPLS label is a ***different requirement of the claim***. And the serial number of the single physical tunnel port must be encoded into that label. '602 Patent, Cl. 1, 15. Dr. Akl tries to save his flawed analysis by effectively saying that the port serial number is in the VC

4

Cisco Confidential

label.  But he provides no evidence that the port serial number of a physical tunnel port is within that VC label, which is required by the remainder of the claim.  Dr. Akl's testimony that Cisco "uses the VC label to determine to which attachment circuit, Ethernet port, or VLAN interfaces the frame should be forwarded" (Tr. 241:22-24)—even if taken as true—is insufficient to satisfy the claim requirement the MPLS label contain bits that encode the physical port serial number itself.

Corrigent cannot avoid this claim limitation.  It was the reason the Patent Office allowed the claims in the first place.  Tr. 296:21-24; PTX008 ('602 Patent File History).  During prosecution, the applicant overcame a rejection over the prior art by amending the claims, in relevant part, "to indicate that preparing the data packet label included 'dedicating a sub-set of bits of said data packet label to encode [a] port serial number of [a] single physical tunnel port." PTX008 ('602 Patent File History).  The applicant distinguished the prior art by specifically amending the claims such that the port serial number of a single tunnel port of a network tunnel is "particularly assign[ed]" to "*a single physical Ethernet data port for network tunnel traffic*."  *Id.*; Tr. 319:4-17.

At bottom, the language of the claims demands an identification of specific bits in the data packet label that encode the port serial number of a physical tunnel port.  Corrigent's failure to provide evidence to satisfy this limitation dooms its case.  Dr. Akl's opinion that other information in the packet label may somehow "relate" to physical tunnel ports is not substantial evidence of infringement.  Tr. 231:23-25; Tr. 197:18-25.  This is no different from *Exergen Corporation v. Kaz USA, Inc.*, where the Federal Circuit explained that an accused device that approximates a claimed measurement ("internal body temperature") did not literally infringe. 725 F. App'x 959 (Fed. Cir. March 8, 2018).  Because the accused devices calculated "an oral-

5

equivalent temperature, not the temperature of the body beneath the forehead," the Court reversed a jury verdict of infringement. *Id.* at 969. The Court further rejected the argument that the accused devices must calculate "temperature of the region of tissue beneath the forehead skin" when determining the "oral-equivalent temperature." *Id.* At best, that testimony showed the accused devices "approximates the temperature of the body beneath the forehead," which was not sufficient to show literal infringement. *Id.* Here too, encoding other information that relates to a physical port serial number is insufficient; the claims requires that the bits themselves encode the physical port serial number.

### 2. Cisco does not assign a single physical tunnel port of a LAG to a network tunnel.

Dr. Akl agreed that the "claim language requires that you assign a single physical Ethernet data port for network tunnel traffic." Tr. 315:1-4. Cisco does not assign packets to a *single* physical data port. Instead, Cisco "load balance[s] all traffic across *all* operational interfaces in a port channel." Tr. 333:20-25. It is undisputed that all of Cisco's products use load balancing functionality. Corrigent and Dr. Akl did not identify any instance—or provide any evidence—of Cisco's products limiting network traffic to a *single* physical port.

### 3. Cisco does not ensure a "single physical tunnel port of the LAG meets a bandwidth requirement of the network tunnel."

Corrigent failed to present any evidence that a *single physical tunnel port* meets a bandwidth requirement. Instead, Corrigent pointed to evidence that "Cisco's accused products can impose bandwidth limitations on network tunnels and pseudowires." *E.g.*, Tr. 248:7-10. Network tunnels and pseudowires are not *a single physical tunnel port* of a LAG. Corrigent also pointed to an "ISB" and code that "refer[s] to a physical port and discuss[es] bandwidth allocation restrictions on an ISB." Tr. 253:2-5. But Dr. Akl never explained how that code relates to assigning a single physical tunnel port in a LAG or whether the "bandwidth allocation

6

restrictions" means that the assigned single physical tunnel port meets any bandwidth requirement.

### B. No Reasonable Jury Could Find That Corrigent Carried Its Burden To Prove Damages.

Corrigent bore the burden "of proving damages by a preponderance of the evidence" and supporting any award "with reliable evidence." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310, 1313 (Fed. Cir. 2018). Corrigent failed to meet its burden in multiple ways.

#### 1. Corrigent did not present reliable evidence of apportionment to the accused functionality.

An "expert's testimony must be reliable at each and every step," including "the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion" to support any award of damages. *Knight v. Kirby Inland Marine*, 482 F.3d 347, 355 (5th Cir. 2007). A patentee must apportion damages to the incremental value of the claimed invention. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1302 (Fed. Cir. 2018) (holding that "[f]urther apportionment was required to reflect the value of the patented technology compared to the value of the unpatented elements" where "DRTR is itself a multi-component software engine that includes non-infringing features [and] the percentage of web traffic handled by DRTR is not a proxy for the incremental value of the patented technology to WebPulse as a whole"). Dr. Akl and Mr. Bratic's damages analysis fails the apportionment requirement.

Dr. Akl used a feature counting analysis to arrive at technological apportionment percentages. Tr. 341:3-24. That analysis compared a list of features for the accused products to the number of features Dr. Akl identified as pertaining to the accused functionality. Dr. Akl's

Cisco Confidential

feature counting is not substantial evidence of the technological or overall value of the '602 patent for several reasons.

First, Dr. Akl made an unreliable assumption that all features have equal value. Tr. 280:16-19; Tr. 343:2-5. But he also acknowledged that customers give features different weights or importance. Tr. 342:7-21. Dr. Akl's only reason for valuing all features equally was "to be conservative." Tr. 342:1-4. He agreed he didn't do "any kind of analysis of how important from a commercial standpoint any of these features" are relative to each other. Tr. 344:5-23. With no evidence to support a key assumption underlying his apportionment analysis, Dr. Akl's opinion cannot support an award of damages.

Second, Dr. Akl and Mr. Bratic failed to apportion to the '602 patents contribution over the prior art. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) ("When a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone."); *see also Ericsson Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014) ("[T]he patent holder should only be compensated for the approximate incremental benefit derived from his invention."); *Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018). There is no dispute that link aggregation, MPLS, BGP signaling, and pseudowires existed both in the prior art and in Cisco's prior generation products well before the priority date of the '602 patent. Tr. 187:23-188:3; Tr. 189:18-22; Tr. 290:22-291:292:12; Tr. 345:15-349:2. Dr. Akl and Mr. Bratic further failed to account for the technological value of Cisco's own patents and inventions on MPLS, VPLS tunnelling, and BGP autodiscovery when performing his apportionment analysis. Tr. 290:17-20

8

Cisco Confidential

(agreeing the Cisco developed MPLS); DTX-206 (Cisco's U.S. Patent No. 7,733,876). Dr. Akl flat out agreed that he "didn't do" any analysis of "how much value of the products is associated with Cisco's patents versus this one that you say that we used." Tr. 355:16-21.

Instead of apportioning out conventional technology or Cisco's contributions to its own products, Dr. Akl credited Corrigent with the full value of features that existed in the prior art. For example, he credited Corrigent with features like "Layer 2," despite agreeing that Layer 2 has existed in the prior art since the 1980s. Tr. 350:9-19; *see also* Tr. 352:1-18 (crediting Corrigent for BGP and MPLS features); Tr. 359:9-360:4. Dr. Akl credited Corrigent the entire value of these features despite agreeing that the features "include conventional aspects." Tr. 352:20-355:9. Mr. Bratic did not make any further attempt to apportion out "how much the prior technology contributed to these products," because he believed he "didn't need to." Tr. 619:13-16. Corrigent's damages opinions therefore reflect more than the value of the '602 patent and cannot support a damages award. *See* Tr. 621:20-623:16 (Mr. Bratic agreeing that Dr. Akl's analysis does not "identify how much value of the products is associated with Cisco's patents versus this one that you say that we used.").

> **2.    Corrigent did not present evidence that Cisco would have agreed to a per-unit royalty at the hypothetical negotiation.**

"The burden of proving damages falls on the patentee." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). That rule holds true for subsidiary issues affecting the damages calculation. For example, the plaintiff bears the burden to show that it is appropriate to base a royalty on the entire market value of a product, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67–68 (Fed. Cir. 2012), or that the proposed royalty represents only the incremental value of the patented feature, *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Products Group, LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018). Likewise, it is

9

Cisco Confidential

plaintiff's burden to prove the form and amount of the reasonable royalty to which the parties would have agreed at the hypothetical negotiation. *See, e.g.*, *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) (vacating damages award where patentee "did not provide any evidence or testimony to show that [its expert's] models reflected what the parties might have agreed to, at any time, particularly at the time the infringement began").

Corrigent provided no evidence that Cisco would agree to a patent license in the form of a running royalty. Mr. Bratic simply said that he was using a "a well-known and established formula for determining reasonable royalties in a patent lawsuit" with no analysis that *Cisco* and *Corrigent*, at the time of the hypothetical negotiation and for the '602 patent, would agree to a running royalty structure, in any amount. Tr. 574:23-575:24. Indeed, at the close of plaintiff's case, there is no evidence that Corrigent would reject a lump-sum license, or license *only* on a per-unit royalty basis. Just the opposite, the evidence is that Corrigent agreed to outright sale of its patent assets for a lump sum amount. Tr. 588:6-11; Tr. 665:15-24 (Corrigent considered $5 million lump sum purchase). As a result, Corrigent has not met its burden to prove the form of the reasonable royalty using reliable evidence, and the Court should grant judgment as matter of law of no damages.

### 3. Substantial evidence does not support any award of damages.

For the reasons explained above, Corrigent failed to put forward evidence sufficient to support any damages award. Corrigent did not introduce evidence that could "sustain a finding" on the form of damages or damages properly apportioned to the value of the '602 patent. *Lucent Techs.*, 580 F.3d at 1335. Thus, a damages award here could only be "based mainly on speculation and guesswork," and it would go "against the clear weight of the evidence." *Id.* No reasonable jury find that Corrigent carried its burden to prove that it is entitled to any damages.

Cisco Confidential

## CONCLUSION

The Court should grant Cisco's motion for judgment as a matter of law that the accused products do not infringe the '602 patent and that Corrigent is not entitled to any award of damages.

Cisco Confidential

| | | |
|---|---|---|
| Dated: January 16, 2025 | By: | */s/ Brian A. Rosenthal* |

                                        Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
POTTER MINTON, P.C.
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: 903.597.8311
Facsimile: 903.593.0846

Brian A. Rosenthal
brosenthal@gibsondunn.com
Katherine Dominguez (*pro hac vice*)
kdominguez@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
Erin M. Kim
ekim@gibsondunn.com
Jaclyn Hellreich
jhellreich@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Stuart M. Rosenberg (*pro hac vice*)
srosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300
Facsimile: 650.849.5333

Emily M. Whitcher (*pro hac vice*)
ewhitcher@gibsondunn.com
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612
Telephone: 949.451.3876
Facsimile: 949.475.4656

Cisco Confidential

Audrey Yang
ayang@gibsondunn.com
Gibson, Dunn & Crutcher, LLP
2001 Ross Avenue, Suite 2001
Dallas, TX 75201
Telephone: 214.698.3215
Facsimile: 214.571.2915

Elizabeth R. Moulton (*pro hac vice*)
emoulton@orrick.com
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: 415.773.5700
Facsimile:  415.773.5759

*Attorneys for Defendant Cisco Systems, Inc.*

13

Cisco Confidential

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing sealed document and all attachments thereto are being served via email on all counsel of record on January 16, 2025.

*/s/ Brian A. Rosenthal*
Brian A. Rosenthal

Cisco Confidential